# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 89-0072-WS |
| ) | |
| RICHARD JOSEPH LYNN, ) | |
| ) | |
| Defendant. ) | |

## ORDER

This matter is before the Court on the defendant's motion for reduction of sentence. (Doc. 49). The defendant seeks release under the "compassionate release" provision of 18 U.S.C. § 3582(c)(1)(A). The defendant has filed a supplement to his motion and the government a response, (Docs. 66, 68), and the motion is ripe for resolution.

> The court may not modify a term of imprisonment once it has been imposed except that … the court, upon … motion of the defendant …, may reduce the term of imprisonment … after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that … extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission ….

18 U.S.C. § 3582(c)(1)(A). A necessary predicate to relief under this provision is a judicial finding that "extraordinary and compelling reasons" warrant a reduction in sentence; a second is that any reduction be consistent with policy statements of the Sentencing Commission ("the Commission"). The statute does not define the quoted phrase, but the Commission's policy statement does. U.S.S.G. 1B1.13. This policy statement was issued pursuant to the Commission's statutory obligation to "promulgate … general policy statements regarding … the appropriate use of … the sentence modification provisions set forth in sectio[n] … 3582(c) of title 18 …,"[1] in which policy statement the Commission is required to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."[2] The Commission's policy statement thus establishes

---

[1] 28 U.S.C. § 994(a)(2)(C).

[2] 28 U.S.C. § 994(t).

the boundaries of what may and may not be judicially determined to be extraordinary and compelling reasons for a sentence reduction.

The Commission's policy statement identifies five categories of extraordinary and compelling reasons. The first requires a terminal illness. The second requires a serious condition, impairment or deterioration that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." The third requires that the defendant be at least 65 years old and satisfy certain other requirements. The fourth requires the death or incapacity of someone in one of a few specified relationships to the defendant. The fifth requires a determination by the Bureau of Prisons ("BOP") in the defendant's particular case that some other extraordinary and compelling reason exists. U.S.S.G. 1B1.13 application note 1.

The defendant does not claim to have a terminal illness, and he acknowledges he is not yet 65 years of age. (Doc. 62 at 5; Doc. 66-1 at 1). The defendant identifies no person that has died or become incapacitated, nor does he assert that the BOP has made a determination that extraordinary and compelling reasons exist in his case. The defendant is therefore left to rely on the second category of extraordinary and compelling reasons for release. To that end, he identifies a welter of health issues. As discussed below, the defendant has failed to identify evidence that could support a finding that any of these issues substantially diminish his ability to care for himself in a prison setting.

First, the defendant asserts that he experiences "chronic kidney failure," which will slowly progress to total renal failure, to prevent which he will require dialysis or a kidney transplant. (Doc. 49 at 9). The only medical records addressing the plaintiff's kidneys state that he had "chronic kidney disease, Stage II (mild)" as of November 2017 and that he had a "normal renal ultrasound" in August 2018. (Doc. 66-1 at 1, 30). Assuming without deciding that mild chronic kidney disease is a "serious physical or medical condition" under the policy statement, nothing in the record suggests that it substantially diminishes the ability of the defendant to care for himself in prison. That the defendant's condition may progress over time and require more active intervention in the future does not translate into a present diminishment in the defendant's ability to care for himself.

Second, the defendant relies on his atrial fibrillation ("A-fib"). He claims three emergency trips to free world hospitals for cardioversion over the years.[3] He notes that A-fib raises a risk of stroke or heart attack and that, while this risk is being treated with Coumadin, blood thinners could in certain circumstances cause massive hemorrhaging, which could prove fatal in a "violent penitentiary." (Doc. 49 at 9). As with his chronic kidney disease, there is no record evidence that the defendant's A-fib impairs his ability to care for himself in a prison environment, and predictions of what the treatment of his condition may cause in the future do not create such a present impairment.[4]

Third, the defendant points to a January 2019 CT scan showing multiple coronary arteries with over 70% blockage, with an impression of moderate to severe three-vessel coronary disease. (Doc. 66 at 3; Doc. 66-1 at 3). The defendant asserts he has been told by his cardiologist that he will require multiple stents or – depending on how long the condition is left unaddressed – open heart surgery. (Doc. 66 at 3; Doc. 66-1 at 39). Once again, assuming without deciding that the defendant's blockages constitute a serious physical or medical condition, the record lacks any evidence that his ability to care for himself in prison has been substantially diminished.[5]

Finally, the defendant lists a number of other health issues, including: hyperlipidemia (high cholesterol and/or triglycerides); cervicalgia (neck pain); cervical disc degeneration; acute otitis externa (swimmer's ear); benign prostate hypertrophy (enlarged prostate); carpal tunnel syndrome; and conjunctivitis (pink eye). (Doc. 66 at 3). While the record supports the present or historical existence of these conditions, (Doc. 66-1 at 1), it does not support a finding

---

[3] The defendant's medical records reflect that his three cardioversions were in 2004, 2015 and 2017. (Doc. 66-1 at 19, 23, 26-27).

[4] The defendant asserts he was "forced to walk around weak and dizzy for over 4 months while in 'atrial fibrillation'" because he was denied permission to obtain a cardioversion at an outside hospital. (Doc. 66 at 3). Upon his third admission for cardioversion in June 2017, however, the defendant advised that he had had no episode of fibrillation in two years and that he "was doing relatively well until the day prior to admission when he began to develop episodes of palpitations" and associated lightheadedness. (Doc. 66-1 at 19). Assuming without deciding that walking around weak and dizzy could constitute a substantial diminishment in ability to care for oneself, the Court cannot on this record find that the defendant has done so on more than brief and rare occasions.

[5] At most, the record supports the proposition that the defendant experiences occasional shortness of breath and chest pain, which may or may not be tied to this condition. (Doc. 66-1 at 31).

(assuming they or any of them are serious physical or medical conditions) that the defendant's ability to care for himself in a prison setting has been substantially diminished by them.

The government's brief attaches the acting warden's response to the defendant's request for compassionate release, which includes the conclusion that "[y]ou are able to independently attend to your activities of daily living and your condition does not affect your ability to function in a correctional setting." (Doc. 68-1). While the assistant warden's assertion, unaccompanied by any supporting evidence, would not be conclusive in the face of evidence to the contrary, as discussed above the defendant has presented no such evidence.

The defendant notes in passing that the First Step Act modified 34 U.S.C. § 60541(g)(5) so that an "eligible elderly offender" includes an offender who is at least 60 years old and who has served 2/3 of his term of imprisonment, criteria he says he satisfies. (Doc. 49 at 2-3). The point of this assertion is unclear, since Section 60541(g) addresses home confinement, not release under Section 3582(c)(1)(a), which is the only basis of the defendant's motion. (Doc. 49 at 1). Even had the defendant sought judicial relief under Section 60541(g), he could not receive it. First, Congress has made the decision whether to place a prisoner in home confinement pursuant to Section 60541(g) exclusively that of the Attorney General and BOP, not the courts. *Jones v. Woods*, 2019 WL 2754731 at *4 (M.D. Ala. 2019) (citing cases); *see* 34 U.S.C. § 60541(g)(1)(B) ("[T]he Attorney General *may* release some or all eligible elderly offenders …") (emphasis added). Second, the statute expressly excludes from the definition of "eligible elderly offender" a prisoner – such as the defendant – that is serving a life sentence. *Id*. § 60541(g)(5)(A)(ii).

For the reasons set forth above, the defendant's motion for reduction of sentence is **denied**. This ruling is without prejudice to the defendant's ability to seek compassionate release should his circumstances change.

DONE and ORDERED this 15th day of July, 2019.

s/WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE