# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 89-0072-WS |
| | ) |
| RICHARD JOSEPH LYNN, | ) |
| | ) |
| Defendant. | ) |

## ORDER

On July 15, 2019, the Court entered an order denying the defendant's motion for reduction of sentence. (Doc. 70).[1] A week later, the defendant filed a motion to alter or amend judgment. (Doc. 73). The defendant invokes Federal Rule of Civil Procedure 59(e) but, because civil rules do not apply in criminal cases,[2] the Court construes the defendant's motion as one to reconsider.

The defendant seeks relief under the "compassionate release" provision of 18 U.S.C. § 3582(c)(1)(A). As the Court's order notes, Congress has expressly prohibited relief under this provision except to the extent such relief "is consistent with applicable policy statements issued by the Sentencing Commission ["the Commission"]." *Id*. Congress elsewhere required the Commission to issue a policy statement "regarding … the appropriate use" of Section 3582(c), to include "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied." 28 U.S.C. § 994(a)(2)(C), (t). As the Court noted, by virtue of these provisions, "[t]he Commission's policy statement thus establishes the boundaries of what may and may not be judicially determined to be extraordinary and compelling reasons for a sentence reduction." (Doc. 70 at 1-2). The Court in its order reviewed each of the five categories of extraordinary and compelling reasons identified by the Commission's policy statement and explained why the defendant's case satisfies none of them. (*Id*. at 2-4).

---

[1] *United States v. Lynn*, 2019 WL 3082202 (S.D. Ala. 2019).

[2] *E.g., United States v. Hatcher*, 756 Fed. Appx. 977 (11th Cir. 2019) ("[F]ederal courts cannot invoke the Federal Rules of Civil Procedure, including Rule 59(e), to provide relief from a judgment in a criminal case.").

The defendant identifies a number of alleged errors in the Court's analysis: (1) permitting the Bureau of Prisons ("BOP") to respond to his motion for compassionate release; (2) failing to recognize that the First Step Act ("the Act") "expand[ed] the criteria" for compassionate release; (3) relying on the Commission's policy statement even though it has not been updated since passage of the Act; (4) failing to take account of BOP's post-First Step Act program statement; (5) ignoring congressional intent regarding the scope of compassionate release; and (6) overlooking the defendant's request for relief under Section 60541. The Court considers these arguments in turn.

### A. BOP Input.

Prior to the Act, Section 3582(c)(1)(A) provided that only BOP could bring a motion for compassionate release. Section 603(b) of the Act amended this provision to permit a defendant to bring such a motion as well, after either exhausting administrative rights to appeal BOP's failure to bring such a motion or the passage of 30 days from the defendant's unanswered request to the warden for such relief. The defendant filed his Section 3582(c)(1)(A) motion on March 11, 2019, assertedly more than 30 days after he requested the warden to file such a motion on his behalf. (Doc. 49 at 2). The Court permitted the government to respond to the defendant's motion, and its response included a one-page memorandum from the acting warden (dated three months after the defendant's request) denying the request and explaining why the defendant did not qualify for compassionate release. (Doc. 68-1).

The defendant asserts now, as he did then, that the 30-day period added by the Act is an absolute deadline for BOP to provide input into a court's compassionate release determination. (Doc. 73 at 3-4). Nothing in the text of the statute supports the defendant's argument; by its terms, the only purpose of the 30-day period is to provide a trigger for the filing of a judicial motion, not to preclude BOP from providing a court its assessment of the request. Given that, prior to the Act, all motions for compassionate release were required to be brought by BOP, and given that BOP therefore developed substantial expertise in the evaluation of such requests and the standards by which they are to be evaluated, it would be passing strange to conclude that Congress *sub silentio* forbade that BOP be heard.

The defendant's only authority in support of his implausible argument is *United States v. Cantu*, 2019 WL 2498923 (S.D. Tex. 2019). In the course of addressing a different issue, the

*Cantu* Court declared that "[t]he BOP in fact may never weigh in or provide guidance when a § 3582(c) motion is brought by a defendant." *Id*. at *4. The Court provided no analysis in support of this dictum, and its only citation was to *DeLuca v. Lariva*, 586 Fed. Appx. 239 (7th Cir. 2014). *DeLuca* predates the Act by four years and, unsurprisingly, does not purport to address the Act's effect. Nor does it purport to address what input BOP may have with respect to a compassionate release motion; even had *DeLuca* done so, it could scarcely have precluded BOP's input, since in the pre-Act world all compassionate release motions had to be filed by BOP and therefore necessarily contained BOP's input.

In any event, the Court's ruling does not depend on input from BOP. The only relevant statement in the assistant warden's memorandum is that the defendant's conditions do not affect his ability to function in a correctional setting and that he is able to independently attend to his activities of daily living. (Doc. 68-1). The Court noted this statement but did not rely on it, because the statute requires the Court to "fin[d]" the existence of extraordinary and compelling reasons and because the defendant (without consideration of BOP's position) did not present evidence sufficient to support such a finding. (Doc. 70 at 2-4).

### B. Expanded Criteria for Compassionate Release.

The defendant asserts that Congress "expand[ed] the criteria [for "extraordinary and compelling reasons"] in that statute [Section 3582(c)(1)(A)] as part of the First Step Act of 2018." (Doc. 73 at 7). Congress patently did not do so.

Prior to the Act, Section 3582(c)(1)(A) provided that:

> The court may not modify a term of imprisonment once it has been imposed except that … the court … may reduce the term of imprisonment … after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that … extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission ….

Following the Act, Section 3582(c)(1)(A) reads exactly the same. The only change to this section made by the Act was to allow a defendant to file a compassionate release motion under certain circumstances. The defendant offers no explanation or authority to support his contrary position.

### C. Outdated Policy Statement.

By its terms, Section 3582(c)(1)(A) limits relief to cases in which the reduction "is consistent with applicable policy statements issued by" the Commission. The defendant nevertheless objects to the Court's reliance on the Commission's policy statement, because it has not been "updated" since passage of the Act. (Doc. 73 at 2).

As discussed in the Court's order, (Doc. 70 at 2), the Commission's policy statement limits the universe of extraordinary and compelling reasons to five categories. U.S.S.G. 1B1.13 application note 1. The final category applies when, "[a]s determined by the Director of [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with," the four previous categories. *Id*. note 1(D). The Court ruled out relief under this fifth category because BOP had made no determination that extraordinary and compelling reasons exist in the defendant's case. (Doc. 70 at 2).

The *Cantu* Court concluded that, post-Act, the final category of extraordinary and compelling reasons is not limited to those determined by BOP but may include additional reasons determined by the Court but not by BOP. 2019 WL 2498923 at *3-5. The Court has carefully considered *Cantu* but, respectfully, cannot subscribe to its reasoning or result.

Congress directed the Commission to promulgate "general policy statements regarding … the appropriate use of … the sentence modification provisions set forth in [section] 3582(c) of title 18 …." 28 U.S.C. § 994(a)(2)(C). Congress directed the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples." *Id*. § 994(t). Congress then prohibited courts from granting compassionate release unless "such a reduction is consistent with applicable policy statements issued by" the Commission. 18 U.S.C. § 3582(c)(1)(A). Section 1B1.13 and its application note constitute the applicable policy statement, and they limit extraordinary and compelling circumstances to discrete categories, including the residual category requiring a determination by BOP.

The *Cantu* Court noted that the title of Section 603(b) of the Act is "Increasing the Use and Transparency of Compassionate Release." The Court reasoned that continuing to allow BOP to determine whether release under the residual fifth category was warranted would render defendants' motions for compassionate release of "no avail" and thus "contravene the explicit purpose of the new amendments" by not increasing the use of compassionate release. 2019 WL

2498923 at *4. Such a result would mean that the policy statement, with respect to determination of the residual category, no longer provides guidance as to the "appropriate use" of Section 3582(c)(1)(A) and thus violates Section 994(a)(2)(C). Because "Congress may override the Commission's policy statements by statute," the *Cantu* Court concluded that the policy statement regarding BOP determination of the residual category has been overridden by the Act's amendment of Section 3582(c)(1)(A) to allow defendants to file motions for compassionate release. *Id*. at *3-5.

Assuming without deciding that the title of a provision governs its construction, it does not follow that any circumstance that fails to maximize the use of compassionate release contravenes the purpose of the Act's amendment of Section 3582(c)(1)(A). Permitting a defendant to move for compassionate release of itself increases the use of compassionate release, because it ensures that a greater volume of such motions (not just those BOP agrees are meritorious) will be presented to the courts.[3] Many of those motions will fall under the first four categories of the policy statement, which do not depend on a BOP determination. Moreover, Section 603(b) of the Act has additional provisions that work to increase the use of compassionate release, including requirements that BOP engage in notification efforts regarding the availability of compassionate release and even provide assistance in preparing such requests. 18 U.S.C. § 3582(d). And while retaining BOP as the arbiter of the residual category may not increase the number of compassionate releases, neither will it reduce them, so the net effect of Section 603(b) is decidedly to increase the use of compassionate release. There is thus no tension between a legislative purpose to "increase[e] the use" of compassionate release and a policy statement providing for BOP to make the determination as to one kind (out of five) of extraordinary and compelling reasons for such release. Because such tension is a necessary premise of the *Cantu* Court's reasoning, the absence of such tension defeats its argument.

The *Cantu* Court's ruling depends also on the premise that courts are free to decide that the Commission's policy statement does not reflect an "appropriate use" of Section 3582(c)(1)(A). By its terms, however, Section 994(a)(2)(C) leaves it to the Commission, not the judiciary, to determine what constitutes an appropriate use of the provision, and Section 3582(c)(1)(A) "requires courts to abide by those policy statements." *United States v. Colon*, 707

---

[3] The defendant, referencing studies without submitting them, asserts that BOP "rarely moves" for compassionate release. (Doc. 71 at 1-2).

F.3d 1255, 1259 (11th Cir. 2013). If the policy statement needs tweaking in light of Section 603(b), that tweaking must be accomplished by the Commission, not by the courts.

The *Cantu* Court noted that, while the Commission's policy statement provides that "[a] reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons …,"[4] the Act expressly permits such motions to be filed by a defendant. These mutually exclusive provisions cannot possibly co-exist, and the Court unremarkably concluded that the Act overrides the policy statement in this respect. 2019 WL 2498923 at *3. Although the *Cantu* Court believed the same analysis applies in the present context, *id.*, there is no comparable inherent incompatibility between a statute allowing defendants to move for compassionate release and a policy statement allowing BOP a role in determining whether compassionate release is warranted, and thus no basis for deeming the policy statement overridden.

The Commission may well decide that, since BOP is no longer the gatekeeper regarding the filing of motions for compassionate release, neither should it be the gatekeeper regarding the residual category of extraordinary and compelling reasons for compassionate release. Should the Commission so amend its policy statement, the courts will of course be bound by Section 3582(c)(1)(A) to follow the amended version. Until that day, however, the Court must follow the policy statement as it stands.[5]

Even were the Court to follow *Cantu*, the defendant would obtain no relief. The only residual-category reason for compassionate release that he offers is his self-inflicted wound of forfeiting the right to appeal his conviction and life sentence by choosing to escape federal

---

[4] U.S.S.G. 1B1.13 application note 4.

[5] The Court in *United States v. Beck*, 2019 WL 2716505 (M.D.N.C. 2019), went even further than the *Cantu* Court, ruling that no part of the Commission's policy statement is viable in the context of defendant-filed motions for compassionate release, on the grounds the policy statement is "applicable" (in the terminology of Section 3582(c)(1)(A)) only to motions filed by BOP. *Id.* at *5. While Section 1B1.13 and application note 4 reference motions brought by BOP, this merely restates the legal restriction on proper movants found in Section 3582(c)(1)(A) prior to the Act; it hardly represents the Commission's decision to exclude other movants from the policy statement's reach. Nor is it easy to believe that Congress, which plainly desired the Commission to pour content into "extraordinary and compelling reasons," intended to eliminate that content by allowing defendants to move for compassionate release.

custody while his appeal was pending. (Doc. 73 at 2-3, 5, 7).[6] The defendant's dismissed appeal presumably would have succeeded at least in part, since his co-defendants at trial had their convictions reversed due to improper vouching. *United States v. Eyster*, 948 F.2d 1196 (11th Cir. 1991). The defendant assumes he would not have received a life sentence had he been convicted on retrial, (Doc. 73 at 2), but the Court finds no basis for the assumption; that some of his co-defendants may have received "lesser terms of imprisonment" on retrial, (Doc. 73 at 2), does not indicate that the defendant's guideline range or ultimate sentence would have been lowered.[7] In any event, the Court agrees with Judge Hornby that "those other extraordinary and compelling reasons should be comparable or analogous to what the Commission has already articulated as criteria for compassionate release." *United States v. Fox*, 2019 WL 3046086 at *3 (D. Me. 2019). Those reasons are limited to age, medical condition and family circumstances,[8] and "understandable frustration over the unfairness [a defendant] perceives in others getting sentencing benefits while he does not" furnishes no grounds for compassionate release. *Id*.

### D. BOP Program Statement.

The defendant says he requested compassionate release based on BOP's Program Statement 5050.50, and in particular on its statement that "[a] motion for a modification of a sentence will be made to the sentencing court only in particularly extraordinary or compelling circumstances that could not reasonably have been foreseen by the court at the time of sentencing." (Doc. 73 at 2, 5, 6). Surely, he insists, his trial judge could not have foreseen that his co-defendants' convictions (and his, had he not escaped) would be overturned on appeal for improper vouching. (*Id*. at 5). Perhaps, but as discussed in Part C, issues regarding conviction and sentencing do not constitute extraordinary and compelling reasons supporting compassionate release, either before or after passage of the Act.

---

[6] *Lynn v. United States*, 365 F.3d 1225, 1227-28 (11th Cir. 2004).

[7] Upon their initial convictions, the co-defendants received sentences of 17 and 24 years, respectively, *United States v. Eyster*, 948 F.2d 1196, 1204 (11th Cir. 1991), far below the defendant's seven concurrent life terms. It is thus unsurprising that their sentences on retrial were again less than his.

[8] U.S.S.G. 1B1.13 application note 1(A)-(C).

### E. Congressional Intent.

The defendant acknowledges that Congress did not define "extraordinary and compelling reasons," but he argues there is no indication Congress desired to restrict the term's scope to medical and age-related reasons. Thus, he concludes, the Court should not feel bound to such a limited range. (Doc. 73 at 5-7). The problem, of course, is that Congress left the task of fleshing out the universe of extraordinary and compelling reasons to the Commission, not the judiciary. The Court is not freed by congressional silence but bound by Commission policy statements that Congress has expressly required the courts to follow.

### F. Section 60541.

The defendant notes that he invoked 34 U.S.C. § 60541(g), which permits the Attorney General to release eligible elderly offenders to home detention under certain circumstances. (Doc. 73 at 4-5). The Court addressed this provision in its order, ruling that the defendant is not an "eligible elderly offender" under Section 60541(g)(5)(A)(ii) because, *inter alia*, he is serving a term of life imprisonment. (Doc. 70 at 4). As the defendant asserts no fallacy in the Court's reasoning, there is nothing to reconsider.

For the reasons set forth above, the defendant's deemed motion to reconsider is **denied.**

DONE and ORDERED this 12th day of August, 2019.

s/WILLIAM H. STEELE<br>
UNITED STATES DISTRICT JUDGE