# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF ALABAMA

UNITED STATES OF AMERICA

v.

RICHARD JOESPH LYNN,
Defendant.

Case No. 1:89-CR-00072-WS

---

## MOTION FOR MODIFICATION OF TERM OF IMPRISONMENT
## PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)
## (REQUEST FOR COMPASSIONATE RELEASE)

TO THE HONORABLE JUDGE FOR THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA:

**COMES NOW**, Richard Joseph Lynn, Defendant, **PRO SE**, respectfully moves this Honorable Court pursuant to **18 U.S.C. § 3582(c)(1)(A)(i),** in conjunction with **THE FIRST STEP ACT (P.L. 115-391)**, to reduce his sentence based on compassionate release, in conformance with the **Bureau of Prisons Program Statement 5050.50**, "Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)," section "Requests Made Based on Non-Medical Circumstances – Elderly Inmates," subsection (c), "Other Elderly Inmates."

This motion is based on new qualifications for relief that did not exist at the time of the previous motion for release filed on March 19, 2019.

On December 15, 1989, Mr. Lynn was sentenced by this Court to a term of life imprisonment. Mr. Lynn was convicted of conspiracy to import cocaine, in violation of 21 U.S.C. § 963, conspiracy to possess with intent to distribute cocaine and marijuana, in violation of 21 U.S.C. § 846, three counts of importation of cocaine, in violation of 21 U.S.C. § 952; and two counts of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1).[1] He has now served over 30 actual years, or approximately 360 months, in prison.

## I.    Submission of this Motion to the Court After Exhaustion of Administrative Review

On March 12, 2020, Mr. Lynn submitted a Request for Compassionate Release to the Warden of United States Penitentiary (USP) Coleman II with the *pro bono* assistance of the Criminal Justice Clinic of the University of California, Irvine School of Law.[2] As of the date of this Motion, over 30 days have elapsed since Mr. Lynn initially submitted that Request. As stated in 18 U.S.C. § 3582(c)(1)(A), a defendant may file directly with the Court 30 days after receipt of the Petition by the Warden's Office. Because Mr. Lynn has received no official written response and the requisite time period has passed, he now submits his request for Compassionate Release to the United States District Court for the Southern District of Alabama, in accordance with the guidelines outlined in the 18 U.S.C. § 3582(c)(1)(A).[3]

## II.    Extraordinary and Compelling Circumstances Warrant Mr. Lynn's Release

Richard Lynn is a 65-year-old man who has served more than 30 years for a nonviolent drug offense. Mr. Lynn is a model inmate with 26 years of perfect conduct in prison. He has

---

[1] *United States of America v. Lynn et al.*, Docket No: 1:89-CR-00072 (S.D.Ala May 09, 1989).
[2] *See* Receipt Reflecting Filing of Compassionate Release Petition with Bureau of Prisons, *attached as* Exhibit A.
[3] This Motion for Modification of Term of Imprisonment is an updated version of the Petition for Compassionate Release prepared, *pro bono*, by the Criminal Justice Clinic at the University of California, Irvine School of Law in March 2020, *attached as* Exhibit B.

Motion for Modification of Term of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)

overwhelming and continued support from his community, as well as from several federal agents who were instrumental in his prosecution.

Under the Bureau of Prisons' Program Statement 5050.50, Mr. Lynn qualifies for compassionate release based on non-medical circumstances for elderly inmates who have served at least 75% of their sentence.[4] A life sentence is defined as 470 months by the United States Sentencing Commission.[5] Seventy-five percent of a 470-month sentence is 352.5 months, which translates to just over 29 years in prison. As of the writing of this Motion, Mr. Lynn has served over 30 actual years in prison.

As modified by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) permits modification of a term of imprisonment where "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The U.S. Sentencing Commission has provided guidance as to what constitutes "extraordinary and compelling" reasons. Mr. Lynn falls within the U.S. Sentencing Commission's category (B) "Age of the Defendant."[6] U.S.S.G. § 1B1.13, cmt., n.1. This category is defined as:

> The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13, cmt., n.1(B).

---

[4] The Bureau of Prisons' Program Statement 5050.50, "Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)," states that inmates who may request compassionate release include "inmates age 65 or older who have served the greater of 10 years or 75% of the term of imprisonment to which the inmate was sentenced."

[5] United States Sentencing Commission, *Variable Codebook for Individual Offenders*, App'x B.

[6] Mr. Lynn filed a *pro se* Motion for Reduction of Sentence on March 19, 2019. In that motion, he sought release under the "Medical Condition of the Defendant" category for relief. *See* U.S.S.G. § 1B1.13, cmt. n.1(A). That category requires a showing of a serious physical or medical condition or impairment that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." *Id.* The Court did not find that Mr. Lynn's chronic medical conditions substantially diminished his ability to care for himself in an institutional setting. In its order denying the motion, the Court specifically noted that Mr. Lynn did not qualify for relief under the second category, "Age of the Defendant," because he was not 65 years old. That request was denied without prejudice on July 15, 2019.

Motion for Modification of Term of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)

First, Mr. Lynn, as noted above, was born on July 17, 1954 and is currently 65 years old, satisfying requirement (i). He has served over 30 years in prison, and thus satisfies the third requirement (iii).

With respect to the second requirement, Mr. Lynn has experienced a "serious deterioration" in physical health due to the aging process.[7] Chief among these potentially life-threatening conditions is his chronic kidney failure, which involves the progressive destruction of kidney function and total renal failure. This will result in Mr. Lynn's need for a kidney transplant, which the BOP does not permit. Additionally, Mr. Lynn suffers from atrial fibrillation, high blood pressure, hyperlipidemia (high cholesterol and/or triglyerides), gastroesophageal reflux disorder, benign prostatic hyperplasia (enlarged prostate), cervical disc degeneration, and carpal tunnel syndrome, among other conditions. Each of these conditions has intensified with age.

In addition, Mr. Lynn's congenital heart disease has prompted three emergency trips to outside hospitals for cardioversions, which involves restoring normal heartbeat function through electric shocks to the heart via electrodes placed on the chest. This disease carries a substantial risk of stroke and heart attack. Mr. Lynn's preventative care regimen, which consists of Coumadin, a blood thinner that in certain circumstances could cause massive hemorrhaging, which in the environment of a penitentiary could be fatal.[8]

Furthermore, as the Court is well aware, the Bureau of Prisons (BOP) is currently confronted with the grave and massive COVID-19 pandemic. Due to his age and medical conditions, Mr. Lynn faces a high risk of severe illness or death if he were to catch COVID-19. The Centers of Disease Control and Prevention state that, because of his age and heart disease, Mr. Lynn is at high risk of serious illness if he were to contract COVID-19.[9] A recent study published

[7] *See* Medical Record, *attached as* Exhibit J.
[8] *See* Medical Record at 6, 26, *attached as* Exhibit J.
[9] Centers for Disease Control and Prevention, *Coronavirus Disease 19*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

4

in *JAMA Internal Medicine* found that "old age" was the most associated factor with the development of Acute Respiratory Distress Syndrome (ARDS) and death from COVID-19. [10] A number of courts have recently found that a defendant's elevated health risk during the COVID-19 crisis factors into a finding of extraordinary and compelling reasons in the "Age of the Defendant" category of defendants as defined in the U.S. Sentencing Commission Guidance. [11]

In sum, Mr. Lynn suffers from a multitude of chronic medical conditions as a result of aging that have seriously deteriorated his physical health, satisfying the second requirement for a "serious deterioration in physical or mental health due to the aging process." U.S.S.G. § 1B1.13, cmt., n.1(B).

Furthermore, there exist "extraordinary and compelling reasons" beyond his eligibility for relief under "Age of Defendant" category that justify the granting of Mr. Lynn's petition for compassionate release. [12]

Mr. Lynn boasts a disciplinary record without a single incident of violence. Such exceptionally good behavior is particularly astounding given that Mr. Lynn was given a life sentence. The thirty years that Mr. Lynn has already served in prison is sufficient punishment for a

---

[10] *See* Chaomin Wu et al., *Risk factors associated with acute respiratory distress syndrome and death in patients with coronavirus disease 2019 pneumonia in Wuhan, China*, JAMA Intern. Med. (Mar. 3, 2020), *available at* https://jamanetwork.com/journals/jamainternalmedicine/fullarticle/2763184.

[11] *See, e.g., United States v. Williams*, No. 3:04-cr-00095, Dkt. No. 91 (N.D. Fla. April 1, 2020) (granting § 3582(c)(1)(A)(i) motion "in light of [the defendant's] serious deterioration in physical health and the increasing health risks that the current global pandemic of coronavirus (COVID-19) poses to incarcerated persons, particularly those with underlying health conditions."); *United States v. Marin*, No. 1:15-cr-00252, Dkt. No. 1326 (E.D.N.Y. Mar. 30, 2020) (granting § 3582(c)(1)(A)(i) motion based on defendant's "advanced age, significantly deteriorating health, elevated risk of dire health consequences due to the current COVID-19 outbreak, status as a non-violent offender, and service of 80% of his original sentence."); *United States v. Plunk*, No. 3:94-cr-00036-TMB (D. Alaska Apr. 9, 2020); *see also United States. v. Cantu-Rivera*, 2019 WL 2578272, at *1 (S.D. Tex. June 24, 2019) (granting release on this ground prior to COVID-19 outbreak).

[12] A majority of courts have found that a court is not limited to the strict definitions of "extraordinary and compelling reasons" as provided by the U.S. Sentencing Commission. *See United States v. Rodriguez*, 2:03-cr-00271-AB-1 (E.D. Penn. Apr. 1, 2020) (agreeing with this position and summarizing cases); *United States v. Redd*, 2020 WL 1248493, at *8 (E.D. Va. Mar. 16, 2020) ("[T]he Court joins other courts in concluding that a court may find…that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C)."); United States v. Maumau, 2020 WL 806121, at *3 (D. Utah Feb. 18, 2020) (agreeing with this position and listing collecting cases).

nonviolent offender who has demonstrated exceptional behavior in prison and who would be welcomed wholeheartedly by his community upon his release. The scope and unyielding nature of Mr. Lynn's community support is astonishing. There are few, if any, federal inmates, who can truthfully claim that *several* former DEA agents and a mayor are among those passionately advocating for their release.[13]

All of Mr. Lynn's codefendants are long out of prison. Mr. Lynn has served seventeen years more than the codefendant with the second longest sentence. His codefendants' convictions were reversed and remanded due to the prosecutorial misconduct.[14] Each of his codefendants received lesser terms of imprisonment as a result of the Eleventh Circuit's reversal and have since been released. The additional seventeen years that he has served beyond his codefendants has provided sufficient additional punishment for an escape from custody by Mr. Lynn in 1990.[15] Mr. Lynn now has 26 years of good conduct while in prison on his record.

When considered together, the facts that Mr. Lynn is a nonviolent elderly offender suffering from a deterioration in physical health, who boasts a 26-year spotless record in federal prison and has maintained relationships within an overwhelmingly supportive community awaiting his release, prompt a finding that Mr. Lynn is a worthy candidate for compassionate release.

## III.  A Modification of Sentence is Consistent with Sentencing Commission Policy and 18 U.S.C. § 3553(a)

When reviewing a sentencing modification request, the Court must first consider the sentencing factors of 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A). The Court must also find

---

[13] *See* Letters of Support and Affidavits from Drug Enforcement Agency (DEA) Agents, Letter and Affidavit from Edward Odom, Affidavit of Alan Brown, and Letter from Kenneth Davis, *attached as* Exhibit C.

[14] The prosecutor improperly vouched for the credibility of a government witness. *See United States v. Eyster*, 948 F.2d 1196 (11th Cir. 1991)

[15] Mr. Lynn was unable to have his own sentence similarly remanded because he forfeited to the right to appeal following his escape from federal custody during the pendency of his appeal. After his recapture, Mr. Lynn pled guilty to conspiracy to import a controlled substance in 1991 and received 120-month sentence that ran concurrently to his life sentence. *See* Sentence Monitoring Computation Data, *attached as* Exhibit F.

Motion for Modification of Term of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)

that a sentence modification is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The requirement that the sentence modification be consistent with U.S. Sentencing Commission policy "is essentially already met if 'extraordinary and compelling reasons' exist as defined by that policy." *United States v. Ebbers*, 2020WL91399, at *6 (S.D.N.Y. Jan. 8, 2020). "The only remaining consideration is the policy statement's requirement that the 'defendant is not a danger to the safety of any other person or to the community.'" *Id.*

Here, Mr. Lynn meets the definition of "extraordinary and compelling reasons" as defined by U.S. Sentencing Commission policy guidance. In addition, as described below, Mr. Lynn is not a danger to the community and his release would be consistent with the sentencing factors under 18 U.S.C. § 3553(a).

In Program Statement 5050.50, "Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)," the BOP offers thirteen factors to guide a Warden's determination of whether an inmate's request for compassionate release presents extraordinary and compelling circumstances warranting relief. These factors are neither exclusive nor weighted. A consideration of these factors in Mr. Lynn's case demonstrates that, in addition to meeting the BOP factors, his compassionate release is consistent with U.S. Sentencing Commission policy and the sentencing factors of 18 U.S.C. § 3553(a).

**A. Nature and Circumstances of Mr. Lynn's Offense**

Mr. Lynn is serving a life sentence for a non-violent offense. Mr. Lynn was convicted by a jury for violations of 21 U.S.C. § 963 (conspiracy to import cocaine), 21 U.S.C. § 846 (conspiracy to possess with intent to distribute cocaine and marijuana), three violations of 21 U.S.C. § 952

(importation of cocaine), and two violations of 21 U.S.C. § 841(a)(1) (possession with intent to distribute cocaine).[16]

Today, Mr. Lynn is a 65-year-old man who has served more than 30 years of his life sentence. He committed the offense when he was 34 years old and has since participated in countless prison programs that have helped him completely relinquish his prior involvement in drug distribution.[17] Mr. Lynn's involvement in the drug trade began when he was nineteen years-old, shortly after the death of his father, which also prompted him to temporarily drop out of high school. A friend's father convinced Mr. Lynn to help smuggle marijuana using boats in and around Islamorada, Florida. Mr. Lynn became involved with this activity at an age when he had no direction for his life and should have been working towards building a career. Instead, due in part to the prevalence of marijuana-smuggling culture in Islamorada at the time, and in part to his upbringing as the child of two alcoholics, Mr. Lynn made poor decisions that resulted in his growing involvement with drugs.

**B. Mr. Lynn's Criminal History**

Mr. Lynn has only one prior conviction. On September 2, 1982, Mr. Lynn was sentenced to 30 months in prison for conspiracy to possess with intent to distribute cocaine. He was released after 24 months.

**C. Institutional Adjustment**

Mr. Lynn has shown exemplary conduct while in prison for more than 30 years. Mr. Lynn has taken every opportunity to participate in classes and programs and has been on a path to self-betterment since entering prison. He participated in the Twelve Steps for Change program Substance Abuse Program, Ethics Program, Yoga, and various Psychology courses and groups,

---

[16] *Lynn v. United States*, 365 F.3d 1225, 1227 n.2 (11th Cir. 2004)
[17] *See* Extracurricular Activities in Prison, *attached as* Exhibit G.

including a Crime and Human Nature Psychology Group.[18] Mr. Lynn's engagement in a variety of classes covering a wide breadth of topics reflects his ability to develop hobbies and interests, even in an acutely stressful prison environment.

Additionally, to provide himself options for future employment, Mr. Lynn received continuing education credit towards a commercial driver's license.

## D. Disciplinary Infractions

Mr. Lynn has an extremely short disciplinary record given his length of incarceration and the fact that he received a life sentence. He has maintained an incident-free record for the past 26 years. Mr. Lynn escaped from custody briefly in March of 1990 before being detained in August 1990 in Long Beach, Mississippi. During this time, Mr. Lynn was charged for conspiracy to import a controlled substance, to which Mr. Lynn pled guilty in 1991. He received a 120-month sentence that ran concurrently to his life sentence.[19] During his escape, Mr. Lynn met Danny Bogard, a rogue DEA agent. Mr. Lynn later assisted the government by testifying against Mr. Bogard, who was subsequently convicted. Mr. Lynn made another unsuccessful escape attempt in 1992 in Terre Haute, Indiana, which he greatly regrets. Even seventeen years later, Mr. Lynn speaks about his escape and second attempt with deep shame. He also recognizes that he may have had his sentence reduced on appeal, like the sentences of his co-defendants were reduced, had he not made the poor decision to escape in 1990.

In 1993 in USP Marion, a piece of a plastic food tray was found in Mr. Lynn's cell soon after he moved in, and it was noted in his file as a weapon. However, according to Mr. Lynn, the piece of plastic did not belong to him, as he had moved into that cell just four days prior. The plastic piece belonged to the inmate occupying Mr. Lynn's cell just before him. At no point did Mr. Lynn

---

[18] *See* Extracurricular Activities in Prison, *attached as* Exhibit G.
[19] *See* Sentence Monitoring Computation Data, *attached as* Exhibit F.

Motion for Modification of Term of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)

use the plastic piece as a weapon. As a punishment for being found with the piece of the plastic food tray, Mr. Lynn was kept in the Solitary Housing Unit for 56 days.

Mr. Lynn's escape attempts were made at the very beginning of his sentence. Since those incidents in the early 1990s, Mr. Lynn has not attempted another escape, nor has he been involved in any further incidents. This has resulted in incident-free conduct for the last 26 years. Mr. Lynn's over two and a half decades without a disciplinary infraction demonstrates Mr. Lynn's extraordinary good conduct.

**E.  Personal History Derived from the Presentence Report**

Mr. Lynn was born on July 17, 1954 in Central Lake, Michigan. Mr. Lynn moved to Tavernier, Florida at the age of five and grew up in a tight-knit community in the Florida Keys with his parents, older brother, and older sister. His mother worked as a waitress and his father worked as a construction worker, however, both were alcoholics.

Mr. Lynn's sister passed away from cystic fibrosis and his brother died of a heart attack. His brother's wife, who lives just 25 miles from Mr. Lynn's prison, remains in touch with Mr. Lynn. Mr. Lynn's father was killed in 1972 in a head-on car accident, and his mother died of an aneurysm just a few months after Mr. Lynn's arrest in 1989. Mr. Lynn attended high school through the eleventh grade, but withdrew from school in 1972 because of the death of his father. Mr. Lynn later graduated high school from Adelphi School in Miami, Florida in 1973. Mr. Lynn worked as a self-employed construction subcontractor prior to his arrest. He reported having heart trouble resulting from a boating accident that occurred around 1986.

Mr. Lynn has been married twice. He married his first wife, Robin Dunbar, on November 16, 1973. They divorced on November 14, 1981. He married his second wife, Lisa Lynn, on December 29, 1985.

Motion for Modification of Term of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)

Mr. Lynn has a daughter who lives in Tampa, Florida with her two children, named Mason and Cole, who are aged 8 and 6, respectively. Mr. Lynn also has a son who has three children that he has not yet met. Mr. Lynn's nephew, Justin Lynn, who Mr. Lynn intends to live with upon his release, resides in Key Largo, Florida. Justin Lynn has expressed his commitment to assisting Mr. Lynn upon his release with reintegration.

**F.  Mr. Lynn's Release Plans**

Mr. Lynn has a strong re-entry plan that will provide stability and financial support. Several friends and members of his family have pledged their support for him and are willing to assist him in any way that they can.[20] Upon release, Mr. Lynn plans to move to Key Largo, Florida to live with his nephew, Justin Lynn. Mr. Lynn intends to work with his nephew, Justin, in his landscaping business. Justin Lynn does the landscaping for about nine rental properties owned by another company. Mr. Lynn also has an opportunity to work with a friend, Bobby Vaughn, who owns two convenience stores, as well as a real estate company. Further, his friend Dale Rodberg, who is Managing Director at Wells Fargo Securities, is willing to provide Mr. Lynn with an employment opportunity. Mr. Lynn will have no shortage of employment offers.

Mr. Lynn intends to obtain healthcare at a hospital near his nephew's home and intends to enroll in Medicare. He intends to begin treating his kidney disease by getting a colonoscopy, which he has been unable to do for three years in prison. Should his kidney disease progress, Mr. Lynn will require dialysis or a kidney transplant, which he can obtain at a nearby hospital. He will also address his chronic heart conditions upon his release.

Though thirty years have elapsed, Mr. Lynn's friends and family continue to zealously support him while he is incarcerated. They have created a Facebook group, "Release Dickie Lynn," that

---

[20] *See* Letters of Support from Community Members, *attached as* Exhibit H.

Motion for Modification of Term of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)

has over 570 members.[21] The page is extremely active despite the fact that Mr. Lynn has been behind bars for over three decades. His friends and family frequently post old photos of Mr. Lynn as well as updates on his wellbeing and information learned from their communications with him. This reflects the unwavering enthusiasm and dedication that his community continues to feel towards him. Few inmates serving life sentences have the continuous, vocal support that Mr. Lynn enjoys. Mr. Lynn has not been forgotten by his community and will be received with open arms upon his release. Additionally, there have been numerous newspaper articles written in Mr. Lynn's home state indicating the overwhelming community commitment to supporting Mr. Lynn upon his release.[22]

### G. Whether Release Would Minimize the Seriousness of the Offense

Releasing Mr. Lynn would not minimize the seriousness of the offence. Mr. Lynn is a 65-year-old man who has already served over 30 years in prison for a nonviolent offense. He greatly regrets the poor decisions that he made earlier in life and has paid dearly for those mistakes.[23] All of Mr. Lynn's co-defendants have been released from prison. Mr. Lynn's continued incarceration will do nothing to promote public safety, nor will it assure the Bureau of Prisons that Mr. Lynn is a nonthreatening inmate. As previously discussed, Mr. Lynn's 26 years of incident-free time in prison demonstrates that he is non-violent and nonthreatening. The Bureau of Prisons noted in January 2020 that Mr. Lynn has a low risk of recidivism.[24]

---

[21] *See* Screenshot of "Release Dickie Lynn" Facebook Page (https://www.facebook.com/releasedickielynn/), *attached as* Exhibit I.
[22] *See* This Cocaine Smuggler Has Served 29 Years. Keys Lawmakers Think That's Long Enough, https://www.miamiherald.com/news/local/community/florida-keys/article222965610.html; Counsel to Urge Clemency for Convicted Smuggler, https://keysnews.com/article/story/council-to-urge-clemency-for-convicted-smuggler/; Calling for Clemency, https://keysweekly.com/42/calling-for-clemency/; He's Sick and the Last in His Case Still in Prison, But Judge Denies Drug Smuggler's Release, https://www.flkeysnews.com/news/local/article232891547.html).
[23] *See* Personal Letter to the President, *attached as* Exhibit D.
[24] *See* BOP First Step Act Eligibility and Recidivism Risk Determination, *attached as* Exhibit E.

12

Motion for Modification of Term of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)

For Mr. Lynn, freedom would be life-altering. It would enable him to be with his family, including his nephew, daughter, and grandchildren, as he enters old age. Mr. Lynn has not yet had the opportunity to hold his grandchildren. At the age of 65, Mr. Lynn will have the opportunity to pursue a life free of the criminal activity he was involved in prior to his conviction. He would be able to pursue a job in his nephew's already-established landscaping business.

Mr. Lynn has strong support from his Islamorada community. Among the dozens of support letters from those in the community, former DEA agents have voiced their support for Mr. Lynn's request for a sentence reduction.[25]

Former DEA agents, Edward Odom and Alan Brown, who both assisted in the investigation that resulted in Mr. Lynn's prosecution, have written letters of support for Mr. Lynn's release.[26] Mr. Odom advocates for Mr. Lynn's release because his assistance enabled the federal government to repatriate hundreds of millions of dollars' worth of assets.[27] A third former DEA agent and Islamorada Councilmember, Ken Davis, has also written a letter.[28]

Additionally, Islamorada Mayor Deb Gills has voiced her support for Mr. Lynn's release, emphasizing that he will be met with support in whatever form he needs if he returns to Islamorada.[29]

The Islamorada and larger Florida Keys communities are eager to welcome Mr. Lynn home and integrate him as a productive member of their community. Releasing Mr. Lynn would not minimize the seriousness of the offense, for he has accepted responsibility for his mistakes and has maintained 26 years of perfect conduct in prison, a feat to which few inmates sentenced to life can lay claim.

---

[25] *See* Letters of Support and Affidavits from Drug Enforcement Agency (DEA) Agents, Letter and Affidavit from Edward Odom, Affidavit of Alan Brown, and Letter from Kenneth Davis, *attached as* Exhibit C.
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *See* Letters of Support from Community Members, Letter from Mayor Deb Gills, *attached as* Exhibit H.

## Conclusion

Richard "Dickie" Lynn is 65 years old and has been in prison for thirty years. While in prison, Mr. Lynn has continuously sought to improve himself mentally and physically. He is a model inmate with an exceptional record of good behavior. Mr. Lynn's family and friends are eager to welcome him back into their lives, homes, and community. Mr. Lynn's sentence has served its penological purpose; no further time is necessary to impress upon Mr. Lynn that his prior conduct was unacceptable. Mr. Lynn takes responsibility for the poor decisions that he made over thirty years ago and wishes for the opportunity to prove himself a productive, law-abiding community member. In light of Mr. Lynn's age and deteriorating medical condition, the lengthy sentence that he has already served, and his pristine prison record, Mr. Lynn's request for compassionate release should be granted.

**WHEREFORE**, in light of the aforementioned qualifications for compassionate release, Defendant respectfully requests that this Honorable Court reduce his life sentence to the time that Defendant has served as of the date of the Court's hearing on this motion.

Dated:        April _____, 2020

Respectfully Submitted,

_____

RICHARD JOSEPH LYNN
Reg. No. 09478-004
USP Coleman II
United States Penitentiary
PO Box 1034
Coleman, FL 33521

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF ALABAMA

UNITED STATES OF AMERICA

v.

Case No. 1:89-CR-00072

RICHARD JOESPH LYNN,
Defendant.

## MOTION FOR MODIFICATION OF TERM OF IMPRISONMENT
## PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)
## (REQUEST FOR COMPASSIONATE RELEASE)

TO THE HONORABLE JUDGE FOR THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA:

**COMES NOW**, Richard Joseph Lynn, Defendant, **PRO SE**, respectfully moves this Honorable Court pursuant to **18 U.S.C. § 3582(c)(1)(A)(i),** in conjunction with **THE FIRST STEP ACT (P.L. 115-391)**, to reduce his sentence based on compassionate release, in conformance with the **Bureau of Prisons Program Statement 5050.50,** "Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)," section "Requests Made Based on Non-Medical Circumstances – Elderly Inmates," subsection (c), "Other Elderly Inmates."

This motion is based on new qualifications for relief that did not exist at the time of the previous motion for release filed on March 19, 2019.

On December 15, 1989, Mr. Lynn was sentenced by this Court to a term of life imprisonment. Mr. Lynn was convicted of conspiracy to import cocaine, in violation of 21 U.S.C. § 963, conspiracy to possess with intent to distribute cocaine and marijuana, in violation of 21 U.S.C. § 846, three counts of importation of cocaine, in violation of 21 U.S.C. § 952; and two counts of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1).[1] He has now served over 30 actual years, or approximately 360 months, in prison.

## I.     Submission of this Motion to the Court After Exhaustion of Administrative Review

On March 12, 2020, Mr. Lynn submitted a Request for Compassionate Release to the Warden of United States Penitentiary (USP) Coleman II with the *pro bono* assistance of the Criminal Justice Clinic of the University of California, Irvine School of Law.[2] As of the date of this Motion, over 30 days have elapsed since Mr. Lynn initially submitted that Request. As stated in 18 U.S.C. § 3582(c)(1)(A), a defendant may file directly with the Court 30 days after receipt of the Petition by the Warden's Office. Because Mr. Lynn has received no official written response and the requisite time period has passed, he now submits his request for Compassionate Release to the United States District Court for the Southern District of Alabama, in accordance with the guidelines outlined in the 18 U.S.C. § 3582(c)(1)(A).[3]

## II.    Extraordinary and Compelling Circumstances Warrant Mr. Lynn's Release

Richard Lynn is a 65-year-old man who has served more than 30 years for a nonviolent drug offense. Mr. Lynn is a model inmate with 26 years of perfect conduct in prison. He has

---

[1] *United States of America v. Lynn et al.*, Docket No: 1:89-CR-00072 (S.D.Ala May 09, 1989).
[2] *See* Receipt Reflecting Filing of Compassionate Release Petition with Bureau of Prisons, *attached as* Exhibit A.
[3] This Motion for Modification of Term of Imprisonment is an updated version of the Petition for Compassionate Release prepared, *pro bono*, by the Criminal Justice Clinic at the University of California, Irvine School of Law in March 2020, *attached as* Exhibit B.

Motion for Modification of Term of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)

overwhelming and continued support from his community, as well as from several federal agents who were instrumental in his prosecution.

Under the Bureau of Prisons' Program Statement 5050.50, Mr. Lynn qualifies for compassionate release based on non-medical circumstances for elderly inmates who have served at least 75% of their sentence.[4] A life sentence is defined as 470 months by the United States Sentencing Commission.[5] Seventy-five percent of a 470-month sentence is 352.5 months, which translates to just over 29 years in prison. As of the writing of this Motion, Mr. Lynn has served over 30 actual years in prison.

As modified by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) permits modification of a term of imprisonment where "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The U.S. Sentencing Commission has provided guidance as to what constitutes "extraordinary and compelling" reasons. Mr. Lynn falls within the U.S. Sentencing Commission's category (B) "Age of the Defendant."[6] U.S.S.G. § 1B1.13, cmt., n.1. This category is defined as:

> The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13, cmt., n.1(B).

---

[4] The Bureau of Prisons' Program Statement 5050.50, "Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)," states that inmates who may request compassionate release include "inmates age 65 or older who have served the greater of 10 years or 75% of the term of imprisonment to which the inmate was sentenced."
[5] United States Sentencing Commission, *Variable Codebook for Individual Offenders*, App'x B.
[6] Mr. Lynn filed a *pro se* Motion for Reduction of Sentence on March 19, 2019. In that motion, he sought release under the "Medical Condition of the Defendant" category for relief. *See* U.S.S.G. § 1B1.13, cmt. n.1(A). That category requires a showing of a serious physical or medical condition or impairment that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." *Id.* The Court did not find that Mr. Lynn's chronic medical conditions substantially diminished his ability to care for himself in an institutional setting. In its order denying the motion, the Court specifically noted that Mr. Lynn did not qualify for relief under the second category, "Age of the Defendant," because he was not 65 years old. That request was denied without prejudice on July 15, 2019.

First, Mr. Lynn, as noted above, was born on July 17, 1954 and is currently 65 years old, satisfying requirement (i). He has served over 30 years in prison, and thus satisfies the third requirement (iii).

With respect to the second requirement, Mr. Lynn has experienced a "serious deterioration" in physical health due to the aging process.[7] Chief among these potentially life-threatening conditions is his chronic kidney failure, which involves the progressive destruction of kidney function and total renal failure. This will result in Mr. Lynn's need for a kidney transplant, which the BOP does not permit. Additionally, Mr. Lynn suffers from atrial fibrillation, high blood pressure, hyperlipidemia (high cholesterol and/or triglyerides), gastroesophageal reflux disorder, benign prostatic hyperplasia (enlarged prostate), cervical disc degeneration, and carpal tunnel syndrome, among other conditions. Each of these conditions has intensified with age.

In addition, Mr. Lynn's congenital heart disease has prompted three emergency trips to outside hospitals for cardioversions, which involves restoring normal heartbeat function through electric shocks to the heart via electrodes placed on the chest. This disease carries a substantial risk of stroke and heart attack. Mr. Lynn's preventative care regimen, which consists of Coumadin, a blood thinner that in certain circumstances could cause massive hemorrhaging, which in the environment of a penitentiary could be fatal.[8]

Furthermore, as the Court is well aware, the Bureau of Prisons (BOP) is currently confronted with the grave and massive COVID-19 pandemic. Due to his age and medical conditions, Mr. Lynn faces a high risk of severe illness or death if he were to catch COVID-19. The Centers of Disease Control and Prevention state that, because of his age and heart disease, Mr. Lynn is at high risk of serious illness if he were to contract COVID-19.[9] A recent study published

---

[7] *See* Medical Record, *attached as* Exhibit J.
[8] *See* Medical Record at 6, 26, *attached as* Exhibit J.
[9] Centers for Disease Control and Prevention, *Coronavirus Disease 19*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

Motion for Modification of Term of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)

in *JAMA Internal Medicine* found that "old age" was the most associated factor with the development of Acute Respiratory Distress Syndrome (ARDS) and death from COVID-19. [10] A number of courts have recently found that a defendant's elevated health risk during the COVID-19 crisis factors into a finding of extraordinary and compelling reasons in the "Age of the Defendant" category of defendants as defined in the U.S. Sentencing Commission Guidance. [11]

In sum, Mr. Lynn suffers from a multitude of chronic medical conditions as a result of aging that have seriously deteriorated his physical health, satisfying the second requirement for a "serious deterioration in physical or mental health due to the aging process." U.S.S.G. § 1B1.13, cmt., n.1(B).

Furthermore, there exist "extraordinary and compelling reasons" beyond his eligibility for relief under "Age of Defendant" category that justify the granting of Mr. Lynn's petition for compassionate release. [12]

Mr. Lynn boasts a disciplinary record without a single incident of violence. Such exceptionally good behavior is particularly astounding given that Mr. Lynn was given a life sentence. The thirty years that Mr. Lynn has already served in prison is sufficient punishment for a

---

[10] *See* Chaomin Wu et al., *Risk factors associated with acute respiratory distress syndrome and death in patients with coronavirus disease 2019 pneumonia in Wuhan, China*, JAMA Intern. Med. (Mar. 3, 2020), *available at* https://jamanetwork.com/journals/jamainternalmedicine/fullarticle/2763184.

[11] *See, e.g., United States v. Williams*, No. 3:04-cr-00095, Dkt. No. 91 (N.D. Fla. April 1, 2020) (granting § 3582(c)(1)(A)(i) motion "in light of [the defendant's] serious deterioration in physical health and the increasing health risks that the current global pandemic of coronavirus (COVID-19) poses to incarcerated persons, particularly those with underlying health conditions."); *United States v. Marin*, No. 1:15-cr-00252, Dkt. No. 1326 (E.D.N.Y. Mar. 30, 2020) (granting § 3582(c)(1)(A)(i) motion based on defendant's "advanced age, significantly deteriorating health, elevated risk of dire health consequences due to the current COVID-19 outbreak, status as a non-violent offender, and service of 80% of his original sentence."); *United States v. Plunk*, No. 3:94-cr-00036-TMB (D. Alaska Apr. 9, 2020); *see also United States. v. Cantu-Rivera*, 2019 WL 2578272, at *1 (S.D. Tex. June 24, 2019) (granting release on this ground prior to COVID-19 outbreak).

[12] A majority of courts have found that a court is not limited to the strict definitions of "extraordinary and compelling reasons" as provided by the U.S. Sentencing Commission. *See United States v. Rodriguez*, 2:03-cr-00271-AB-1 (E.D. Penn. Apr. 1, 2020) (agreeing with this position and summarizing cases); *United States v. Redd*, 2020 WL 1248493, at *8 (E.D. Va. Mar. 16, 2020) ("[T]he Court joins other courts in concluding that a court may find…that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C)."); United States v. Maumau, 2020 WL 806121, at *3 (D. Utah Feb. 18, 2020) (agreeing with this position and listing collecting cases).

Motion for Modification of Term of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)

nonviolent offender who has demonstrated exceptional behavior in prison and who would be welcomed wholeheartedly by his community upon his release. The scope and unyielding nature of Mr. Lynn's community support is astonishing. There are few, if any, federal inmates, who can truthfully claim that *several* former DEA agents and a mayor are among those passionately advocating for their release.[13]

All of Mr. Lynn's codefendants are long out of prison. Mr. Lynn has served seventeen years more than the codefendant with the second longest sentence. His codefendants' convictions were reversed and remanded due to the prosecutorial misconduct.[14] Each of his codefendants received lesser terms of imprisonment as a result of the Eleventh Circuit's reversal and have since been released. The additional seventeen years that he has served beyond his codefendants has provided sufficient additional punishment for an escape from custody by Mr. Lynn in 1990.[15]  Mr. Lynn now has 26 years of good conduct while in prison on his record.

When considered together, the facts that Mr. Lynn is a nonviolent elderly offender suffering from a deterioration in physical health, who boasts a 26-year spotless record in federal prison and has maintained relationships within an overwhelmingly supportive community awaiting his release, prompt a finding that Mr. Lynn is a worthy candidate for compassionate release.

## III.    A Modification of Sentence is Consistent with Sentencing Commission Policy and 18 U.S.C. § 3553(a)

When reviewing a sentencing modification request, the Court must first consider the sentencing factors of 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A). The Court must also find

---

[13] *See* Letters of Support and Affidavits from Drug Enforcement Agency (DEA) Agents, Letter and Affidavit from Edward Odom, Affidavit of Alan Brown, and Letter from Kenneth Davis, *attached as* Exhibit C.

[14] The prosecutor improperly vouched for the credibility of a government witness. *See United States v. Eyster*, 948 F.2d 1196 (11th Cir. 1991)

[15] Mr. Lynn was unable to have his own sentence similarly remanded because he forfeited to the right to appeal following his escape from federal custody during the pendency of his appeal. After his recapture, Mr. Lynn pled guilty to conspiracy to import a controlled substance in 1991 and received 120-month sentence that ran concurrently to his life sentence. *See* Sentence Monitoring Computation Data, *attached as* Exhibit F.

Motion for Modification of Term of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)

that a sentence modification is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The requirement that the sentence modification be consistent with U.S. Sentencing Commission policy "is essentially already met if 'extraordinary and compelling reasons' exist as defined by that policy." *United States v. Ebbers*, 2020WL91399, at *6 (S.D.N.Y. Jan. 8, 2020). "The only remaining consideration is the policy statement's requirement that the 'defendant is not a danger to the safety of any other person or to the community.'" *Id.*

Here, Mr. Lynn meets the definition of "extraordinary and compelling reasons" as defined by U.S. Sentencing Commission policy guidance. In addition, as described below, Mr. Lynn is not a danger to the community and his release would be consistent with the sentencing factors under 18 U.S.C. § 3553(a).

In Program Statement 5050.50, "Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)," the BOP offers thirteen factors to guide a Warden's determination of whether an inmate's request for compassionate release presents extraordinary and compelling circumstances warranting relief. These factors are neither exclusive nor weighted. A consideration of these factors in Mr. Lynn's case demonstrates that, in addition to meeting the BOP factors, his compassionate release is consistent with U.S. Sentencing Commission policy and the sentencing factors of 18 U.S.C. § 3553(a).

**A.    Nature and Circumstances of Mr. Lynn's Offense**

Mr. Lynn is serving a life sentence for a non-violent offense. Mr. Lynn was convicted by a jury for violations of 21 U.S.C. § 963 (conspiracy to import cocaine), 21 U.S.C. § 846 (conspiracy to possess with intent to distribute cocaine and marijuana), three violations of 21 U.S.C. § 952

Motion for Modification of Term of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)

(importation of cocaine), and two violations of 21 U.S.C. § 841(a)(1) (possession with intent to distribute cocaine).[16]

Today, Mr. Lynn is a 65-year-old man who has served more than 30 years of his life sentence. He committed the offense when he was 34 years old and has since participated in countless prison programs that have helped him completely relinquish his prior involvement in drug distribution.[17] Mr. Lynn's involvement in the drug trade began when he was nineteen years-old, shortly after the death of his father, which also prompted him to temporarily drop out of high school. A friend's father convinced Mr. Lynn to help smuggle marijuana using boats in and around Islamorada, Florida. Mr. Lynn became involved with this activity at an age when he had no direction for his life and should have been working towards building a career. Instead, due in part to the prevalence of marijuana-smuggling culture in Islamorada at the time, and in part to his upbringing as the child of two alcoholics, Mr. Lynn made poor decisions that resulted in his growing involvement with drugs.

**B.  Mr. Lynn's Criminal History**

Mr. Lynn has only one prior conviction. On September 2, 1982, Mr. Lynn was sentenced to 30 months in prison for conspiracy to possess with intent to distribute cocaine. He was released after 24 months.

**C.  Institutional Adjustment**

Mr. Lynn has shown exemplary conduct while in prison for more than 30 years. Mr. Lynn has taken every opportunity to participate in classes and programs and has been on a path to self-betterment since entering prison. He participated in the Twelve Steps for Change program Substance Abuse Program, Ethics Program, Yoga, and various Psychology courses and groups,

---

[16] *Lynn v. United States*, 365 F.3d 1225, 1227 n.2 (11th Cir. 2004)
[17] *See* Extracurricular Activities in Prison, *attached as* Exhibit G.

Motion for Modification of Term of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)

including a Crime and Human Nature Psychology Group.[18] Mr. Lynn's engagement in a variety of classes covering a wide breadth of topics reflects his ability to develop hobbies and interests, even in an acutely stressful prison environment.

Additionally, to provide himself options for future employment, Mr. Lynn received continuing education credit towards a commercial driver's license.

**D. Disciplinary Infractions**

Mr. Lynn has an extremely short disciplinary record given his length of incarceration and the fact that he received a life sentence. He has maintained an incident-free record for the past 26 years. Mr. Lynn escaped from custody briefly in March of 1990 before being detained in August 1990 in Long Beach, Mississippi. During this time, Mr. Lynn was charged for conspiracy to import a controlled substance, to which Mr. Lynn pled guilty in 1991. He received a 120-month sentence that ran concurrently to his life sentence.[19] During his escape, Mr. Lynn met Danny Bogard, a rogue DEA agent. Mr. Lynn later assisted the government by testifying against Mr. Bogard, who was subsequently convicted. Mr. Lynn made another unsuccessful escape attempt in 1992 in Terre Haute, Indiana, which he greatly regrets. Even seventeen years later, Mr. Lynn speaks about his escape and second attempt with deep shame. He also recognizes that he may have had his sentence reduced on appeal, like the sentences of his co-defendants were reduced, had he not made the poor decision to escape in 1990.

In 1993 in USP Marion, a piece of a plastic food tray was found in Mr. Lynn's cell soon after he moved in, and it was noted in his file as a weapon. However, according to Mr. Lynn, the piece of plastic did not belong to him, as he had moved into that cell just four days prior. The plastic piece belonged to the inmate occupying Mr. Lynn's cell just before him. At no point did Mr. Lynn

---

[18] *See* Extracurricular Activities in Prison, *attached as* Exhibit G.
[19] *See* Sentence Monitoring Computation Data, *attached as* Exhibit F.

Motion for Modification of Term of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)

use the plastic piece as a weapon. As a punishment for being found with the piece of the plastic food tray, Mr. Lynn was kept in the Solitary Housing Unit for 56 days.

Mr. Lynn's escape attempts were made at the very beginning of his sentence. Since those incidents in the early 1990s, Mr. Lynn has not attempted another escape, nor has he been involved in any further incidents. This has resulted in incident-free conduct for the last 26 years. Mr. Lynn's over two and a half decades without a disciplinary infraction demonstrates Mr. Lynn's extraordinary good conduct.

**E. Personal History Derived from the Presentence Report**

Mr. Lynn was born on July 17, 1954 in Central Lake, Michigan. Mr. Lynn moved to Tavernier, Florida at the age of five and grew up in a tight-knit community in the Florida Keys with his parents, older brother, and older sister. His mother worked as a waitress and his father worked as a construction worker, however, both were alcoholics.

Mr. Lynn's sister passed away from cystic fibrosis and his brother died of a heart attack. His brother's wife, who lives just 25 miles from Mr. Lynn's prison, remains in touch with Mr. Lynn. Mr. Lynn's father was killed in 1972 in a head-on car accident, and his mother died of an aneurysm just a few months after Mr. Lynn's arrest in 1989. Mr. Lynn attended high school through the eleventh grade, but withdrew from school in 1972 because of the death of his father. Mr. Lynn later graduated high school from Adelphi School in Miami, Florida in 1973. Mr. Lynn worked as a self-employed construction subcontractor prior to his arrest. He reported having heart trouble resulting from a boating accident that occurred around 1986.

Mr. Lynn has been married twice. He married his first wife, Robin Dunbar, on November 16, 1973. They divorced on November 14, 1981. He married his second wife, Lisa Lynn, on December 29, 1985.

Motion for Modification of Term of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)

Mr. Lynn has a daughter who lives in Tampa, Florida with her two children, named Mason and Cole, who are aged 8 and 6, respectively. Mr. Lynn also has a son who has three children that he has not yet met. Mr. Lynn's nephew, Justin Lynn, who Mr. Lynn intends to live with upon his release, resides in Key Largo, Florida. Justin Lynn has expressed his commitment to assisting Mr. Lynn upon his release with reintegration.

**F. Mr. Lynn's Release Plans**

Mr. Lynn has a strong re-entry plan that will provide stability and financial support. Several friends and members of his family have pledged their support for him and are willing to assist him in any way that they can.[20] Upon release, Mr. Lynn plans to move to Key Largo, Florida to live with his nephew, Justin Lynn. Mr. Lynn intends to work with his nephew, Justin, in his landscaping business. Justin Lynn does the landscaping for about nine rental properties owned by another company. Mr. Lynn also has an opportunity to work with a friend, Bobby Vaughn, who owns two convenience stores, as well as a real estate company. Further, his friend Dale Rodberg, who is Managing Director at Wells Fargo Securities, is willing to provide Mr. Lynn with an employment opportunity. Mr. Lynn will have no shortage of employment offers.

Mr. Lynn intends to obtain healthcare at a hospital near his nephew's home and intends to enroll in Medicare. He intends to begin treating his kidney disease by getting a colonoscopy, which he has been unable to do for three years in prison. Should his kidney disease progress, Mr. Lynn will require dialysis or a kidney transplant, which he can obtain at a nearby hospital. He will also address his chronic heart conditions upon his release.

Though thirty years have elapsed, Mr. Lynn's friends and family continue to zealously support him while he is incarcerated. They have created a Facebook group, "Release Dickie Lynn," that

---

[20] *See* Letters of Support from Community Members, *attached as* Exhibit H.

Motion for Modification of Term of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)

has over 570 members.[21] The page is extremely active despite the fact that Mr. Lynn has been behind bars for over three decades. His friends and family frequently post old photos of Mr. Lynn as well as updates on his wellbeing and information learned from their communications with him. This reflects the unwavering enthusiasm and dedication that his community continues to feel towards him. Few inmates serving life sentences have the continuous, vocal support that Mr. Lynn enjoys. Mr. Lynn has not been forgotten by his community and will be received with open arms upon his release. Additionally, there have been numerous newspaper articles written in Mr. Lynn's home state indicating the overwhelming community commitment to supporting Mr. Lynn upon his release.[22]

## G. Whether Release Would Minimize the Seriousness of the Offense

Releasing Mr. Lynn would not minimize the seriousness of the offence. Mr. Lynn is a 65-year-old man who has already served over 30 years in prison for a nonviolent offense. He greatly regrets the poor decisions that he made earlier in life and has paid dearly for those mistakes.[23] All of Mr. Lynn's co-defendants have been released from prison. Mr. Lynn's continued incarceration will do nothing to promote public safety, nor will it assure the Bureau of Prisons that Mr. Lynn is a nonthreatening inmate. As previously discussed, Mr. Lynn's 26 years of incident-free time in prison demonstrates that he is non-violent and nonthreatening. The Bureau of Prisons noted in January 2020 that Mr. Lynn has a low risk of recidivism.[24]

---

[21] *See* Screenshot of "Release Dickie Lynn" Facebook Page (https://www.facebook.com/releasedickielynn/), *attached as* Exhibit I.
[22] *See* This Cocaine Smuggler Has Served 29 Years. Keys Lawmakers Think That's Long Enough, https://www.miamiherald.com/news/local/community/florida-keys/article222965610.html; Counsel to Urge Clemency for Convicted Smuggler, https://keysnews.com/article/story/council-to-urge-clemency-for-convicted-smuggler/; Calling for Clemency, https://keysweekly.com/42/calling-for-clemency/; He's Sick and the Last in His Case Still in Prison, But Judge Denies Drug Smuggler's Release, https://www.flkeysnews.com/news/local/article232891547.html).
[23] *See* Personal Letter to the President, *attached as* Exhibit D.
[24] *See* BOP First Step Act Eligibility and Recidivism Risk Determination, *attached as* Exhibit E.

Motion for Modification of Term of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)

For Mr. Lynn, freedom would be life-altering. It would enable him to be with his family, including his nephew, daughter, and grandchildren, as he enters old age. Mr. Lynn has not yet had the opportunity to hold his grandchildren. At the age of 65, Mr. Lynn will have the opportunity to pursue a life free of the criminal activity he was involved in prior to his conviction. He would be able to pursue a job in his nephew's already-established landscaping business.

Mr. Lynn has strong support from his Islamorada community. Among the dozens of support letters from those in the community, former DEA agents have voiced their support for Mr. Lynn's request for a sentence reduction.[25]

Former DEA agents, Edward Odom and Alan Brown, who both assisted in the investigation that resulted in Mr. Lynn's prosecution, have written letters of support for Mr. Lynn's release.[26] Mr. Odom advocates for Mr. Lynn's release because his assistance enabled the federal government to repatriate hundreds of millions of dollars' worth of assets.[27] A third former DEA agent and Islamorada Councilmember, Ken Davis, has also written a letter.[28]

Additionally, Islamorada Mayor Deb Gills has voiced her support for Mr. Lynn's release, emphasizing that he will be met with support in whatever form he needs if he returns to Islamorada.[29]

The Islamorada and larger Florida Keys communities are eager to welcome Mr. Lynn home and integrate him as a productive member of their community. Releasing Mr. Lynn would not minimize the seriousness of the offense, for he has accepted responsibility for his mistakes and has maintained 26 years of perfect conduct in prison, a feat to which few inmates sentenced to life can lay claim.

---

[25] *See* Letters of Support and Affidavits from Drug Enforcement Agency (DEA) Agents, Letter and Affidavit from Edward Odom, Affidavit of Alan Brown, and Letter from Kenneth Davis, *attached as* Exhibit C.
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *See* Letters of Support from Community Members, Letter from Mayor Deb Gills, *attached as* Exhibit H.

**Conclusion**

Richard "Dickie" Lynn is 65 years old and has been in prison for thirty years. While in prison, Mr. Lynn has continuously sought to improve himself mentally and physically. He is a model inmate with an exceptional record of good behavior. Mr. Lynn's family and friends are eager to welcome him back into their lives, homes, and community. Mr. Lynn's sentence has served its penological purpose; no further time is necessary to impress upon Mr. Lynn that his prior conduct was unacceptable. Mr. Lynn takes responsibility for the poor decisions that he made over thirty years ago and wishes for the opportunity to prove himself a productive, law-abiding community member. In light of Mr. Lynn's age and deteriorating medical condition, the lengthy sentence that he has already served, and his pristine prison record, Mr. Lynn's request for compassionate release should be granted.

**WHEREFORE**, in light of the aforementioned qualifications for compassionate release, Defendant respectfully requests that this Honorable Court reduce his life sentence to the time that Defendant has served as of the date of the Court's hearing on this motion.

Dated: April 29TH, 2020

Respectfully Submitted,

*Richard Joseph Lynn*

RICHARD JOSEPH LYNN
Reg. No. 09478-004
USP Coleman II
United States Penitentiary
PO Box 1034
Coleman, FL 33521

## Certification of Service

I, Richard Joseph Lynn, Defendant, *Pro Se*, herby certify that a true and correct copy of this foregoing instrument has been mailed with first class postage, pre-paid on this 29TH day of April, 2020, to the parties listed below by hand delivering a copy of this same Motion to prison officials at the United States Penitentiary of Coleman II, Florida, mailroom for mailing through the internal legal system.

Hon. William Howard Steele
Senior U.S. District Judge
Southern District of Alabama
155 St. Joseph Street
Mobile, AL 36602

Gloria A. Bedwell
Scott Alan Gray
U.S. Attorney's Office
63 S. Royal St., Ste. 600
Mobile, AL 36602

I hereby execute this certificate under penalty of perjury as being true and correct pursuant to 28 U.S.C. § 1746.

*Richard Joseph Lynn*
Richard Joseph Lynn

# EXHIBIT A

Receipt Reflecting Filing of Compassionate
Release Petition with Bureau of Prisons

| TO:(Name and Title of Staff Member) | DATE: |
|---|---|
| **Mr. Velasquez – Case Manager** | **March 12, 2020** |
| FROM: | REGISTER NO.: |
| **Richard J. Lynn** | **09748-004** |
| WORK ASSIGNMENT: | UNIT: |
| **Rec Weekend** | **H-2** |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

 Sir,

**On the above date, I personally handed you my "Request for Compassionate**

**Release/RIS" pursuant to P.S. 5050.50 to be submitted to Warden C. Swain**

 **Please sign, date and stamp this "Request to Staff" for my Attorney.**

Thank You,

*Richard Lynn*

(Do not write below this line)

DISPOSITION:   *I will forward it to the Warden.*

RECEIVED *JUV*
03/12/20

| Signature Staff Member | Date | 03 /12/ 2020 |
|---|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

# EXHIBIT B

Compassionate Release Petition Filed with
the Bureau of Prisons in March 2020

February 25, 2020

Warden C̶'S̶w̶A̶t̶N̶
USP Coleman II
United States Penitentiary
846 N.E. 54th Terrace
Sumterville, FL  33521

### RE: Request for Compassionate Release per 18 U.S.C. § 3582(c)(1)(A) for Richard Lynn, Reg. No. 09748-004

Dear Warden C̶S̶w̶A̶t̶N̶

I am submitting the attached request for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), U.S.S.G. § 1B1.13, and the Bureau of Prisons Program Statement 5050.50, "Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. § 3582."

Pursuant to the BOP Program Statement 5050.50, this request falls within the BOP's "Other Elderly Inmates" category and is based on non-medical circumstances. I am over the requisite age of 65 and have served over 75% of my sentence.

I have also obtained *pro bono* counsel, the Criminal Justice Clinic of UC Irvine School of Law, who have assisted me in preparing this request.

Sincerely,

Richard Lynn
Richard Lynn
Reg. No: 09748-004


February 25, 2020

Warden C. ⊆ωAιN
USP Coleman Il
United States Penitentiary
846 N.E. 54th Terrace
Sumterville, FL  33521

### RE: Request for Compassionate Release per 18 U.S.C. § 3582(c)(1)(A) for Richard Lynn, Reg. No. 09748-004

Dear Warden C. ⊆ωAιN,

The Criminal Justice Clinic of UC Irvine School of Law represents, *pro bono*, Mr. Richard Lynn, Reg. No. 09748-004, in his request for compassionate release.

The attached request, prepared on Mr. Lynn's behalf by the Criminal Justice Clinic, includes:

- Memorandum Regarding Circumstances Supporting Compassionate Release Request;
- BOP First Step Act Eligibility and Recidivism Risk Determination
- Mr. Lynn's medical records
- Prison records indicating Mr. Lynn's classes and lack of disciplinary history
- Mr. Lynn's personal letter to the President
- Letters of support from DEA agents and community members
- A screenshot of the active Facebook page, titled "Release Dickie Lynn"

For these reasons, on behalf of Mr. Lynn, we request his compassionate release per 18 U.S.C. § 3582(c)(1)(A), U.S.S.G. § 1B1.13, and the BOP Program Statement 5050.50.



School of Law
UCI Law Clinics
PO Box 5479
Irvine, CA 92616-5479

(949) 824-8152 P
(949) 824-2747 F
www.law.uci.edu

Sincerely,

Simi Nandwani
Julienne Pasichow
Harrison Weimer

Certified Law Students
UC Irvine School of Law, Criminal Justice Clinic

E. Katharine Tinto, Esq.
Clinical Professor of Law
UC Irvine School of Law, Criminal Justice Clinic
Tel: (949) 824-9247
Email: ktinto@law.uci.edu

**Request for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)**

**Mr. Richard Joseph Lynn, Reg No. 09478-004**

## I. <u>Introduction</u>

Richard Lynn is a 65-year-old man who has served more than 30 years for a nonviolent drug offense. Mr. Lynn is a model inmate with 26 years of perfect conduct in prison. He has overwhelming and continued support from his community, as well as from several federal agents who were instrumental in his prosecution. Mr. Lynn was convicted of conspiracy to import cocaine, in violation of 21 U.S.C. §963, conspiracy to possess with intent to distribute cocaine and marijuana, in violation of 21 U.S.C. § 846, three counts of importation of cocaine, in violation of 21 U.S.C. § 952; and two counts of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1).[1]

Under the Bureau of Prisons' Program Statement 5050.50, Mr. Lynn qualifies for compassionate release based on non-medical circumstances for elderly inmates who have served at least 75% of their sentence.[2] On December 15, 1989, Mr. Lynn was sentenced to a life sentence, which is defined as 470 months by the United States Sentencing Commission.[3] Seventy-five percent of a 470-month sentence is 352.5 months, which translates to just over 29 years in prison. As of the writing of this petition, Mr. Lynn has served over 30 actual years in prison.

Under the First Step Act, 18 U.S.C. § 3582(c)(1)(A), and U.S.S.G. § 1B1.13, application note 1(B), Mr. Lynn qualifies for compassionate release because he is at least 65 years of age, experiences serious deterioration in physical or mental health due to the aging process, and has served over 10 years of his sentence. 18 U.S.C. § 3582(c)(1)(A) permits modification of a term of imprisonment where "extraordinary and compelling reasons warrant such a reduction," however it is silent as to what that entails, so courts look to application note 1 of U.S.S.G. § 1B1.13 for guidance.[4] Mr. Lynn has now turned 65 and now qualifies under the second category for relief under U.S.S.G. § 1B1.13, application note 1(B), which requires: (i) that the defendant is at least 65 years of age, (ii) that he experiences serious deterioration in physical or mental health

---

[1]  *See Lynn v. United States*, 365 F.3d 1225, 1227 n.2 (11th Cir. 2004).

[2]  The Bureau of Prisons' Program Statement 5050.50, "Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)," states that inmates who may request compassionate release include "inmates age 65 or older who have served the greater of 10 years or 75% of the term of imprisonment to which the inmate was sentenced." See https://www.bop.gov/policy/progstat/5050_049_CN-1.pdf.)

[3]  https://www.ussc.gov/policymaking/meetings-hearings/appendix.

[4]  Pursuant to that application note, Mr. Lynn filed a pro se motion for a reduction of sentence on March 19, 2019. At the time Mr. Lynn submitted his motion, he sought release under the "Medical Condition of the Defendant" category for relief under § 3582(c)(1)(A) established by the United States Sentencing Commission. *See* U.S.S.G. § 1B1.13, application note 1(A). That category requires a showing of a serious physical or medical condition or impairment that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13, application note 1(A). That category also contemplates "deteriorating physical or mental health because of the aging process." *Id.* The court did not find that Mr. Lynn's chronic medical conditions substantially diminished his ability to care for himself in an institutional setting. In his order denying the motion, the judge specifically noted that Mr. Lynn did not qualify for relief under the second category, "Age of the Defendant," because he was not yet 65 years old. This request was denied without prejudice on July 15, 2019.

due to the aging process, and (iii) that he has served either 10 years or 75% of his sentence, whichever is less.[5] Mr. Lynn is 65 years old and he has served over ten years of his sentence, satisfying requirements (i) and (iii). Furthermore, Mr. Lynn suffers from a plethora of chronic medical conditions, including chronic kidney failure, atrial fibrillation, high blood pressure, hyperlipidemia (high cholesterol and/or triglyerides), gastroesophageal reflux disorder, benign prostatic hyperplasia (enlarged prostate), and cervical disc degeneration.[6] These conditions satisfy requirement (ii) for a "serious deterioration" in physical or mental health due to the aging process because they have worsened over time, will continue to worsen, and require intensive care and treatment to avoid fatality. The "Age of the Defendant" category in application note 1 to U.S.S.G. § 1B1.13 is consistent with the BOP's consideration of non-medical relief for elderly inmates over the age of 65 described above.

In addition to the considerations above, four retired DEA agents have voiced their support for Mr. Lynn's release. Two of the former agents, Edward Odom and Alan Brown, assisted in the investigations that resulted in Mr. Lynn's convictions in 1989 and 1991, respectively. Both men provided support letters detailing the assistance that Mr. Lynn provided to them that proved instrumental in capturing international fugitives involved in large-scale drug trafficking.[7] In the interest of fairness, Mr. Odom and Mr. Brown recommended on multiple occasions that the Assistant U.S. Attorney offer a reduction in sentence for Mr. Lynn on the basis of his substantial assistance to authorities, which he continued to provide even after he was sentenced.[8] Even though Mr. Lynn provided substantial assistance to the government, this request was denied.[9]

Two additional former DEA agents, Ken Davis and Kevin Pedersen, have also advocated for a reduction in sentence.[10]

In sum, Mr. Lynn deserves a chance to spend his elderly years with his family. He boasts a disciplinary record without a single incident of violence. Such exceptionally good behavior is particularly astounding given that Mr. Lynn was given a life sentence. The thirty years that Mr. Lynn has already served in prison is sufficient punishment for a nonviolent offender who has demonstrated exceptional behavior in prison, who served as a witness for the government, who would be welcomed wholeheartedly by his community, and who suffers from multiple medical conditions that have seriously deteriorated his physical health. The combination of these extraordinary and compelling circumstances warrant his release.


## II. Factors Relevant to Compassionate Release Requests

An evaluation of the factors relevant to requests for compassionate release demonstrate that Mr. Lynn's request for compassionate release presents particularly extraordinary and

---

[5]     U.S.S.G. § 1B1.13, application note 1(B).

[6]     *See* Exhibit 8, Medical Records.

[7]     *See* Exhibit. 1, Letters of Support and Affidavits from Drug Enforcement Agency (DEA) Agents.

[8]     *Id.*

[9]     Had the U.S. Attorney for the Southern District of Alabama made this recommendation, the Court for the Southern District of Alabama would have had the discretion to depart from the Sentencing Guidelines for substantial assistance to authorities under U.S.S.G. § 5K1.1.

[10]     *See* Exhibit. 1, Letters of Support and Affidavits from Drug Enforcement Agency (DEA) Agents.

compelling circumstances and establish that his release would not pose a danger to the safety of any other person or the community.[11]

### Factor 1: Nature and Circumstances of Mr. ʟʏɴɴ'ѕ Offense

Mr. Lynn is serving a life sentence for a non-violent offense. Mr. Lynn was convicted by a jury for violations of 21 U.S.C. § 963 (conspiracy to import cocaine), 21 U.S.C. § 846 (conspiracy to possess with intent to distribute cocaine and marijuana), three violations of 21 U.S.C. § 952 (importation of cocaine), and two violations of 21 U.S.C. § 841(a)(1) (possession with intent to distribute cocaine).[12]

Today, Mr. Lynn is a 65-year-old man who has served more than 30 years of his life sentence. He committed the offense when he was 34 years-old and has since participated in countless prison programs that have helped him completely relinquish his prior involvement in drug distribution.[13] Mr. Lynn's involvement in the drug trade began when he was nineteen years-old, shortly after the death of his father, which also prompted him to temporarily drop out of high school. A friend's father convinced Mr. Lynn to help smuggle marijuana using boats in and around Islamorada, Florida. Mr. Lynn became involved with this activity at an age when he had no direction for his life and should have been working towards building a career. Instead, due in part to the prevalence of marijuana-smuggling culture in Islamorada at the time, and in part to his upbringing as the child of two alcoholics, Mr. Lynn made poor decisions that resulted in his growing involvement with drugs.

### Factor 2: Mr. ʟʏɴɴ'ѕ Criminal History

Mr. Lynn has only one prior conviction. On September 2, 1982, Mr. Lynn was sentenced to 30 months in prison for conspiracy to possess with intent to distribute cocaine. He was released after 24 months.

### Factor 3: Comments from Victims

This factor does not apply to Mr. Lynn. There are no identifiable victims as a result of this offense.

### Factor 4: Unresolved Detainers

Mr. Lynn does not have any unresolved detainers.[14]

---

[11]  *See* Exhibit 3, BOP First Step Act Eligibility and Recidivism Risk Determination.
[12]  *Lynn v. United States*, 365 F.3d 1225, 1227 n.2 (11th Cir. 2004).
[13]  *See* Exhibit 5, Extracurricular Activities in Prison.
[14]  *See* Exhibit 4, Sentence Monitoring Computation Data.

## Factor 5: Supervised Release Violations

Upon information and belief, Mr. Lynn does not have any violations of supervised release.

## Factor 6: Institutional Adjustment

Mr. Lynn has shown exemplary conduct while in prison for more than 30 years. Mr. Lynn has taken every opportunity to participate in classes and programs and has been on a path to self-betterment since entering prison. He participated in the Twelve Steps for Change program Substance Abuse Program, Ethics Program, Yoga, and various Psychology courses and groups, including a Crime and Human Nature Psychology Group.[15] Mr. Lynn's engagement in a variety of classes covering a wide breadth of topics reflects his ability to develop hobbies and interests, even in an acutely stressful prison environment.

Additionally, to provide himself options for future employment, Mr. Lynn received continuing education credit towards a commercial driver's license.

## Factor 7: Disciplinary Infractions

Mr. Lynn has an extremely short disciplinary record given his length of incarceration and his life sentence. Mr. Lynn escaped from custody briefly in March of 1990 before being detained in August 1990 in Long Beach, Mississippi. During this time, Mr. Lynn was charged for conspiracy to import a controlled substance, to which Mr. Lynn pled guilty in 1991. He received a 120-month sentence that ran concurrently to his life sentence.[16] During his escape, Mr. Lynn met Danny Bogard, a rogue DEA agent. Mr. Lynn later assisted the government by testifying against Mr. Bogard, who was subsequently convicted. Mr. Lynn made another unsuccessful escape attempt in 1992 in Terre Haute, Indiana, which he greatly regrets. Even seventeen years later, Mr. Lynn speaks about his escape and second attempt with deep shame. He also recognizes that he may have had his sentence reduced on appeal, like the sentences of his co-defendants were reduced, had he not made the poor decision to escape in 1990.

In 1993 in USP Marion, a piece of a plastic food tray was found in Mr. Lynn's cell soon after he moved in, and it was noted in his file as a weapon. However, according to Mr. Lynn, the piece of plastic did not belong to him, as he had moved into that cell just four days prior. The plastic piece belonged to the inmate occupying Mr. Lynn's cell just before him. At no point did Mr. Lynn use the plastic piece as a weapon. As a punishment for being found with the piece of the plastic food tray, Mr. Lynn was kept in the Solitary Housing Unit for 56 days.

Mr. Lynn's escape attempts were made at the very beginning of his sentence. Since those incidents in the early 1990s, Mr. Lynn has not attempted another escape, nor has he been involved in any further incidents. Mr. Lynn has remained incident-free for the last 26 years. Mr.

---

[15]     See Exhibit 5, Extracurricular Activities in Prison.
[16]     See Exhibit 4, Sentence Monitoring Computation Data.

Lynn's over two and a half decades without a disciplinary infraction demonstrates Mr. Lynn's extraordinary good conduct.

### Factor 8: Personal History Derived from the PSR

Mr. Lynn was born on July 17, 1954 in Central Lake, Michigan. Mr. Lynn moved to Tavernier, Florida at the age of five and grew up in a tight-knit community in the Florida Keys with his parents, older brother, and older sister. His mother worked as a waitress and his father worked as a construction worker, however, both were alcoholics.

Mr. Lynn's sister passed away from cystic fibrosis and his brother died of a heart attack. His brother's wife, who lives just 25 miles from Mr. Lynn's prison, remains in touch with Mr. Lynn. Mr. Lynn's father was killed in 1972 in a head-on car accident, and his mother died of an aneurysm just a few months after Mr. Lynn's arrest in 1989. Mr. Lynn attended high school through the eleventh grade, but withdrew from school in 1972 because of the death of his father. Mr. Lynn later graduated high school from Adelphi School in Miami, Florida in 1973. Mr. Lynn worked as a self-employed construction subcontractor prior to his arrest. He reported having heart trouble resulting from a boating accident that occurred around 1986.

Mr. Lynn has been married twice. He married his first wife, Robin Dunbar, on November 16, 1973. They divorced on November 14, 1981. He married his second wife, Lisa Lynn, on December 29, 1985.

Mr. Lynn has a daughter who lives in Tampa, Florida with her two children, named Mason and Cole, who are aged 8 and 6, respectively. Mr. Lynn also has a son who has three children that he has not yet met. Mr. Lynn's nephew, Justin Lynn, who Mr. Lynn intends to live with upon his release, resides in Key Largo, Florida. Justin Lynn has expressed his commitment to assisting Mr. Lynn upon his release with reintegration.

### Factor 9: Length of Sentence and Amount of Time Served

On December 15, 1989, Mr. Lynn was given a life sentence. Mr. Lynn has now served over 30 actual years, or 364 months.

### Factor 10: Mr. Lynn's Current Age

Mr. Lynn was born on July 17, 1954 in Central Lake, Michigan. He is currently 65 years old.

### Factor 11: Mr. Lynn's Age at the Time of Offense and Sentencing

Mr. Lynn was 34 years of age at the time of the offense. Mr. Lynn was sentenced on December 15, 1989, when he was 35 years old.

## Factor 12: Mr. Lynn's Release Plans

Mr. Lynn has a strong re-entry plan that will provide stability and financial support. Several friends and members of his family have pledged their support for him and are willing to assist him in any way that they can.[17] Upon release, Mr. Lynn plans to move to Key Largo, Florida to live with his nephew, Justin Lynn.

Mr. Lynn intends to work with his nephew, Justin, in his landscaping business. Justin Lynn does the landscaping for about nine rental properties owned by another company. Mr. Lynn also has an opportunity to work with a friend, Bobby Vaughn, who owns two convenience stores, as well as a real estate company. Further, his friend Dale Rodberg, who is Managing Director at Wells Fargo Securities, is willing to provide Mr. Lynn with an employment opportunity. Mr. Lynn will have no shortage of employment offers.

Mr. Lynn intends to obtain healthcare at a hospital near his nephew's home and intends to enroll in Medicare. He intends to begin treating his kidney disease by getting a colonoscopy, which he has been unable to do for three years in prison. Should his kidney disease progress, Mr. Lynn will require dialysis or a kidney transplant, which he can obtain at a nearby hospital. He will also address his chronic heart conditions upon his release.

Though thirty years have elapsed, Mr. Lynn's friends and family continue to zealously support him while he is incarcerated. They have created a Facebook group, "Release Dickie Lynn," that has over 570 members.[18] The page is extremely active despite the fact that Mr. Lynn has been behind bars for over three decades. His friends and family frequently post old photos of Mr. Lynn as well as updates on his wellbeing and information learned from their communications with him. This reflects the unwavering enthusiasm and dedication that his community continues to feel towards him. Few inmates serving life sentences have the continuous, vocal support that Mr. Lynn enjoys. Mr. Lynn has not been forgotten by his community and will be received with open arms upon his release. Additionally, there have been numerous newspaper articles written in Mr. Lynn's home state indicating the overwhelming community commitment to supporting Mr. Lynn upon his release.[19]

## Factor 13: Whether Release Would Minimize the Seriousness of the Offense

Releasing Mr. Lynn would not minimize the seriousness of the offence. Mr. Lynn is a 65-year-old man who has already served over 30 years in prison for a nonviolent offense. He greatly regrets the poor decisions that he made earlier in life and has paid dearly for those mistakes.[20] All

---

[17]    *See* Exhibit 6, Letters of Support from Community Members.
[18]    See Exhibit 7, Screenshot of "Release Dickie Lynn" Facebook Page
https://www.facebook.com/releasedickielynn/.
[19]    *See* This Cocaine Smuggler Has Served 29 Years. Keys Lawmakers Think That's Long Enough,
https://www.miamiherald.com/news/local/community/florida-keys/article222965610.html; Counsel to Urge
Clemency for Convicted Smuggler, https://keysnews.com/article/story/council-to-urge-clemency-for-convicted-smuggler/; Calling for Clemency, https://keysweekly.com/42/calling-for-clemency/; He's Sick and the Last in His
Case Still in Prison, But Judge Denies Drug Smuggler's Release,
https://www.flkeysnews.com/news/local/article232891547.html).
[20]    *See* Exhibit 2, Personal Letter to the President.

of Mr. Lynn's co-defendants have been released from prison. Mr. Lynn's continued incarceration will do nothing to promote public safety, nor will it assure the Bureau of Prisons that Mr. Lynn is a nonthreatening inmate. As previously discussed, Mr. Lynn's 26 years of incident-free time in prison demonstrates that he is non-violent and nonthreatening. The Bureau of Prisons noted in January 2020 that Mr. Lynn has a low risk of recidivism.[21]

For Mr. Lynn, freedom would be life-altering. It would enable him to be with his family, including his nephew, daughter, and grandchildren, as he enters old age. Mr. Lynn has not yet had the opportunity to hold his grandchildren. At the age of 65, Mr. Lynn will have the opportunity to pursue a life free of the criminal activity he was involved in prior to his conviction. He would be able to pursue a job in his nephew's already-established landscaping business.

Mr. Lynn has strong support from his Islamorada community. Among the dozens of support letters from those in the community, four former DEA agents have voiced their support for Mr. Lynn's request for a sentence reduction.

Former DEA agent, Edward Odom, who assisted in the investigation that resulted in Mr. Lynn's prosecution, has written a letter of support for Mr. Lynn's release. In this letter, Mr. Odom stated that he believes that release is warranted for Mr. Lynn because he provided ongoing and immensely helpful assistance to the federal government, even after his sentencing.[22] Mr. Lynn offered "considerable assistance" by testifying in the trial of a corrupt DEA informant, Danny Bogard, who was then convicted.[23] He also provided a "vast" amount of information concerning a major drug smuggling organization.[24] Mr. Lynn's efforts enabled the extradition of two international fugitives and the recovery of hundreds of millions of dollars in assets.[25]

A letter provided by a second former DEA agent, Alan Brown, corroborates the high quality of the assistance that Mr. Lynn provided to the federal government in assisting with the prosecution of international drug smugglers.[26] Both agents expressed their opinions to the U.S. Attorneys for the Southern District of Mississippi that the nature of Lynn's assistance was worthy of a sentence reduction.[27] As a result, the U.S. Attorney for the Southern District of Mississippi recommended to the U.S. Attorney for the Southern District of Alabama that Mr. Lynn receive a sentence reduction, which has not come to fruition.

Yet a third former DEA agent, Ken Davis, has also advocated for a reduction in sentence in light of Mr. Lynn's unusual willingness and provision of high quality assistance to the federal government in prosecuting large-scale drug traffickers.[28] Mr. Davis is a Councilmember in Islamorada.

---

[21]    *See* Exhibit 3, BOP First Step Act Eligibility and Recidivism Risk Determination.

[22]    *See* Exhibit 1, Letters of Support and Affidavits from Drug Enforcement Agency (DEA) Agents, Letter and Affidavit from Edward Odom.

[23]    *Id.*

[24]    *Id.*

[25]    *Id.*

[26]    *See* Exhibit 1, Letters of Support and Affidavits from Drug Enforcement Agency (DEA) Agents, Affidavit of Alan Brown.

[27]    *Id.* at Letter of Support from Edward Odom.

[28]    *Id.* at Letter of Support from Ken Davis.

Additionally, Islamorada Mayor Deb Gills has voiced her support for Mr. Lynn's release, emphasizing that he will be met with support in whatever form he needs if he returns to Islamorada.[29]

The Islamorada and larger Florida Keys communities are eager to welcome Mr. Lynn home and integrate him as a productive member of their community. Releasing Mr. Lynn would not minimize the seriousness of the offense, for he has accepted responsibility for his mistakes and has maintained 26 years of perfect conduct in prison, a feat to which few inmates sentenced to life can lay claim.

### III. Extraordinary or Compelling Circumstances Warrant Mr. Lynn's Compassionate Release

Compassionate release was designed precisely for inmates like Mr. Lynn. These inmates committed a nonviolent offense several decades ago, and have proven, over several decades in prison, that they have taken responsibility for their actions, have rehabilitated themselves through prison programming, and have maintained immaculate behavior in prison. Inmates like Mr. Lynn have paid their debt to society and proven their worthiness for release and suitability for reintegration into society through their decades of extracurricular involvement and good conduct while incarcerated.

18 U.S.C. 3582(c)(1)(A)(i) provides a policy statement authorizing compassionate release where "extraordinary and compelling reasons warrant such a reduction." That section, however, is silent as to what constitutes extraordinary and compelling reasons for the purposes of evaluating a defendant's eligibility for compassionate release. The United States Sentencing Commission has defined four categories indicating extraordinary and compelling reasons in application note 1 to Guideline § 1B1.13. Those categories include: (A) Medical Condition of the Defendant, (B) Age of the Defendant, (C) Family Circumstances, and (D) Other Reasons. Mr. Lynn qualifies under the second category, (B) Age of the Defendant, which requires: (i) that he is at least 65 years of age, (ii) that he experiences serious deterioration in physical or mental health due to the aging process, and (iii) that he has served either 10 years or 75% of his sentence, whichever is less.[30]

First, Mr. Lynn, as noted above, was born on July 17, 1954 and is currently 65 years old.

Second, Mr. Lynn has experienced a "serious deterioration" in physical health due to the aging process.[31] Chief among these potentially life-threatening conditions is his chronic kidney failure, which involves the progressive destruction of kidney function and total renal failure. This will result in Mr. Lynn's need for a kidney transplant, which the BOP does not permit. Additionally, Mr. Lynn suffers from atrial fibrillation, high blood pressure, hyperlipidemia (high cholesterol and/or triglyerides), gastroesophageal reflux disorder, benign prostatic hyperplasia (enlarged prostate), cervical disc degeneration, and carpal tunnel syndrome, among other conditions. Each of these conditions has intensified with age.

---

[29]     *See* Exhibit 6, Letters of Support from Community Members, Letter from Mayor Deb Gills.
[30]     U.S.S.G. § 1B1.13, application note 1(B).
[31]     *See* Exhibit 8, Medical Records.

In addition, Mr. Lynn's congenital heart disease has prompted three emergency trips to outside hospitals for cardioversions, which involves restoring normal heartbeat function through electric shocks to the heart via electrodes placed on the chest. This disease carries a substantial risk of stroke and heart attack. Mr. Lynn's preventative care regimen, which consists of Coumadin, a blood thinner that in certain circumstances could cause massive hemorrhaging, which in the environment of a violent penitentiary could be fatal.[32]

Mr. Lynn's medical conditions demonstrate that he has suffered "serious deterioration" in his physical health, as required by U.S.S.G. § 1B1.13, application note 1(B). Mr. Lynn suffers from a multitude of chronic medical conditions as a result of aging that have seriously deteriorated his physical health, satisfying the second requirement.

For the third requirement, a defendant is required to have served the lesser of 10 years or 75% of his sentence. Mr. Lynn has served over 30 years in prison, and thus satisfies the third requirement.

Furthermore, there exist "extraordinary and compelling circumstances" beyond his eligibility for relief under the U.S.S.G. § 1B1.13 "Age of Defendant" category that justify the granting of Mr. Lynn's petition for compassionate release.[33]

As previously discussed, the scope and unyielding nature of Mr. Lynn's community support presents an extraordinary and compelling circumstance. There are few, if any, federal inmates, who can truthfully claim that *four* former DEA agents and a mayor are among those passionately advocating for their release. All three agents expressed their surprise that Mr. Lynn did not receive a recommendation for a sentence reduction from the U.S. Attorney's Office for the Southern District of Alabama as a result of his stellar contributions to DEA investigations.

The quality and scope of the assistance that Mr. Lynn provided to the federal government, even after he was sentenced and had no incentive to continue offering his insights, was substantial. Mr. Lynn's assistance helped the DEA capture international fugitives who were heavily involved in drug trafficking. In addition to their capture, Mr. Lynn's assistance enabled the federal government to seize hundreds of millions of dollars worth of assets.

All of Mr. Lynn's codefendants are long out of prison. Mr. Lynn has served seventeen years more than the codefendant with the second longest sentence. His codefendants' convictions were reversed and remanded due to the prosecutorial misconduct. The prosecutor improperly vouched for the credibility of a government witness.[34] Each of his codefendants received lesser terms of imprisonment as a result of the Eleventh Circuit's reversal and have since been released. The additional seventeen years that he has served beyond his codefendants has provided sufficient additional punishment for an escape by Mr. Lynn in 1990. Mr. Lynn now has 26 years of immaculate conduct while in prison on his record.

---

[32]     *Id.* at 6, 26.

[33]     18 U.S.C. § 3582(c)(1)(A)(i) requires that there be extraordinary and compelling circumstances underlying a defendant's request for compassionate release.

[34]     *See United States v. Eyster*, 948 F.2d 1196 (11th Cir.1991).

When considered together, the fact that Mr. Lynn is a nonviolent elderly offender suffering from a "serious deterioration" in physical health, boasts a 26-year spotless record in federal prison, provided substantial assistance to the federal government even when it offered no benefit to him –and the existence of an overwhelmingly supportive community – prompt a finding that Mr. Lynn is a worthy candidate for compassionate release.

## IV. Conclusion

Richard "Dickie" Lynn is 65 years old and has been in prison for thirty years. While in prison, Mr. Lynn has continuously sought to improve himself mentally and physically. He is a model inmate with an exceptional record of good behavior. Mr. Lynn's family and friends are eager to welcome him back into their lives, homes, and community. Mr. Lynn's sentence has served its penological purpose; no further time is necessary to impress upon Mr. Lynn that his prior conduct was unacceptable. Mr. Lynn takes responsibility for the poor decisions that he made over thirty years ago and wishes for the opportunity to prove himself a productive, law-abiding community member. In light of Mr. Lynn's age and deteriorating medical condition, the lengthy sentence that he has already served, and his pristine prison record, Mr. Lynn's request for compassionate release should be granted.

# EXHIBIT C

Letters of Support and Affidavits from Drug
Enforcement Agency (DEA) Agents

United States of America

Washington, D.C.

Dear Mr. President:

My name is Edward L. Odom. I am a retired Alabama State Trooper Captain. I retired in 2008 after 42 years of service. During most of my career I was assigned to the Alabama Bureau of Investigation Division, mostly as a Criminal Investigator assigned to Narcotics Investigations. During this period of my career, I was assigned to The Drug Enforcement Administration, Mobile, Alabama Resident Office, as a State/Local Task Force Agent. I served in that capacity for approximately 22 years.

In 1985 I initiated an investigation concerning the importation from South America, into the State of Alabama, of large quantities of cocaine. I was successful in identifying numerous individuals who were involved, one of whom is Richard Joseph "Dickie" Lynn. After the initial trial in the Southern District of Alabama, at Mobile, Mr. Lynn was convicted of many of the counts brought against him. He was found not guilty of Count 1, which was Principle Administrator, Continuing Criminal Enterprise. This count carried a minimum sentence of life without parole. Unfortunately, a total of points against Mr. Lynn on the counts he was convicted of also gave him Life without Parole.

While incarcerated at the Federal Correctional Institute in Talladega, Alabama, Mr. Lynn effected an escape. During his six months of freedom, he continued, unsuccessfully to import another load of cocaine into Mississippi. Mr. Lynn was captured by DEA and U. S. Customs personnel (I happened to be present).

All of the co-defendants in the first trial with Mr. Lynn were sentenced to various degrees of time. Several of these had their convictions reversed and remanded to the SD-AL for retrial. Those entered into plea agreements and went to prison. All of these defendants have completed their sentences and are now free, or deceased.

I initially arrested Mr. Lynn in Sarasota, Florida in 1989. With the exception of his temporary freedom of six months, he remains in federal prison. He has been incarcerated in various institutions, such as: FCI Talladega; Federal Penitentiary Terre Haute, Indiana; FP Marion, Illinois (at the time the only Level 6 Penitentiary in the U.S.); FP Coleman, Florida; and Super-Max Level 6 FP at Florence, Colorado. He is currently back in Coleman, Florida FP. He has been incarcerated for 29 years.

I have come to know Mr. Lynn very well over these 29 years. I have seen his mother, and only siblings, a brother and a sister, pass away while he has been incarcerated. And I have spoken on numerous occasions wherein he has made full disclosure of his past violations, including my case. At the time of his arrest, Mr. Lynn requested an attorney. He was represented by Attorney Roy Black of Miami, Florida. I was present at a meeting between Mr. Black and then United States Attorney, SD-Al, Mr. Jeff Sessions. At that meeting, Mr. Black stated Mr. Lynn was able and willing to cooperate and could divulge information on other organizations. Mr. Sessions said he would consider and would dismiss all counts of the indictment, and allow Mr. Lynn to plead to Count 1. As I have previously stated this count carried a mandatory life, without parole. Mr. Black stated he would just as well try the case.

Mr. Lynn, through his attorney and the attorney for his wife, a co-defendant, did disclose and forfeit monies that were in accounts in the Cayman Islands. He also did not contest any of the numerous asset seizures in this case.

Mr. Lynn cooperated with Federal prosecutors in the Southern District of Mississippi following his capture from escape. He testified against a co-defendant and gave information that was vital in the capture and prosecution of other important violators. Those persons are now also free.

The SD-MS prosecutors recommended Mr. Lynn for a Rule 35, sentence reduction. The SD-AL refused this request.

I fully believe that Mr. Lynn has paid his debt to society, and truly deserves some relief. I therefore join with many others in requesting a Presidential Pardon for Mr. Lynn.

With respect and hope, I remain

Respectfully yours,

*Edward L. Odom*

Edward L. Odom, Captain (Ret)
Alabama Department of Public Safety
Alabama Bureau of Investigation (Div.)

2762 Longleaf Drive
Mobile, Alabama 36693
251-591-6172
edwardlodom@gmail.com

COUNTY OF MOBILE          :

                            :

STATE OF ALABAMA         :

## AFFIDAVIT OF EDWARD ODOM

Comes now the undersigned, Edward Odom, after being first duly sworn, and deposes and states under oath based upon personal knowledge the following facts as follows:

My name is Edward Odom, I am of legal age and competent to make the following declaration.

I am now retired, having served forty-three years with the Alabama Bureau of Investigation, the investigative branch of the Alabama Department of Public Safety, a law-enforcement agency.

I retired as a Captain during December, 2008.

During my time with ABI I was involved in numerous criminal investigations, many of them involving drug smuggling and distribution.

In 1989, as a task force agent assigned to the DEA, I helped initiate and served as case agent in *United States v. Richard Lynn*, a multi-district, multi-agency criminal prosecution from the Northern and Southern Districts of Alabama and elsewhere.

Those cases were brought to a successful conclusion with multiple convictions in federal court in the Southern District of Alabama and subsequent pleas in the Northern District of Alabama as well as other districts.

Richard Lynn received a life sentence.

In March 1990, Lynn escaped from federal prison but was apprehended shortly thereafter and charged with a subsequent drug conspiracy charge in the Southern District of Mississippi.

Shortly thereafter, Lynn began providing substantial assistance. His cooperation assisted in the prosecution

of a corrupt DEA informant and giving testimony at the trial of the other co-defendants. He also assisted in providing information that led to other less significant cases. Most importantly, though, he provided a vast amount of collateral information concerning a major drug smuggling operation and assisted in the application for international extraditions from the United Kingdom (David Lemieux) and Colombia (Alex Decubas) of the principals involved. His efforts resulted in the capture of these two international fugitives and assisted in their prosecution, conviction and sentencing, and the recovery of hundreds of millions of dollars in assets in both his cases as well as the other cases in which he cooperated.[1]

Lynn continued his cooperation well after his sentencing in Mississippi, meeting as needed with federal agents from different law enforcement agencies numerous times in Mississippi, USP Atlanta and Marion Supermax.

It was based on my complete satisfaction with the contrition shown by Lynn, as evidenced by his yeoman's effort to cooperate and the excellent results, that I, along with the United States Customs Service Special Agent involved in the Mississippi prosecution suggested that Lynn receive a sentence reduction.

The United States Attorney for the Southern District of Mississippi followed our suggestion and made the recommendation to the United States Attorney for the Southern District of Alabama but it has as of this date not been acted upon.

---

[1]     To put Lynn's assistance in the proper context, I must emphasize his cooperation in the capture and prosecution of DeCubas and Lemieux. While the other cases were important, they pale in comparison to the capture and prosecution of those two defendants. Their prosecutions also led to a daisy chain of other convictions and forfeitures. DeCubas would ultimately receive a 30-year sentence and was himself released after completing a third of his sentence because of his cooperation in the prosecution of a British smuggler. DeCubas served as the United States facilitator for Julio Cesar Nasser David, one of the world's largest cocaine traffickers. Lemieux was DeCubas' lieutenant. Together, they smuggled 77,000 pounds of cocaine into the United States.

Of the many connected and peripheral cases in which he was involved, either as a participant or a government facilitator, Lynn is the only one remaining in custody.

Because I remain firmly of the belief that it is in the interest of justice and fairness that Lynn be relieved of a lifelong sentence, I have through the years attempted to bring to fruition a reduction in sentence in any way I can.

FURTHER, AFIANT SAYETH NOT.

DATED THIS JANUARY 17, 2018.

*Edward Odom*
Edward Odom

THIS INSTRUMENT PREPARED BY:

Domingo Soto
MADDEN & SOTO
465 Dauphin Street
Mobile, Alabama  36602
(251) 432-0380

County of Harrison

State of Mississippi

## Affidavit of Alan Brown

Comes now the undersigned, Alan Brown, after first being duly sworn, and deposes and States under

oath based on personal knowledge the following facts and circumstances:

My name is Alan Brown, I am of legal age and competent to make the following declaration.

I am now retired, having served thirty years as a Special Agent/Criminal Investigator with various Federal Agencies to include the U.S. Drug Enforcement Administration (1983-1987), U.S. Customs Service (1987-2003), Immigration and Customs Enforcement (2003-2006), and Office of the Inspector General/U.S. Department of Homeland Security (2006-2013).

During the 1991 time period I was the Case Agent for an investigation involving the planned smuggling of cocaine via aircraft into a rural airport located in Pearl River County, Mississippi. During one of many undercover meetings with various operatives of the smuggling organization, one of the participants was identified as possibly being Richard Joseph Lynn, an escaped Federal prisoner. While Agents were attempting to verify the subject as being Lynn, he detected surveillance and fled a short distance on foot before surrendering to Agents.

Lynn was subsequently indicted/charged with conspiracy to import cocaine into the Southern District of Mississippi. Prior to his trial commencing Lynn agreed to plead guilty and testify at trial against his coconspirators. Lynn subsequently testified at trial against Daniel Bogard, a DEA Cooperating Individual (CI) who was charged in the case when information/evidence was developed that he was providing erroneous information to DEA to make it appear he was working in the governments interest when in fact he was planning to participate in the smuggling venture as a willing participant.

At trial Lynn provided testimony that corroborated evidence developed by investigators. Bogard was subsequently convicted and sentenced to a lengthy period of incarceration. All other defendants in the initial indictment entered guilty pleas. It is my belief that the knowledge that Lynn would testify against them had a great impact on the defendants decision to enter guilty pleas.

During the continued investigation of the attempted smuggling incident, Lynn identified his primary contacts in Colombia and other locations in the United States and elsewhere as Alex Decubas and David Lemieux. After Lynn had returned to Federal prison an indictment was returned in the Southern District of Mississippi that charged Lemieux and Decubas with various violations of the Controlled Substances Act as a result of their roles in the smuggling venture.

At some point Lemieux and Decubas were taken into custody in the United Kingdom and South America respectively. I subsequently contacted Lynn in Federal Prison and asked that he identify the two subjects in a photo lineup that was to be part of the extradition packages for the two defendants. Lynn agreed and later identified the two defendants in the photo presentation. Decubas and Lemieux were subsequently extradited back the United States to face charges in the Mississippi case and for

indictments returned by the Southern District of Florida. Both defendants entered guilty pleas to the Mississippi indictment.

I am aware that Lynn continued to cooperate with government agents for years after the Mississippi event. On numerous occasions I have met with Peter Barrett, the former Assistant United States Attorney who handled Lynn's prosecution in Mississippi, and prepared affidavits and other documents in an effort to get Lynn's sentence reduced and gain his release. Richard Lynn has been in Federal custody continuously since 1991. It is my understanding that all of Lynn's codefendants have been released from Federal custody. It is further my understanding that Lynn has not been a problem inmate and for the past twenty seven years has done what he could to earn his way back to freedom.

I respectfully request that the reviewing Officials approve Lynn's release from Federal custody. I truly believe Lynn's smuggling days are long behind him. In the interest of fairness and justice please allow Lynn to live out the remainder of his life with his family.

FURTHER, AFIANT SAYETH NOT.

DATED THIS AUGUST 25, 2018

Alan Brown

President Donald Trump                                   November 20, 2018

United States of America

Washington, D. C.


Dear Mr. President:


My name is Kenneth B. Davis. I am a retired Drug Enforcement Administration (DEA), Special Agent. I
retired in 2008 after 32 years combined service in the DEA and U. S. Military. After retirement, I served
three years in Iraq as a civilian Senior Advisor and Intelligence Director for the U. S. Army. I am a highly
decorated veteran of both Federal and Military Service.

During my career I conducted multiple International investigations successfully targeting major narcotics
violators throughout the world and prosecuted them in Federal court to the fullest extent of the law.
Many of these defendants co-operated with the government and at my urging and approval, were
granted or given reduced sentences based on their cooperation. These reductions in sentence ranged
from multiple years to probation.

My final assignment with DEA was as the Agent in Charge of the Florida Keys. As a native Floridian and
former U. S. Coast Guardsman assigned to the Islamorada Coast Guard, I was very familiar with the
history of smuggling in the Keys; liquor during Prohibition, guns and weapons during the Cuba crisis and
drugs in the 1970's and 80's. Smuggling in the Keys was a longtime way of life for many.

*When I retired from DEA I made the Florida Keys my permanent home and enjoy the culture and sense*
of close community. I currently serve on the Village of Islamorada Council. Through friends and
neighbors I learned of the egregious conduct of the U. S. Attorney's Office in the Southern District of
Alabama committed under the supervision and support of then U. S. Attorney, Jeff Sessions in regards
to Florida Keys resident Richard Joseph Lynn.

Richard Joseph Lynn, a resident of the Keys, was arrested and prosecuted by the Southern District of
Alabama. He committed no acts of violence during any crime. As affidavits have shown, he escaped
from prison for a short while but was quickly captured. He cooperated to the fullest extent of the law,
identified and forfeited millions in cash and assets and identified and testified against two of the world's
biggest narcotic traffickers. Despite his honesty, cooperation and the successful prosecution of narcotic
kingpins, the Southern District of Alabama refused to allow a motion for reduction in sentence. The
Federal Agents who arrested and prosecuted Lynn have written letters and signed affidavits supporting
a sentence reduction and clemency.

On appeal the Appellate Court found the Southern District of Alabama, U. S. Attorney's Office guilty of
prosecutorial misconduct in the trial of Richard Lynn. The embarrassment of this finding has led to

retribution by the SDA towards Richard Lynn, the only defendant in the case who was denied appeal because of an escape from prison for six months.

With the exception of one person, everyone associated with this case served less than ten years in prison. One man served seventeen years. The two kingpins Lynn identified and testified against are out of prison. They were found guilty of smuggling 33,000 lbs of cocaine.

Mr. President, the actions taken by the Southern District of Alabama under former Attorney General Jeff Sessions is not justice; it is a crime of abuse of authority. While serving my country, I have put hundreds of men and women in prison. I have never seen anyone serve life without parole without violence being attributed directly to them. Please, usurp your authority and right the wrong and unjust actions of former Attorney General Sessions. Commute the sentence of Richard Joseph Lynn.

Sincerely, Kenneth B. Davis
Special Agent, Drug Enforcement Administration (ret.)

112 Bayview Isle Drive
Islamorada Fla 33036
305 796 7494

Honorable Donald J. Trump

President of the United States of America

August 6, 2018

Dear President Trump:

I am writing to you in regard to Mr. Richard Joseph Lynn ("Dickie") who I have come to know over the past few years. I was introduced to Dickie by a dear friend of mine and I have visited and communicated with him as I have come to know him and appreciate his humility and remorsefulness regarding his former life.

As a former U.S. Army Officer (West Point class of 1980) and retired Special Agent of the U.S. Drug Enforcement Administration, I have come to know and spend time with people from all walks of life. I have been blessed to receive the highest awards of honor from leaders such as you relative to my performance during my 27 years of fighting enemies of our great nation. My life story has recently been depicted in the ESPN feature film Pin Kings, where my belief in giving deserving people a second chance in life is demonstrated. I have been honored to witness your belief in second chances also, Sir. In that regard, I believe that you would consider a commutation of Dickie's federal sentence if you were to investigate his situation. Dickie has been incarcerated in the federal system since 1989 for his violations of federal drug crimes. Dickie openly admits his guilt in these crimes and I believe he is genuinely remorseful for his actions regarding them.

My prayer is that someone in your organization reviews Dickie's situation with a gracious and merciful outlook. I have no doubt that Dickie can serve as a demonstration of what true forgiveness and graciousness can look like in his later years.

I am more than willing to meet with or to discuss in any way Dickie's situation with anyone form your organization. I can be contacted at 786-547-0266 (my email address is: KMPED@aol.com). I have included a collection of letters from individuals who deeply care for Dickie and a copy of a book written about his circumstances. I continue to pray for you and your family and for all that you are accomplishing for our great nation.

God Bless,

Kevin E. Pedersen

Palmetto Bay, Florida

# EXHIBIT D

Letter from Richard Lynn to President Trump

President Donald J. Trump
The White House
Washington, D.C.

Mr. President, I am a 65 year-old man in federal prison, serving a Life sentence for my involvement in a cocaine smuggling conspiracy in South Florida, a non-violent (but nonetheless regretful) venture that occurred in the late 80's. A grandfather. I am also one of those persons that Senator Grassley is referring to when he talks of people unjustly sentenced to prison based on "Acquitted Conduct".

Today, after serving more than 30 years of that unjust sentence, during which I have suffered the loss of both parents, my only sister and brother, and have pursued without success every option in the courts, I am losing the prayerful hope that has sustained me over the past three decades...the hope that one day these truly draconian drug laws, and sentencing laws that allowed someone like me to be sent to prison even though acquitted by a jury, would change and I'd be given another chance.
For so long, that one big and all-important change seemed just over the horizon, coming any day now. But somehow, it has yet to arrive. There have of course been changes in the laws, small and large, but for one reason or another, none of those changes have ever applied to me.

In 2017, not long after you were sworn in as our new President, I sent you a Petition for Clemency asking you give me that elusive second chance. My spirits were buoyed by the mercy you showed to Alice Marie Johnson. Soon thereafter, however, when I saw how you were being mistreated by your opponents, and the media, I realized that the chance you took with her was one you probably wouldn't be repeating any time soon.

Then came the First Step Act of 2018. When I saw that one of the provisions in this new legislation modified the criteria for Compassionate Release, and that it now applied to me, my hopes were buoyed once again. It seemed like a sure thing. But it wasn't. The important part not mentioned in this new legislation is the actual mechanics involved in making such a request, the bureaucratic reality for those of us who desperately need this 'last-chance' compassion.
First we must submit our request to the Warden. Then, when we are denied, which is routine, we must navigate through the bureaucracy-layered and ineffective "administrative remedy process", which takes up to a year, before we then must file in the district court where we were sentenced... where as you know, judges are anything but compassionate and merciful.

With all of this said, Mr. President, the one thing that has kept me from giving up is knowing that, no matter how much you are criticized by your opponents, and the "fake news media", you have never failed to keep your promises, never failed to do the right thing. You are genuine in your words and deeds, and a true survivor.
I, my children, my grandchildren, and the many friends and supporters who have stood by me over the years are now praying for your survival, and victory in 2020. We all know that, where my Petition for Clemency is concerned, once that happens and the time is right, you will do what's right.

Sincerely,
Richard Joseph (Dickie) Lynn
Register Number 09748-004
FCC USP Coleman II
Coleman, Florida 33251

# EXHIBIT E

# BOP First Step Act Eligibility and Recidivism Risk Determination

# H02-224L

DATE REVIEWED: <u>January 9, 2020</u>

INSTITUTION:     CLP           UNIT:     H-2

INMATE NAME:     LYNN, RICHARD     REG NO:     09748-004

FIRST STEP ACT TIME CREDIT ELIGIBILITY: **ELIGEBLE**

RECIDIVISM RISK LEVEL: **LOW**

# EXHIBIT F

Sentence Monitoring Computation Data

REGNO..: 09748-004 NAME: LYNN, RICHARD JOSEPH


FBI NO...........: 184167X8                    DATE OF BIRTH: 07-19-1954  AGE:  65
ARS1.............: CLP/A-DES
UNIT.............: H-2                          QUARTERS.....: H02-224L
DETAINERS........: NO                           NOTIFICATIONS: NO

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  LIFE


--------------------CURRENT JUDGMENT/WARRANT NO: 020 ----------------------

COURT OF JURISDICTION...........: ALABAMA, SOUTHERN DISTRICT
DOCKET NUMBER...................: CR. 89-00072
JUDGE...........................: BUTLER
DATE SENTENCED/PROBATION IMPOSED: 12-15-1989
DATE COMMITTED..................: 12-29-1989
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

                  FELONY ASSESS  MISDMNR ASSESS  FINES          COSTS
NON-COMMITTED.: $300.00          $00.00          $2,500,000.00  $00.00

RESTITUTION...:  PROPERTY:  NO   SERVICES:  NO        AMOUNT:  $00.00

------------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....:  399      21:963 ATTEMPT & CONSPIRACY
OFF/CHG: CT 3 - CONSP TO IMPRT SCH II CNTRLD SUBSTANCE (COCAINE) - T21:
         963; CT 4 - CONSP PWITD & TO DIST COCAINE & MARIJUANA - T21:
         846; CTS 10 & 12 - IMPORTATION OF SCH II CNTRLD SUBSTANCE
         (COCAINE) - T21:952; CTS 11 & 13 - PWITD & DIST COCAINE - T21:
         841(A)(1)

SENTENCE PROCEDURE.............: 3559 SRA SENTENCE
SENTENCE IMPOSED/TIME TO SERVE.: LIFE
TERM OF SUPERVISION............:    10 YEARS
DATE OF OFFENSE................: 06-22-1988

REMARKS.......: CTS 3, 4, 10, 12, 11 & 13 ARE CCCA CC LIFE SENTENCES; CT 9 IS
                AN OLD LAW CC LIFE SENTENCE; FINE IS SHOWN ON COMPUTATIONS 020
                & 030

--------------------CURRENT JUDGMENT/WARRANT NO: 030 ----------------------



G0002     MORE PAGES TO FOLLOW . . .

```
REGNO..: 09748-004 NAME: LYNN, RICHARD JOSEPH
```

```
COURT OF JURISDICTION...........: MISSISSIPPI, SOUTHERN DISTRICT
DOCKET NUMBER...................: S90-00053(P)
JUDGE...........................: PICKERING
DATE SENTENCED/PROBATION IMPOSED: 06-06-1991
DATE COMMITTED..................: 10-09-1991
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO
```

```
                 FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.:  $50.00         $00.00          $00.00       $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO      AMOUNT:  $00.00
```

```
------------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....:  399    21:963 ATTEMPT & CONSPIRACY
OFF/CHG: CONSP TO IMPRT A CNTRLD SUBSTANCE - T21:963

 SENTENCE PROCEDURE.............: 3559 SRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:  120 MONTHS
 TERM OF SUPERVISION............:   10 YEARS
 RELATIONSHIP OF THIS OBLIGATION
  TO OTHERS FOR THE OFFENDER....: CC
 DATE OF OFFENSE................: 08-29-1990

 REMARKS.......: 120 MTHS TO RUN CC TO PRESENT FEDERAL SENTENCE
```

```
------------------------CURRENT COMPUTATION NO: 020 --------------------------

COMPUTATION 020 WAS LAST UPDATED ON 06-06-2006 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 06-07-2006 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 020: 020 010, 030 010
```

REGNO..: 09748-004 NAME: LYNN, RICHARD JOSEPH


DATE COMPUTATION BEGAN..........: 12-15-1989
AGGREGATED SENTENCE PROCEDURE...: AGGREGATE GROUP 800
TOTAL TERM IN EFFECT............: LIFE
TOTAL TERM IN EFFECT CONVERTED..: LIFE
AGGREGATED TERM OF SUPERVISION..:   10 YEARS
EARLIEST DATE OF OFFENSE........: 06-22-1988

JAIL CREDIT.....................:     FROM DATE       THRU DATE
                                      05-06-1989      12-14-1989

INOPERATIVE TIME.........: REASON    FROM DATE       THRU DATE
                           ESCAPE    03-28-1990      08-28-1990

TOTAL PRIOR CREDIT TIME.........: 223
TOTAL INOPERATIVE TIME..........: 154
TOTAL GCT EARNED AND PROJECTED..: 0
TOTAL GCT EARNED................: 0
STATUTORY RELEASE DATE PROJECTED: N/A
EXPIRATION FULL TERM DATE.......: LIFE
TIME SERVED.....................:    30 YEARS    10 DAYS

PROJECTED SATISFACTION DATE.....: N/A
PROJECTED SATISFACTION METHOD...: LIFE

REMARKS.......: COMP ADJUSTED TO REFLECT GCT DIS ON 06-06-2006.

REGNO..: 09748-004 NAME: LYNN, RICHARD JOSEPH

```
FBI NO...........: 184167X8              DATE OF BIRTH: 07-19-1954  AGE:  65
ARS1.............: CLP/A-DES
UNIT.............: H-2                    QUARTERS.....: H02-224L
DETAINERS........: NO                     NOTIFICATIONS: NO
```

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  LIFE


----------------------CURRENT JUDGMENT/WARRANT NO: 040 ------------------------

```
COURT OF JURISDICTION............: ALABAMA, SOUTHERN DISTRICT
DOCKET NUMBER....................: CR. 89-00072
JUDGE............................: BUTLER
DATE SENTENCED/PROBATION IMPOSED: 12-15-1989
DATE WARRANT ISSUED..............: N/A
DATE WARRANT EXECUTED............: N/A
DATE COMMITTED...................: 12-29-1989
HOW COMMITTED....................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED................: NO
SPECIAL PAROLE TERM..............:
```

```
                  FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.: $50.00         $00.00          $2,500,000.00 $00.00
```

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO        AMOUNT:  $00.00

-------------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....:  399     21:963 ATTEMPT & CONSPIRACY
OFF/CHG: CT 9 - IMPORTATION OF SCHEDULE II CONTROLLED SUBSTANCE - T21:
     952

```
SENTENCE PROCEDURE.............: 21 USC 960(B)(1),NO PAROLE
SENTENCE IMPOSED/TIME TO SERVE.: LIFE
TERM OF SUPERVISION............:    10 YEARS
DATE OF OFFENSE................: 09-25-1987
```

REMARKS.......: CT 9 IS AN OLD LAW CC LIFE SENTENCE; CTS 3, 4, 10, 12, 11 & 13
                ARE CCCA CC LIFE SENTENCES; FINE IS SHOWN ON COMPUTATIONS 020
                & 030


G0002      MORE PAGES TO FOLLOW . . .

REGNO..: 09748-004 NAME: LYNN, RICHARD JOSEPH


------------------------CURRENT COMPUTATION NO: 030 -------------------------

COMPUTATION 030 WAS LAST UPDATED ON 11-07-2006 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 11-15-2013 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 030: 040 010

```
DATE COMPUTATION BEGAN..........: 12-15-1989
TOTAL TERM IN EFFECT............: LIFE
TOTAL TERM IN EFFECT CONVERTED..: LIFE
EARLIEST DATE OF OFFENSE........: 09-25-1987

JAIL CREDIT.....................:  FROM DATE      THRU DATE
                                   05-06-1989     12-14-1989

INOPERATIVE TIME.........: REASON  FROM DATE      THRU DATE
                           ESCAPE  03-28-1990     08-28-1990

TOTAL JAIL CREDIT TIME..........: 223
TOTAL INOPERATIVE TIME..........: 154
STATUTORY GOOD TIME RATE........: N/A
TOTAL SGT POSSIBLE..............: 0
PAROLE ELIGIBILITY..............: NOT ELIGIBLE
STATUTORY RELEASE DATE..........: N/A
TWO THIRDS DATE.................: NOT ELIGIBLE
180 DAY DATE....................: N/A
EXPIRATION FULL TERM DATE.......: LIFE
TIME SERVED.....................:      30 YEARS    10 DAYS
```

REGNO..: 09748-004 NAME: LYNN, RICHARD JOSEPH


NEXT PAROLE HEARING DATE........: N/A
TYPE OF HEARING.................: NOT ELIGIBLE

PROJECTED SATISFACTION DATE.....: N/A
PROJECTED SATISFACTION METHOD...: LIFE


G0000      TRANSACTION SUCCESSFULLY COMPLETED

# EXHIBIT G

## Extracurricular Activities in Prison

**Summary Reentry Plan - Progress Report**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: LYNN, RICHARD JOSEPH 09748-004

SEQUENCE: 00054957
Report Date: 07-31-2018





| | |
|---|---|
| Facility: CLP COLEMAN II USP | Custody Level: MAX |
| Name: LYNN, RICHARD JOSEPH | Security Level: HIGH |
| Register No.: 09748-004 | Proj. Rel Date: UNKNOWN |
| Quarters: G01-203L | Release Method: LIFE |
| Age: 64 | DNA Status: CLP02808 / 06-11-2013 |
| Date of Birth: 07-19-1954 | |

**Offenses and Sentences Imposed**

| Charge | Terms In Effect |
|---|---|
| CT 3 - CONSP TO IMPRT SCH II CNTRLD SUBSTANCE (COCAINE) - T21: 963, CT 4 - CONSP PWITD & TO DIST COCAINE & MARIJUANA - T21: 846; CTS 10 & 12 - IMPORTATION OF SCH II CNTRLD SUBSTANCE (COCAINE) - T21:952; CTS 11 & 13 - PWITD & DIST COCAINE - T21: 841(A)(1) | LIFE |
| CONSP TO IMPRT A CNTRLD SUBSTANCE - T21: 963 | 120 MONTHS |

Date Sentence Computation Began: 12-15-1989
Sentencing District: ALABAMA, SOUTHERN DISTRICT

| Days FSGT / WSGT / DGCT | Days GCT or EGT / SGT | Time Served | + Jail Credit - InOp Time |
|---|---|---|---|
| 0 / 0 / 0 | 0 | Years: 28 Months: 9 Days: | + 223 JC - 154 InOp |

| Charge | Terms In Effect |
|---|---|
| CT 9 - IMPORTATION OF SCHEDULE II CONTROLLED SUBSTANCE - T21: 952 | LIFE |

Date Sentence Computation Began: 12-15-1989
Sentencing District: Unknown

| Days FSGT / WSGT / DGCT | Days GCT or EGT / SGT | Time Served | + Jail Credit - InOp Time |
|---|---|---|---|
| 0 / 0 / 0 | 394 / 0 | Years: 28 Months: 9 Days: | + 223 JC - 154 InOp |

**Detainers**

| Detaining Agency | Remarks |
|---|---|
| NO DETAINER | |

**Program Plans**

Inmate LYNN arrived at FCI Talladega on October 9, 1991, as an Initial Comment. At his initial classification, inmate LYNN was recommended to complete Vocational Education and participate in the Drug Education Programs, as well as maintain clear institutional conduct. He was encouraged to satisfy his court-imposed financial obligations through participating in the Inmate Financial Responsibility Program (FRP) and to obtain employment to assist with his release and financial obligations. Inmate LYNN was recommended to complete Release Preparation Program (RPP) classes, as well as satisfy any outstanding warrants/charges prior to his RRC placement.

**Current Work Assignments**

| Facl | Assignment | Description | Start |
|---|---|---|---|
| CLP | G1 UNT ORD | / | 06-05-2017 |

**Work Assignment Summary**

Inmate LYNN has received satisfactory work evaluations during his period of incarceration. He currently has the job assignment of G1 UNT ORD

**Current Education Information**

| Facl | Assignment | Description | Start |
|---|---|---|---|
| CLP | ESL HAS | ENGLISH PROFICIENT | 09-24-1991 |
| CLP | GED HAS | COMPLETED GED OR HS DIPLOMA | 02-11-1993 |

**Education Courses**

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| CLP | C | ADVANCED SENIOR FITNESS | 12-01-2016 | 12-22-2016 |
| CLP | C | INTERMEDIATE SENIOR FITNESS | 11-04-2016 | 12-01-2016 |



**Summary Reentry Plan - Progress Report**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: LYNN, RICHARD JOSEPH  09748-004

SEQUENCE: 00054957
Report Date: 07-31-2018

| SubFacl | Action | Description | Start | Stop |
|---------|--------|-------------|-------|------|
| CLP | C | BEGINNING SENIOR FITNESS | 09-21-2016 | 11-04-2016 |
| CLP | C | BEGINNING CORE FITNESS | 09-03-2016 | 10-15-2016 |
| CLP | C | SOFTBALL SPORTS RULES | 08-16-2016 | 08-20-2016 |
| CLP | C | ADVANCED SPINNING | 05-26-2016 | 06-08-2016 |
| CLP | C | PHYSICAL FITNESS/HEALTH EDC | 03-30-2016 | 06-08-2016 |
| CLP | C | INTERMEDIATE SPINNING | 05-07-2016 | 05-26-2016 |
| CLP | C | BEGINNING SPINNING | 03-30-2016 | 05-07-2016 |
| CLP | C | PHYSICAL FITNESS/HEALTH EDC | 01-22-2016 | 03-30-2016 |
| CLP | C | SPORTS RULES | 05-03-2014 | 07-23-2014 |
| CLP | C | SPORTS RULES | 03-31-2013 | 07-18-2013 |
| CLP | C | RPP HEALTH/NUTRITION #1 | 02-23-2012 | 02-23-2012 |
| FLM | C | BOOKS THAT MADE HISTORY 2 | 07-08-2010 | 09-08-2010 |
| FLM | C | BOOKS THAT MADE HISTORY 1 | 05-06-2010 | 07-07-2010 |
| FLM | C | BITS OF HISTORY | 12-09-2009 | 03-02-2010 |
| FLM | C | ARCHITECTURAL WONDERS | 12-24-2008 | 02-17-2009 |
| FLM | C | SCIENCE WARS | 07-03-2008 | 09-24-2008 |
| FLM | C | FAMOUS ROMANS | 12-06-2007 | 02-27-2008 |
| FLM | C | A HISTORY OF IMPRESSIONISM | 06-21-2007 | 09-12-2007 |
| FLM | C | JAZZ - PART 1 | 06-27-2007 | 09-04-2007 |
| FLM | C | PHYSICS IN YOUR LIFE - PART 2 | 04-19-2007 | 06-20-2007 |
| FLM | C | THE AMERICAN EXPERIENCE-PART 2 | 04-04-2007 | 06-26-2007 |
| FLM | C | HEALTH EDUCATION CLASS | 04-01-2007 | 05-28-2007 |
| FLM | C | AMER. REVL. + US MEXICAN WAR | 01-24-2007 | 04-03-2007 |
| COP | C | RPP5 RELEASE REQUIREMENT CLASS | 09-28-2005 | 09-28-2005 |
| COP | C | HATHA YOGA CLASS | 06-01-2005 | 07-27-2005 |
| COP | C | HATHA YOGA CLASS | 03-27-2005 | 05-23-2005 |
| COP | C | HATHA YOGA CLASS | 01-07-2005 | 03-19-2005 |
| COP | C | HATHA YOGA CLASS | 10-10-2004 | 12-10-2004 |
| COP | C | ADVANCED YOGA CLASS | 06-02-2004 | 07-31-2004 |
| COP | C | MICROSOFT OFFICE AM | 04-20-2004 | 07-23-2004 |
| COP | C | ADV STP AEROB M/W/F 1830-1930 | 07-09-2003 | 09-22-2003 |
| COP | C | ADV STP AEROB M/W/F 1830-1930 | 02-12-2003 | 04-13-2003 |
| COP | C | ACE COM DRIVERS' LICENSE-THURS | 10-30-2002 | 01-11-2003 |
| COP | C | STEPPING UP COUNSELOR GROUP | 10-01-2002 | 12-10-2002 |
| COP | C | HATHA YOGA CLASS | 06-18-2002 | 08-14-2002 |
| COP | C | BEG AEORBICS M/W/F 1830-1930 | 03-26-2002 | 05-28-2002 |
| COP | C | BEG AEORBICS M/W/F 1830-1930 | 01-05-2002 | 03-22-2002 |
| FLP | C | WELLNESS | 02-11-2001 | 05-03-2001 |
| MAR | W | ELEMENTARY SPANISH | 04-19-1993 | 01-26-1994 |

### Education Information Summary

During his incarceration, inmate LYNN has completed multiple educational program RPP Health/Nutrition and several Recreational/Leisure classes

### Discipline Reports

| Hearing Date | Prohibited Acts |
|--------------|-----------------|
| 09-08-1994 | 104 : POSSESSING A DANGEROUS WEAPON |
| 02-03-1993 | 102A : ESCAPE |
| 11-12-1991 | 102 : ESCAPE |

### Discipline Summary

Inmate LYNN has received three high severity incident reports during his incarceration. His last high severity incident report was in September 8, 1994 for violation of Code104 POSSESSING A DANGEROUS WEAPON. Inmate LYNN interacts with staff and fellow inmates in an appropriate manner There are no management concerns at this time.

### ARS Assignments

| Facl | Assignment | Reason | Start | Stop |
|------|------------|--------|-------|------|



*Certificate of*
*Achievement*

May it be known that this Certificate has been presented to

Richard Lynn   09748-004

For **Distinguished Achievement** in

Twelve Steps For Change

Presented this

4th _____ Day of   J.M. Watterson, Ph.D.

January _____ , 19 96

Copyright 1994  Artistic Office Products

# *Certificate of*
# *Achievement*

May it be known that this Certificate has been presented to

Richard Lynn   09748-004

## For **Distinguished Achievement** in

Crime and Human Nature Psychology Group - 12 Hours

Presented this

1st _____  Day of  *J.H. Miller* J.H. Miller, Ph.D.

September _____ , 19 95          Chief Psychologist

Copyright 1994  Artistic Office Products

# Certificate of Achievement

### May it be known that this Certificate has been presented to

RICHARD LYNN      09748-004

## For Distinguished Achievement in

CRIMINAL PERSONALITY PSYCHOLOGY GROUP ---12 hours

Presented this

16th _____ Day of

August ____, 19 95

*Jeanne H. Miller PhD*

J. H. Miller, Ph.D.

Chief Psychologist

Copyright 1994  Artistic Office Products

CERTIFICATE 91307

# *Certificate of*
# *Achievement*

May it be known that this Certificate has been presented to

Richard Lynn  09748-004

## For **Distinguished Achievement** in

The Brain Program

Presented this

26th _____ Day of ___ T.G. Werlich _____

October _____ , 19 _95_____    *T. G. Werlich*

Copyright 1996  Artistic Office Products

# *Certificate of Achievement*

## May it be known that this Certificate has been presented to

Richard Lynn   09748-004

## For **Distinguished Achievement** in

Paranormal Psychology

Presented this

7th

November , 19 95

Day of   J.M. Watterson, Ph.D.

Copyright 1994  Artistic Office Products

# *Certificate of*
# *Achievement*

May it be known that this Certificate has been presented to

Richard Lynn   09748-004

## For **Distinguished Achievement** in

Ethics Program

Presented this

21st _____ Day of   J.M. Watterson, Ph.D.

November _____ , 19  95 _____

Copyright 1994  Artistic Office Products

# *Certificate of Achievement*

## May it be known that this Certificate has been presented to

Richard Lynn   09748-004

## For **Distinguished Achievement** in

Jungian Analysis Psychology Group - 12 Hours

Presented this

1st _____ Day of *J.H. Miller, Ph.D.*

September _____ , 19 95 _____   Chief Psychologist

Copyright 1994  Artistic Office Products

CERTIFICATE 91302

# *Certificate of Achievement*

## May it be known that this Certificate has been presented to

Richard Lynn   09748-004

## For Distinguished Achievement in

Bradshaw Series on the Family Psychology Group - 10 Hours

Presented this

1st _____ Day of *J.H. Miller, Ph.D.*

September _____ , 19 95          Chief Psychologist

Copyright 1994  Artistic Office Products

# *Certificate of Achievement*

## May it be known that this Certificate has been presented to

Richard Lynn   09748-004

## For **Distinguished Achievement** in

Criminal Mentality

Presented this

5th _____ Day of ___ J.M. Watterson, Ph.D. ___

January _____, 19_96_____

Copyright 1994 Artistic Office Products



*Certificate of Completion*

This is to certify that

# Richard Lynn

has successfully completed 16 hours of
Adult Continuing Education (ACE) Credit in
Commercial Driver's License

FCC Coleman, Florida
January 10, 2003

J. Toney
ACE Coordinator

R. Brothers
Supervisor of Education

# Certificate of Completion

May it be known that this Certificate has been presented to

Richard Lynn (09748-004)

## for completion of

Substance Abuse Program

Presented this ___21st___ day of _____January_____, 19 _97_

_Chief Psychologist_
_United States Penitentiary, ADX_

# EXHIBIT H

## Letters of Support from Community Members



*Islamorada,*
*Village of Islands*

December 3, 2018

The President of the United States
The White House
1600 Pennsylvania Avenue, N.W.
Washington, DC 20500

RE: Richard Joseph Lynn – Plea for Clemency

Dear Mr. President:

The Mayor and Village Council of Islamorada, Village of Islands ("Islamorada" or the "Village") hereby offers its support for clemency for longtime Islamorada resident and local son, Richard Joseph Lynn. Richard Lynn grew up in Islamorada and his family has long resided within the Florida Keys. Upon the death of his Father, our community rallied to help Richard Lynn and his Mother. Richard is now 64 years old and has spent the last 30 years in federal prison. For the past 26 years, he has been a model prisoner. Now, his health is rapidly failing, and he does not deserve to die in prison.

While we do not approve of the crimes he committed, we believe the disparity in sentencing is egregious. Richard Lynn's crimes did not involve violence or weapons. Unfortunately, smuggling was a traditional crime in the history of the Florida Keys and over the years, many of our residents were arrested and convicted for smuggling. However, Islamorada has welcomed them home after serving their sentences and our community has embraced their rehabilitation, and recognized their subsequent contributions as hardworking and law-abiding citizens. We look forward to doing the same with Richard Lynn.

Within our community, he will be given a home, access to medical care, employment and guidance from family, friends and caring citizens. Accordingly, we respectfully ask that you utilize your authority as President and graciously grant clemency for Richard Joseph Lynn.

Most respectfully,

Deb Gillis
Mayor

**Justin Lynn**
20 Avenue A
Key Largo, FL 33037
(305) 747-6031 surfingjjl@jjl@gmail.com

September 14, 2018

To Whom It May Concern

I'm Richard (Dickie) Lynn's nephew Justin Lynn. I'm one of only three living family members that Dickie Lynn has left, my mother was Dickie's sister, she died just a few years ago. My uncle Dickie has serious medical problems that include a heart condition and high blood pressure for many years that have necessitated overnight stays in the hospital on multiple occasions since his incarceration. My uncle will have a better quality of life here. My uncle Dickie will have access to great medical professionals and I will take care of essentials such as medical insurance.

My uncle was always the father I never had, he is greatly loved and missed by all and I look forward to having him come live with me when he is released from prison. I have a three-bedroom, two bath home, I have plenty of room. I have a successful lawn service and excavating business in the Florida Keys. My uncle will be handling the office work for me and I know he will be paramount to my business.

Thank you to all of you that have worked so hard to get my uncle Dickie released, he is my last living relative and I love him dearly. If there is anything further that I can provide, assist or do to hasten the process of my uncle Dickies release, please do not hesitate to call.

Sincerely,

*Justin Lynn*

Justin Lynn

JL/kf

Gayle Butters
11560 NE 105th Avenue
Archer, FL 32618
352-275-7430

October 5, 2018

To Whom It May Concern:

I have been very close with my cousin Richard J. Lynn (Dickie) his entire life and could not be any prouder of him. He has endured the loss of his sister, brother and mother while incarcerated and absent for the birth of his grandchildren and missing all those special moments of growth and love. Dickie never misses a milestone in his children and grandchildren's lives by sending cards and paintings he has done himself, with regular phone calls to them. It is beyond me how he continues to maintain that gorgeous smile and positive attitude for over 28 years.

I am a single 71 year old woman; I have retired from the University of Florida and live in a rural country area west of Gainesville, Florida. Nothing would give me more happiness than for Dickie to be able to join me in my home during his transition and adjustment to society. I have a 3 bedroom/2 bath home with all the current technology gadgets such as a computer and many other comforts that are available to him until he can secure his own home if he wishes. I will make sure he has all of his necessities such as food, clothing, cell phone etc and I am will to co-sign for him if necessary.

Because I am retired I am available for his transportation needs and being located near a college town there are numerous job opportunities here. There are top medical professionals here and I will assist him with obtaining medical insurance. Wherever he calls home he will only benefit and add to the strength of the community.

Dickie's remaining immediate family members reside in Florida and from here he would have easy contact for any and all of them. Being family we have numerous common friends and because I once lived in the Florida Keys for 20 years, where Dickie was raised, I can attest that his friends are abound. The community support in the Keys for my cousin is unbelievable, I know of no one who does rally when Dickie is in need of something material or just moral support. They have contributed to a "GoFundMe" account when he needed lawyer fees, constructed a "Free Dickie Lynn" float to have in the 4th of July parade in the Keys, created two face book accounts to keep friends & family updated, visit him regularly in jail if able, and never falter in trying to make holidays and birthdays special for him by keeping in touch and sending cards or letters.

He is missed terribly by all and we want him home!!

Sincerely,

*Gayle Butters*

November 4, 2019

To whom it may concern,

I write you today to plead for justice for my childhood friend, Richard Joseph Lynn (09748-004), currently serving a life-without-parole sentence in Coleman Penitentiary in Florida. Richard (Dickie to his friends) was convicted of a nonviolent drug crime for which he has already served 30 years. Were Dickie to be sentenced under today's laws, the maximum sentence he would receive is 20 years, yet he remains incarcerated.

Edward L. Odom is a former Alabama State Trooper who was assigned to the DEA Task Force in Mobile and was involved in Dickie's arrest. In recent years, Mr. Odom has worked tirelessly to free Dickie because even he acknowledges that Dickie's sentence is unjust. Yet, Dickie remains incarcerated.

Last year, our Islamorada Village Council voted to send a formal request to President Trump on behalf of our entire community, urging clemency for Dickie. That's how well-loved Dickie is here and how important his release is to all of us. By the way, the Village council member who led this initiative is another former DEA agent (Ken Davis), and his involvement along with Mr. Odom's support, speaks volumes about Dickie's character and the miscarriage of justice that has resulted in his draconian sentence.

My dear friend Dickie is known by all to be one of the kindest, gentlest people, who as a young man, made some mistakes. The other local men who served time for the same offense all received 10-year sentences or less and have been home with their families for decades, yet Dickie remains incarcerated.

Should Dickie be released, I can assure you that he will have enormous amounts of support here in our close-knit Florida Keys community. I know Dickie has other friends and family who have offered him a home upon his release, but he always has one with my husband and me as well.

I ask you to please, in the interest of justice and mercy, consider Dickie's case and whether you can find it in your heart to help free him. Dickie has an entire community to support and help him reacclimate upon his release. We love Dickie and want him home!

Thank you for your consideration,

Professor Joy Laufle, M.A.

November 4,2019

UCI School of Law
Criminal Justice Clinic c/o – 0283
P.O. Box 5479
Irvine, CA 92616-5479

To Whom It May Concern;

I am writing this letter in support of Richard Lynn.

I am a Florida Keys hometown friend of Dickie. I am a Monroe County resident and a part of the community working with children, at-risk youth for approximately 25 years. I worked with the Florida Keys Children's Shelter for many years and Wesley House Family Services here in the Keys. I currently work for the Florida Department of Juvenile Justice in probation and community intervention with at-risk youth. I also volunteer my services to the children's shelter with the kids, and I feed the homeless as well with the local churches. I believe that Dickie could be a productive member of our society. He could have some involvement and help with feeding the homeless, if given the chance for compassionate release status. I think that Dickie would excel at and take pride in again being a part of our community here in the Florida Keys. We are a very unique chain of islands with one road in and one road out to the Miami mainland.

Dickie and I are friends. We continue to write and text, talk several times a week. He is pleasant and upbeat as a person. He deserves a reprieve to live out his life as a productive senior citizen with all who love him.

I believe that Dickie has served his sentence with more than enough years being incarcerated. I believe due to Dickie's health and age he should be given another chance on compassionate release, for what little time, being a senior citizen with heart issues, has left.

I believe with the help of his family and friends here in the Florida Keys we can provide help and relief to him as a community support system. We are a small strong community (Keys Strong) in that everyone helps who, when and where is needed. I believe that Dickie can re-enter society in a positive way if given the chance. Please consider a compassionate release for this great friend of our little community. We all love him and would like to see him home soon!

Respectfully Yours,

Lisa Gaudiello Shaw
97 Orange Lane, Unit 5
Islamorada, Florida 33036
Telephone: (305) 731-9737

December 10, 2019

RE: Mr. Richard Lynn

To Whom it May Concern,

I have known Richard Lynn, "Dickie", for 40 years. We were friends when I lived in the Florida Keys where we both grew up. Dickie was always a fantastic person: ready, willing and able to help anyone at any time. He was a family man who was committed to his parents and sister; eventually marrying and having children of his own who he adored, and he took great care them.

Dickie unfortunately got caught up in the smuggling era along with several others in the Keys during the 80's. He was caught and went to jail, but at this point has served far more time than his crime warrants.

It is heartbreaking to know that he has paid his debt to society and learned his lessons but has had to spend his entire adult life behind bars. It is my heartfelt desire that Dickie be released and welcomed back to the community in the Keys who loves him wholeheartedly and would help to support him in any way that he needs. I personally have moved out of the Keys to Fort Lauderdale, Florida, just two hours north. Dickie would be welcomed to stay with me and my husband once he is released. We would help in with whatever he needed to start his life outside of prison.

While I don't know the particulars of the law in the situation, I can only imagine that after all these decades in jail there must be a law that provides a way for Dickie Lynn to be released. This is my heartfelt request. Thank you for doing all you can to release Dickie!

Sincerely,

Julie Bradley

7321 SW 10th Street
Plantation, FL 33317
954-336-9405

November 5, 2019

To whom it may concern,

I am writing this letter in order to plead for the release of Richard Joseph Lynn (Dickie to his friends). I've known Dickie for forty years. When my family first moved to the Florida Keys after my father retired from the United States Air Force, Dickie was one of the first people I met, one of the first to welcome me to the community. He quickly became a dear friend and has remained so for all these years.

Dickie is so loved in our community, for good reason. He has always been a good person and a kind man. In the 1990s, I worked with DEA Group 1 out of Miami, as an informant. At that time, Dickie was already incarcerated. The DEA agents that I worked with were trying to help get Dickie released and they all had nothing but good things to say about Dickie. Islamorada Village Councilman Ken Davis, who served with Coast Guard Intelligence and the U.S. Dept of Justice, as well as the DEA, has worked tirelessly towards Dickie's release. So has retired Alabama State Trooper and DEA agent Ed Odom. The fact that men like this support Dickie's release speaks volumes about Dickie's character and about the high regard in which he is held by those who know him. The very same men who helped arrest Dickie in the first place recognize that life-without-parole for a non-violent drug offense is an unduly harsh sentence and that keeping Dickie incarcerated any longer does not serve society or justice. I can only pray that you will decide that Dickie, who is no threat to society, and is adored by his community, can finally come home.

Dickie's sister and brother have passed away during his incarceration. Dickie is the sole surviving patriarch of the Lynn family. I have lymphoma and that has put so much into perspective for me. I can't possibly visit Dickie in person, but I pray I can see him again. I know Dickie has health issues as well and it would be my last wish for him to come home, while we both still have time.

Thank you for allowing me to write this letter on Dickie's behalf and God bless you during your decision.

Sincerely,

Claudia Gahagen

TO WHOM IT MAY CONCERN,

DICKIE LYNN GRADUATED FROM HIGH SCHOOL ('71)
WITH MY BROTHER LEE, 13 MONTHS YOUNGER.
AFTER I SERVED THREE YEARS IN THE U.S. ARMY,
ENDING IN THE SUMMER OF '71, I MOVED TO THE
UPPER KEYS WHERE MY MOTHER AND FOUR SIBLINGS
WERE LIVING. DICKIE AND I WORKED FOR HIS
OLDER BROTHER WHO OWNED A CONSTRUCTION
COMPANY AND EVENTUALLY I MOVED IN TO HIS
MOTHER'S HOME AND LIVED WITH DICKIE AND
HIS MOM. WE SHARED MANY GOOD TIMES WORKING
TOGETHER AND WORKING ON CARS.

WHEN I LOOK BACK AT OUR PAST, I COULD VERY
WELL HAVE ENDED UP WHERE DICKIE HAS SPENT
A LIFETIME. I RETURNED TO MILITARY SERVICE
BUT HAD I BEEN EXPOSED TO MAKING EASY, FAST
MONEY, AT THAT AGE, I WOULD HAVE PROBABLY
JUMPED AT IT AS WELL.

OK, DICKIE SCREWED UP. BUT I RECENTLY SAW
THE MOVIE "JUST MERCY" AND WHILE DICKIE IS
GUILTY OF HIS CRIME(S), HE OBVIOUSLY IS
TRAPPED IN THE SAME JUSTICE SYSTEM DEPICTED
IN THE MOVIE. FOR HEAVEN'S SAKES, WHEN WILL
ENOUGH BE ENOUGH? A LIFETIME? HE HAS BEEN
PUNISHED WAY TOO LONG. GIVE THIS NOW OLD FART
A BREAK AND LET HIM COME HOME. TOO MANY
PEOPLE HAVE PAID THE PRICE OVER ALL THESE YEARS
BY TAKING DICKIE AWAY FROM OUR LIVES.

I AM PROUD TO SAY I HAD A CHANCE TO VISIT DICKIE
WHILE HE WAS IN PRISON ABOUT FOUR OR FIVE
YEARS AGO WITH HIS BROTHER DOUG WHO IS
NOW DECEASED ALONG WITH DICKIE'S YOUNG
NEPHEW. HE IS STILL DICKIE AND I LOVE HIM
NO LESS NOW THEN WHEN I DID FIFTY YEARS AGO.

DICKIE KNOWS HE HAS A BUNK ON MY WIFE'S
AND MY CATAMARAN. WHEN HE IS RELEASED HE
WILL HAVE MANY FAMILY AND FRIENDS WHO WILL
WANT TO SEE HIM AND WHOM HE'LL WANT TO SEE.
BUT AT SOME POINT HE'S GOING TO NEED SOME
SPACE. I EXPECT HE'LL FIND IT ABOARD 'BESHERT,'
OUR VESSEL, FOR AS LONG AS HE WANTS. HE WILL
MAKE A GREAT 'FIRST MATE'.

IF AND WHEN DICKIE GETS TIRED OF THE WATER,
HE HAS A ROOM WAITING FOR HIM AT 12740
W. HIGHLAND AVENUE, LITCHFIELD PARK, AZ 85340.
FOUR-BEDROOM, THREE BATH MY FAMILY AND I
HAVE OWNED FOR SEVENTEEN YEARS. JAMES (27),
MY OLDEST SON AND RICHARD (GOES BY JOEY) (21)
LIVE THERE. I WILL BE PROUD TO INTRODUCE DICKIE
TO BOTH OF THEM. DICKIE HAS AT HIS DISPOSAL
SEVERAL SPARE VEHICLES AT THIS ADDRESS TO
UTILIZE FOR ANY NEEDS HE MAY HAVE, INCLUDING
TO MEET ANY PROBATION OFFICER OR OTHER
OFFICIAL HE MAY NEED TO SEE.

BOTH SONS LIVING AT HOME ARE IN COLLEGE AND
WILL BE DONE SOON FREEING FUNDS THAT WILL
BE AVAILABLE FOR DICKIE. I AM A RETIRED ARMY
MAJOR WITH A PENSION AND ALSO DRAWING

SOCIAL SECURITY. MY WIFE IS RETIRED FROM
ARIZONA STATE UNIVERSITY (27 YEARS) AND
WILL BE ELIGIBLE FOR SOCIAL SECURITY NEXT
YEAR. WE ARE FINANCIALLY ENOUGH TO TAKE
CARE OF DICKIE'S NEEDS. HOPEFULLY DICKIE
IS STILL ELIGIBLE FOR MEDICARE.

IN CLOSING I WOULD JUST LIKE TO SAY THAT
DICKIE'S RELEASE IS LONG OVERDUE.

RESPECTFULLY,

ROBERT A. ARSENAULT
MAJOR, U.S. ARMY, RETIRED

P.S.    I AM PREPARED TO TRAVEL TO ANY LOCATION,
        IF NECESSARY, TO HELP HIM.

**Mary Jane Rodberg**
**3108 Delk Drive**
**The Villages, FL  362163**
**(352) 633-5712**

November 9, 2019

RE:     **Compassionate Release for RICHARD LYNN**
            <u>BOP: #09748-004</u>

TO WHOM IT MAY CONCERN:

I have known Richard ("Dickie") Lynn for many years as we lived 28 years in the Florida Keys. We moved to The Villages, Florida more than six years ago and have tried to visit Dickie each and every month in Coleman prison.

I am amazed at his attitude and good spirits at every visit – especially since he has had so many disappointments regarding a possible release. His time served far exceeds the normal punishment! His one attempt to escape seems to be the one thing prison officials cannot see beyond as he would have been better off to murder someone as he would be free by now.  This is not fair as he has been a model prisoner.  During his more than 29 years being incarcerated, he has taken many self improvement courses and he is more versed on current events than most of us.  Losing his parents, sister and brother has been such a heartache – especially the way the notice of their deaths were so callously delivered.......example "Lynn your brother is dead!"

Dickie's health has declined over the years with heart, shoulder and blood pressure problems and several surgeries were needed. We will pick up Dickie when he gets the word of his release and he is welcome to stay with us as long as he would like.  We will see that he gets to the Keys when he's ready where he has already been promised employment and living arrangements by several family member and friends.

We love Dickie as a son and pray "every night" for justice to be served so that he can live the remainder of his life in the freedom he deserves!!!  My husband and I are both 85 years old – so to expedite his release is important to us also as I like to say "time is of the essence" for all concerned!  Thank you to the law students for taking up this very worthy cause – God Bless You!

Sincerely,

Mary Jane Rodberg

**Gail Rodberg**
3108 Delk Drive
The Villages, FL 32163
(917) 535-0120

November 9, 2019

RE:     SENTENCE RELIEF FOR RICHARD LYNN
          BOP #: 09748-004

To Whom It May Concern:

I am writing you concerning Richard ("Dickie") Lynn who has been incarcerated for 30 years, serving a life sentence for **non-violent** drug smuggling, currently at Coleman USP-2 in Florida. I beg you to look into his case, see for yourself that he has more than paid his debt to society and release him to spend his senior years reconnecting with his family and friends and be a functioning member of society again!!

Although Dickie is several years older than I am, I knew him growing up in the Florida Keys. He is very close to my older brother and sister and our entire family. I left my job as a paralegal in New York City to move home to take care of my sister with Down Syndrome and Alzheimer's. In doing so, we relocated to Central Florida and my elderly parents (both 85 years old) and I have had the good fortune to visit Dickie once a month for the past 6 years at Coleman. Dickie constantly spends his prison phone minutes on numerous calls to check on my family and parents who have various health conditions which he cares very much about. Dickie is family to us! **I can tell you first hand that he is a first class man, who has made mistakes in his past to be sure, but is 100% deserving of any legal remedies that are available to him.** 30 years is enough!! I promise you, you will be proud on your part to correct this terrible injustice. Although he has already been offered employment and housing in his hometown (the Florida Keys) by his family and friends, please know that he will always have the full support of our entire family if he ever needs anything in life…….. a home, job, support etc. I have never met such an upbeat, positive, sharp and driven man in my life.

Please know that Dickie is in failing health himself and only looks to live out his days surrounded by his excellent support system of family and friends (our entire family included) and hopefully mentor young kids about the perils of his wrong choices in life. Our society these days could you more individuals like him! Thank you very much for your consideration and effort to release Richard Lynn!! If you would like to speak with my parents or myself personally, please feel free to contact us at 352-633-5712 or 917-535-0120 any time.

Sincerely,

Gail Rodberg

UCI SCHOOL OF LAW

CRIIMINAL JUSTICE CLINICc/o CJC-0283

P.O. BOX5479

IRVINE, CA.92616-5479


TO WHOM IT MAY CONCERN:

SUBJECT: RICHARD LYNN


I'M WRITING THIS LETTER IS SUPPORT OF EARLY RELEASE FOR RICHARD LYNN. I HAVE KNOW MR.

LYNN FOR OVER 35 YEARS INCLUDING MANY YEARS IN FLORIDA KEYES WHEN WE BOTH LIVED THERE.

MR. LYNN WAS ALWAYS A GIFTED, RESPONSIBLE, AND GREAT FRIEND TO MANY OF US IN KEYS. IT IS
RIDICULOUS FOR THE US GOVERNMENT YO IMPRISON HIM FOR OVER 30 YEARS. AND NOT CONSIDER
LETTING HIM HAVE AN EARLY RELEASE. MR. LYNN HAS MANY FRIENDS WHO WILL HIM ADJUST TO
OUTSIDE WORLD AGAIN WITH FRIENSHIP AND FUNDS IF NEEDED. HIS FAMILY DESERVES TO SPEND TIME
WITH HIM SO THEY CAN GET TO KNOW HIM AGAIN.

IF ANY QUESTIONS PLEASE CONTACT ME.


SINCERELY

ARTHUR PRINDLE

NVE PHARMACEUTICALS- V.P. OF SALES

15 WHITEHALL RD

ANDOVER N.J. 07821

CELL: 973 670 1366

Richard Joseph Lynn 09748-004
Federal Correctional Complex
Coleman Fl,33521

To Whom it may Concern,

I have known Richard Joseph Lynn (09748-004) for well over 30 years. And, I being a tax paying law abiding citizen, think that it is absurd that he is still incarcerated in the system. He has abided by all the rules and regulations to the federal Government. He has so much to give to Society. We have been in contact on a regular basic through emails and visits. And I think time has come for him to be released. I will get straight to the point in this letter. Richard, as most of us that know him call him Dickie, has a Place to stay right here. I have space and the time to assist him in anything he needs to do. I will assist him in getting a job and the ability to become a solid person. This is a very nice area and he will fit in and will not be a burden to society. He is still emotionally and intelligent and in control of his actions. I knowing him as well as I do I beg the system to release him back into a society. We need another solid foundation out here. Please take a look at where he was and has become.

Lisette Longarzo
315 Papaya Circle
Barefoot Bay, Fl 32976
561-252-2129

Judy Justice
143 Gardenia St.
Tavernier, FL. 33070

June 26, 2019

To Whom It May Concern,

Richard J. Lynn (09748-004) (Coleman, Fl) has been incarcerated for 30 years and has seven life sentences. His son was a toddler when he left home, and his daughter was a little girl. He never saw them graduate, never saw their weddings and never saw the birth of his grandchildren. He also missed his mother's, sister's and brother's funerals.

Dickie is truly a model prisoner. He has absolutely no marks against him, hard to find someone like that after 29 years.

My husband and I are very good friends of Richard Lynn. I have been sending letters to the last four presidents, judges and anyone else Dickie and I think might be able to help him. For over 30 years now, his hopes go up with some new development and don't happen and then his hopes go crashing down. My heart breaks for him.

We try to see him a couple of times during the year. I can't tell you how our small community in the Keys wants to have him back home again. He is such a fine man, caring, giving, honest and one hell of a great guy!

Dickie wants to come back to the Keys and spend his life helping others. He would like to start a community garden as he has always loved growing his own fruits and vegetables. He dreams of working at the local food bank and starting a soup kitchen for our homeless. It pained him that he couldn't be here for the people in the Keys who were devastated by hurricanes. Here is a man all the Keys love! He has so many friends and they all have jobs lined up for him. He is a man who would be a fine person any community would love to have as their citizen.

Dickie turned 65 in July. He has serious heart problems and was finally taken to a cardiologist. The doctor told him he should have open-heart surgery soon. That

was three months ago! He was forced to spend four months living with atrial fabulation because the warden refused to allow him to be taken to an outside hospital.  There is a bit more on his list of ailments, all of which the BOP has ignored.

Going back through all his records and court proceedings, it is obvious there was a serious injustice to this man. The policeman who arrested him and the judge who presided over his trial have both agreed this was a terrible miscarriage of justice. The state needs judges to have the discretion to see if the sentence fits the crime. After all these years the system has changed a bit and Dickie would be out if his case were going to trial now.

Dickie just wants to go home and live the rest of his life free, spending time with his family and friends, boating, fishing and diving our beautiful waters. It's where he grew up and would be welcomed by all our Keys citizens.

Sincerely,

Judy Justice

November 3, 2019

To Whom It May Concern,

My name is Henry Pinder, and I am writing to you on behalf of Richard J Lynn (Dicky) inmate #09748004, USP Coleman Florida. I have known Dicky for over 40 years, as a matter of fact I use to work for him running a drill truck in the Florida Keys, he actually help me get my start in business that 35 years later still supports my family. I know Dicky made mistakes and I know he has paid his time. He truly is good person and if given a chance to be released he would be grateful and very welcomed back home. Dicky has many friends that would give him a helping hand and I know they would be greatful to have him as part of our community. He has been in jail for over 30 years, could you please consider his plea, his charges were non-violent, and he is truly sorry for the mistakes that he has made. you are his last hope. Thank you for your consideration.

Sincerely,

Henry D Pinder
Pinders Drilling Service, Inc.
Hdpinder@gmail.com

Wendy P. Browning
4080 Careywood Drive
Melbourne, Florida 32934

November 9, 2019

To whom it may concern,

I am writing this letter in support of Richard Lynn.
I have known him as Dickie.

I met Dickie in my early 20's.
I was born in Key West and we had a home on Grassy Key. I spent almost every weekend fishing, boating and diving in Islamorada.
Back then Dickie was always a happy guy. He went out of his way to help people.
He was an amazing boat captain and knew the waters of the Keys well.
He is kind and caring but most of all he was the proudest father. He loved being a dad. His kids were his world.

Dickie now has spent most of his life behind bars. His health has suffered and he has missed seeing his children grow up. I don't see how his punishment has fit the crime. There are killers out there that get less time than he has.

He is now a shell of the person he was. He is in poor health and has not gotten the level of care he needs. He still has the chance to end his days with family. It is cruel to keep him locked in there when everyone else in the case has long since been released. He is no threat to society and has a strong support group waiting to help him get settled back into the community. He needs to come home and live out the remainder of his days with friends and family. Hopefully he will get a chance to get to know his grandchildren before he dies.

If he were to be released I would gladly offer him employment or assistance whatever is needed.

Kind Regards,

Wendy P. Browning

306 Presten St
Islamorada FL 33036
Nov. 07, 2019

UCI School of Law
Irvine, CA

Dear Sirs

I would like to see Dickie Lynn released from prison, I feel he has served his time, he is a very good person and I have known him since he was a little boy,

Sincerely
Alma Dalton

# EXHIBIT I

Screenshot of "Release Dickie Lynn" Facebook
Page





# www.GoFundMe.com/89bdjo

## LET'S BRING DICKIE HOME!!

### Facebook.com/ReleaseDickieLynn

**Release Dickie Lynn**
@releasedickielynn

Home

About

Photos

Posts

Community

**Create a Page**

👍 Liked ▾   🔊 Following ▾   ➤ Share   ⋯

💬 Send Message

## Photos



## Community

See All

👥 **Invite your friends** to like this Page

👍 576 people like this

🔊 571 people follow this

👥  likes this

## About

See All

⊘ Send Message

⊡ Community

✎ Suggest Edits

f **Page Transparency**   See More

Facebook is showing information to help you better

# EXHIBIT J

# Medical Records

⚔ *Leesburg Regional*
*Medical Center*
**Leesburg Regional Medical Center**
**Cardiac Catheterization Lab**
600 East Dixie Avenue  Leesburg, FL 34748
Phone: (352) 323-5137  www.cfhalliance.org
Fax: (352) 323-5149  Info@cfhalliance.org

## Catheterization Laboratory Study

| | | | | | |
|---|---|---|---|---|---|
| **Patient:** | Lynn, Richard J | **Date:** | 07/11/2019 | **DOB:** | 07/19/1954 |
| **MRN:** | 000538700 | **Gender:** | M | **Height:** | |
| **Age:** | 64 | **Study ID:** | | **Weight:** | |
| **Account:** | 1916300359 | **Room:** | A | **BSA:** | |
| **Pt. Status:** | | | | | |
| **Referring:** | Negronmarrero, Roberto L | | | | |
| **Diagnostic Physician:** Hector L. Garcia MD, FACC, FSCAI | | | | | |

---

**Summary:**

1. Coronary arteries: The coronary circulation is right dominant.

2. Right coronary: Distal vessel lesion: There is a discrete, 80%de novo stenosis. This lesion is irregularly contoured, hazy, eccentric, beaded, and consistent with atherosclerotic disease. There is TIMI grade 1 flow (slow flow, without perfusion) across the lesion. The distal vessel supplies a moderate-sized vascular territory. The lesion is a likely culprit for the patient's anginal symptoms. The lesion was stented using a bare-metal stent. Following intervention, the lesion has a residual stenosis of 0%, an excellent angiographic appearance, and TIMI grade 3 flow (brisk flow). There were no site complications.

3. RCA posterolateral extension: Lesion: There is a tubular, 99%de novo stenosis. This lesion is irregularly contoured, eccentric, mildly calcified, and consistent with atherosclerotic disease. There is TIMI grade 1 flow (slow flow, without perfusion) across the lesion. The distal vessel supplies a small vascular territory. The lesion is a likely culprit for the patient's anginal symptoms. The lesion was stented using a bare-metal stent, with balloon angioplasty. Following intervention, the lesion has a residual stenosis of 0% and an excellent angiographic appearance. There were no site complications.

**Impressions:** Severe double vessel coronary artery disease as described, predominantly involving the RCA. Successful percutaneous coronary intervention of the right coronary artery. Successful percutaneous coronary intervention of the right posterior descending artery.

**Recommendations:**

1. Add aspirin, 81mgPOdaily.
2. Add clopidogrel (Plavix), 75mgPOdaily, for 1 mon.
3. The patient should maximize medical therapy.
4. Coronary artery disease risk factor modifications to include exercise, weight reduction, blood pressure control, cholesterol reduction, and stop smoking if applicable.

**History:** Chest pain, associated with dyspnea.

**Labs, Prior Tests, Procedures, and Surgery:**

Stress nuclear imaging. Abnormal. The study demonstrated evidence suggesting coronary artery disease.
ECG. Abnormal.

**Study data:** Consent: The risks, benefits, and alternatives to the procedure were explained to the patient and informed consent was obtained.

**Procedure:**

1. Initial setup. The patient was brought to the laboratory in the fasting state. A baseline ECG was recorded. Intravenous access was established prior to the procedure. Surface ECG leads, blood pressure measurements, pulse oximetric signals, and end-tidal $CO_2$ tracings were monitored.
2. Skin preparation. The planned puncture sites were prepped with chlorhexidine and draped in the usual sterile manner.

**Study completion:** All catheters inserted during the procedure were removed. Blood loss less than 50ml unless

specified by MD.

**Coronary arteries:** The coronary circulation is right dominant.

Right coronary: *Distal vessel lesion:* There is a discrete, 80%de novo stenosis. This lesion is Irregularly contoured, hazy, eccentric, beaded, and consistent with atherosclerotic disease. There is TIMI grade 1 flow (slow flow, without perfusion) across the lesion. The distal vessel supplies a moderate-sized vascular territory. The lesion is a likely culprit for the patient's anginal symptoms. The lesion was stented using a bare-metal stent. Following intervention, the lesion has a residual stenosis of 0%, an excellent angiographic appearance, and TIMI grade 3 flow (brisk flow). There were no site complications.

RCA posterolateral extension: *Lesion:* There is a tubular, 99%de novo stenosis. This lesion is irregularly contoured, eccentric, mildly calcified, and consistent with atherosclerotic disease. There is TIMI grade 1 flow (slow flow, without perfusion) across the lesion. The distal vessel supplies a small vascular territory. The lesion is a likely culprit for the patient's anginal symptoms. The lesion was stented using a bare-metal stent, with balloon angioplasty. Following intervention, the lesion has a residual stenosis of 0% and an excellent angiographic appearance. There were no site complications.

**CORONARY ANATONY:**



This diagram is a representational image only

• Right coronary: Distal vessel lesion: 80% de novo stenosis in the distal vessel. Beaded; TIMI grade 1 flow (slow flow, without perfusion). Moderate territory at risk; culprit for anginal symptoms. Stented; excellent final appearance; residual 0% stenosis.

• RCA posterolateral extension: Lesion: 99% de novo stenosis. TIMI grade 1 flow (slow flow, without perfusion). Small territory at risk; culprit for anginal symptoms. Stented, with balloon angioplasty; excellent final appearance; residual 0% stenosis.

Prepared and signed by

Hector L. Garcia MD, FACC, FSCAI
2019-07-11T20:26:56

**✖ Leesburg Regional**
Medical Center
**Leesburg Regional Medical Center**
**Cardiac Catheterization Lab**
600 East Dixie Avenue   Leesburg, FL 34748
Phone: (352) 323-5137   www.cfhalliance.org
Fax: (352) 323-5149   Info@cfhalliance.org

## Catheterization Laboratory Study

| | | | | | |
|---|---|---|---|---|---|
| **Patient:** | Lynn, Richard J | **Date:** | 07/11/2019 | **DOB:** | 07/19/1954 |
| **MRN:** | 000538700 | **Gender:** | M | **Height:** | 182.9 cm |
| **Age:** | 64 | **Study ID:** | | **Weight:** | 113.2 kg |
| **Account:** | 1916300359 | **Room:** | A | **BSA:** | 2.43 m² |
| **Pt. Status:** | | | | | |
| **Referring:** | Negronmarrero, Roberto L | | | | |
| **Diagnostic** | Roberto Negron-Marrero, MD | | | | |
| **Physician:** | FACC | | | | |

### Summary:
1. Left ventricle: The estimated ejection fraction is 70%, by visual assessment. Wall motion is normal; there are no regional wall motion abnormalities.
2. Coronary arteries: The coronary circulation is co-dominant.
3. Left circumflex: Ostial lesion: There is a 50% stenosis.
4. 1st obtuse marginal: Mid-vessel lesion: There is a 60% stenosis.
5. Right coronary: Distal vessel lesion: There is a 40% stenosis. Distal vessel lesion: There is a 75% stenosis.

### Recommendations:
1. The patient should undergo percutaneous coronary intervention.
2. Staged due to renal function.

**History:** Dyspnea. Risk factors: Hypertension. Hypercholesterolemia, on statin (HMG-CoA reductase inhibitor) therapy. Allergies: Sulfa Drugs allergy.

**Study data:** Consent: The risks, benefits, and alternatives to the procedure were explained to the patient and informed consent was obtained. Fluoroscopy time: Fluoroscopy time: 4.5 min. Fluoroscopy dose: Fluoroscopy dose: 5792.5 cGy.

### Procedures performed:
• Left heart catheterization with angiography.
• Left coronary angiography.
• Right coronary angiography.

### Procedure:
1. Initial setup. The patient was brought to the laboratory in the fasting state. A baseline ECG was recorded. Intravenous access was established prior to the procedure. Surface ECG leads, blood pressure measurements, pulse oximetric signals, and end-tidal CO2 tracings were monitored.
2. Skin preparation. The planned puncture sites were prepped with chlorhexidine and draped in the usual sterile manner.
3. Supplemental oxygen. Oxygen, 2 L/min was administered throughout the procedure.
4. Local anesthesia. 2% Lidocaine (5 ml) was administered.
5. Right radial artery access. A 6Fx10mm Glide Sheath Radial sheath was advanced into the vessel.
6. Left heart catheterization with angiography. A 5 Fr 3DRC - Diagnostic catheter was advanced across the aortic valve to the left ventricle under fluoroscopic guidance. Contrast was injected by hand.
7. Selective left coronary angiography. A 5 Fr JL 3.5 - Diagnostic catheter was advanced into the left coronary vessel ostium under fluoroscopic guidance. Contrast was injected. Images were obtained in multiple projections.
8. Selective right coronary angiography. A 5 Fr AR MOD II - Diagnostic catheter was advanced into the right coronary vessel ostium under fluoroscopic guidance. Contrast was injected. Images were obtained in multiple projections.
9. Right radial artery hemostasis. Mechanical compression was applied.

**Study completion:** All catheters inserted during the procedure were removed. Blood loss less than 50ml unless specified by MD. There were no complications. Administered medications: IV SOLUTIONS, infusion rate of 100ml/hr. IV

SOLUTIONS, infusion rate of 300ml/hr. Midazolam, 1mg. Hydromorphone, 1mg. Heparin, 2,500units. Verapamil (Isoptin, Calan, Covera), 2,000mcg.

**Coronary arteries:** The coronary circulation is co-dominant.

Left circumflex: *Ostial lesion:* There is a 50% stenosis.

1st obtuse marginal: *Mid-vessel lesion:* There is a 60% stenosis.

Right coronary: *Distal vessel lesion:* There is a 40% stenosis. *Distal vessel lesion:* There is a 75% stenosis.

**Left ventricle:** The estimated ejection fraction is 70%, by visual assessment. Wall motion is normal; there are no regional wall motion abnormalities. Wall motion score: 1.00.

**Hemodynamics:**

| Stage description -- | Condition1:Condition 1 - |
|---|---|
| LV pressure s/ed | 94/18 |
| Arterial pressure s/d (m) | 100/53 (75) |

**CORONARY ANATONY:**



This diagram is a representational image only

- Left circumflex: Ostial lesion: 50% stenosis at the vessel ostium.
- 1st obtuse marginal: Mid-vessel lesion: 60% stenosis in the mid vessel.
- Right coronary: Distal vessel lesion: 40% stenosis in the distal vessel. Distal vessel lesion: 75% stenosis in the distal vessel.

Prepared and signed by

Roberto Negron-Marrero, MD FACC
2019-07-11T10:06:42

Patient: **LYNN, RICHARD J**
MRN: LRMC000538700
FIN: LRMC1916300359                    Date of Service 7/11/2019
DOB/Age/Sex: 7/19/1954    64 years    Male    Admitting:    MIRATIQULLAH HESSAMI,MD

---

## *History and Physical Reports*

Document Type:                         History and Physical
Service Date/Time:                     7/12/2019 10:17 EDT
Result Status:                         Auth (Verified)
Document Subject:                      Admission H & P
Sign Information:                      MIRATIQULLAH HESSAMI,MD (7/12/2019 10:22 EDT)

**Chief Complaint**
HAD CARDIAC STENT

**History of Present Illness**
64 YEAR OLD MALE FROM COLEMAN CORRECTION FACILITY WITH HISTORY OF
DM, HTN AND HYPERLIPIDEMIA AND PAROX A FIB
FOR MONTHS HE WAS COMPLAINING OF EPISODES OF CHEST PAIN ,SEEN BY
CARDIOLOGY AS OP AND HAD CTA WHICH WAS SUGGESTIVE OF CAD, BROUGHT
TO HOSPITAL AND HAD PCI AND STENT AND POST PROCEDURE ADMITTED IN
HOSPITAL

**Review of Systems**
Constitutional: [No fevers, chills, sweats]
Eye: [No recent visual problems]
ENMT: [No ear pain, nasal congestion, sore throat]
Respiratory: [No shortness of breath, cough]
Cardiovascular: [CHEST PAIN]
Gastrointestinal: [No nausea, vomiting, diarrhea]
Genitourinary: [No hematuria]
Hema/Lymph: [Negative for bruising tendency, swollen lymph glands]
Endocrine: [Negative for excessive thirst, excessive hunger]
Musculoskeletal: [No back pain, neck pain, joint pain, muscle pain, decreased range of
motion]
Integumentary: [No rash, pruritus, abrasions]
Neurologic: [Alert & oriented X 4]
Psychiatric: [No anxiety, depression]

**Physical Exam**

Vitals & Measurements
**T:** 36.8 °C (Oral) **HR:** 55 (Monitored) **RR:** 18 **BP:** 120/68 **SpO2:** 95%
**WT:** 113.000 kg (Measured) **WT:** 113.000 kg (Dosing)
General: [Alert and oriented, well nourished, no acute distress].
Eye: [PERRL, EOMI, normal conjunctiva].
HENT: [Normocephalic, clear tympanic membranes, normal hearing, moist oral mucosa, no
scleral icterus, no sinus tenderness].
Neck: [Supple, non-tender, no carotid bruits, no JVD, no lymphadenopathy].
Lungs: [Clear to auscultation and percussion, non-labored respiration].
Heart: [Normal rate, regular rhythm, no murmur, gallop or edema].
Abdomen: [Soft, non-tender, non-distended, normal bowel sounds, no masses].
Musculoskeletal: [Normal range of motion and strength, no tenderness or swelling].
Skin: [Skin is warm, dry and pink, no rashes or lesions].
Neurologic: [Awake, alert, and oriented X3, CN II-XII intact].

**Problem List/Past Medical History**
PAROX A FIB
DM
HTN
HYPERLIPIDEMIA

**Medications**
Inpatient
Acetaminophen (Tylenol), 1000 mg, 2 tab,
Oral, every 4 hr, PRN
amLODIPine, 5 mg, 1 tab, Oral, Daily
Ativan, 1 mg, 1 tab, Oral, Once, PRN
Ativan, 1 mg, 1 tab, Oral, Once, PRN
atorvastatin, 20 mg, 1 tab, Oral, Daily
atropine, 1 mg, 10 mL, IV Push, As
needed (prn), PRN
Dilaudid, 1 mg, 1 mL, IV Push, every 1 hr,
PRN
Ecotrin* (Aspirin), 81 mg, 1 tab, Oral,
Daily
hydrochlorothiazide, 25 mg, 1 tab, Oral,
Daily
lisinopril, 40 mg, 1 tab, Oral, Daily
Maalox Plus, 30 mL, Oral, every 4 hr,
PRN
Magnesium oxide, 400 mg, 1 tab, Oral,
Daily
nitroglycerin, 0.4 mg, 1 tab, SL, q5min
(floating), PRN
Plavix, 75 mg, 1 tab, Oral, Daily
Plavix, 75 mg, 1 tab, Oral, bid
Refrigerated Medication In ADM, 1 EA,
N/A, As needed (prn), PRN
Sodium Chloride 0.9% 1,000 mL, 1000
mL, IV
sodium chloride 0.9% flush, 10 mL, IV
Push, As needed (prn), PRN
Zofran, 4 mg, 2 mL, IV Push, every 4 hr,
PRN
Home
amLODIPine 5 mg oral tablet, 5 mg, 1 tab,
Oral, Daily

---

| Patient Name: | LYNN, RICHARD J | | | | |
|---|---|---|---|---|---|
| MRN: | LRMC000538700 | | | Admit: | 7/11/2019 |
| FIN: | LRMC1916300359 | | | Disch: | |
| DOB/Age/Sex: | 7/19/1954 | 64 years | Male | Admitting: | MIRATIQULLAH HESSAMI,MD |

## History and Physical Reports

Psychiatric: [Cooperative, appropriate mood and affect].

**Assessment/Plan**
CAD WITH CRITICAL STENOSIS OF PDA AND RCA
SUCCESSFUL PCI AND STENT OF PDA AND RCA
DM
HTN
HYPERLIPIDEMIA
PAROX A FIB

POST CARDIAC STENT, DOING WELL, NO COMPLAINS ON ASA AND PLAVIX, DC TO
COLEMAN, FOLLOW AS OP

atenolol 25 mg oral tablet, 12.5 mg, 0.5
tab, Oral, Daily
atorvastatin 20 mg oral tablet, 20 mg, 1
tab, Oral, Daily
Ecotrin* (Aspirin), 81 mg, 1 tab, Oral,
Daily
Eliquis 5 mg oral tablet, 5 mg, 1 tab, Oral,
bid
hydrochlorothiazide 25 mg oral tablet, 25
mg, 1 tab, Oral, Daily
lisinopril 40 mg oral tablet, 40 mg, 1 tab,
Oral, Daily
magnesium oxide 400 mg (241.3 mg
elemental magnesium) oral tablet, 400
mg, 1 tab, Oral, Daily,  **Not taking**
Plavix 75 mg oral tablet, 75 mg, 1 tab,
Oral, Daily

**Allergies**
sulfa drugs (unknown)

**Social History**
Tobacco
Smoking tobacco use: pt at correct care
solution- unknown.
DOESN'T SMOKE , DOESN'T DRINK

**Family History**
REVIEWED NON CONTRIBUTORY

**Immunizations**
No qualifying data available.

**Lab Results**
No qualifying data available

**Diagnostic Results**
No qualifying data available.

Electronically Signed on 07/12/19 10:22 AM

MIRATIQULLAH  HESSAMI, MD

CT Angio Heart Struct Moph Func
* Final Report *

LYNN, RICHARD - LRMC000538700

| | |
|---|---|
| Result type: | CT Angio Heart Struct Moph Func |
| Result date: | January 07, 2019 10:44 EST |
| Result status: | Auth (Verified) |
| Result title: | CT Angio Heart Struct Moph Func |
| Performed by: | msc1692 -Marc S. Schwartzberg, M.D., on January 07, 2019 17:22 EST |
| Verified by: | msc1692 -UNKNOWN, PERSONNEL on January 07, 2019 17:22 EST |
| Encounter Info: | LRMC1833100372, LRMC, O/P - Regular Outpatient Admission, 01/07/19 - 01/07/19 |

## * Final Report *

**Reason For Exam**
leg cramps

**CT ANGIO HEART STRUCT MOPH FUNC**
PATIENT: LYNN, RICHARD

DATE: 1/07/2019 at 8:56

PROCEDURE: CTA HEART WO/W CONTRAST, CARDIAC GATING, 3-D POST
PROCESSING, FUNCTION EVALUATION

COMPARISON: None.

INDICATIONS: LEG CRAMPS

RADIATION: Total Dose Length Product (DLP): 1159 mGy*cm
TECHNIQUE: Both before and following administration of 100cc
Omnipaque IV, gated images were obtained at 3 mm intervals. Multi
format reconstructions, including 3D rendering, were performed with
computerized vessel analysis. Dose reduction technique(s) were used.

DICOM format image data is available to non-affiliated external
healthcare facilities or entities on a secure, media-free, reciprocally
searchable basis with patient authorization for at least a 12-month
period after the study.

FINDINGS: Calcium Score: 523 (75-90%)   Dominance: Right
Ejection Fraction: 50%

| | Plaque Amt. | Type | Remodeling | Stenosis |
|---|---|---|---|---|
| Left Main | Moderate | Mixed | Positive | 50% |
| Comment: | | | | |
| LAD Proximal | Moderate | Mixed | Positive | 50% |
| Comment: | | | | |
| LAD Mid | Mild | Mixed | Positive | 30% |
| Comment: | | | | |

| | |
|---|---|
| Printed by: | Elaine Kelly, HIS Records Technician |
| Printed on: | 01/14/2019 11:22 EST |

CT Angio Heart Struct Moph Func
* Final Report *

| | |
|---|---|
| Result type: | CT Angio Heart Struct Moph Func |
| Result date: | January 07, 2019 10:44 EST |
| Result status: | Auth (Verified) |
| Result title: | CT Angio Heart Struct Moph Func |
| Performed by: | msc1692 -Marc S. Schwartzberg, M.D., on January 07, 2019 17:22 EST |
| Verified by: | msc1692 -UNKNOWN, PERSONNEL on January 07, 2019 17:22 EST |
| Encounter Info: | LRMC1833100372, LRMC, O/P - Regular Outpatient Admission, 01/07/19 - 01/07/19 |

LAD Distal    Normal
  Comment:
1st Diag    Severe  Mixed    Positive    >70%
  Comment:
2nd Diag    Patent
  Comment: Small vessel.
Cx Proximal    Mild    Calcific  Positive    <30%
  Comment:
Cx Mid/Dist    Mild    Calcific  Positive    <30%
  Comment:
1st OM    Severe  Mixed    Positive    >70%
  Comment: Large vessel.
2nd OM    Moderate  Calcific  Positive    50%
  Comment:
RCA Proximal  Moderate  Mixed    Positive    50%
  Comment:
RCA Mid    Severe  Calcific    Positive    70%
  Comment:
RCA Distal    Severe  Calcific  Positive    70%
  Comment:
PDA    Mod/sev  Fibrous  No    50-60%
  Comment:
Posterolateral  Moderate  Fibrous  No    50%
  Comment:
Ramus    Moderate  Mixed    Positive    50%
  Comment: Large vessel.
Other

Other Cardiac:
Overall Plaque Burden:
Concern for flow-limiting lesion:    -
Noncardiac:

IMPRESSION

MODERATE TO SEVERE THREE-VESSEL CORONARY DISEASE (CAD-RADS 4).

MILD AORTIC VALVULAR DISEASE.

Printed by:    Elaine Kelly, HIS Records Technician
Printed on:    01/14/2019 11:22 EST

CT Angio Heart Struct Moph Func
* Final Report *

LYNN, RICHARD - LRMC000538700

Result type:        CT Angio Heart Struct Moph Func
Result date:        January 07, 2019 10:44 EST
Result status:      Auth (Verified)
Result title:       CT Angio Heart Struct Moph Func
Performed by:       msc1692 -Marc S. Schwartzberg, M.D., on January 07, 2019 17:22 EST
Verified by:        msc1692 -UNKNOWN, PERSONNEL on January 07, 2019 17:22 EST
Encounter info:     LRMC1833100372, LRMC, O/P - Regular Outpatient Admission, 01/07/19 - 01/07/19

Marc S. Schwartzberg, M.D.
Dictated by: Marc S. Schwartzberg, M.D. on 1/07/2019 at 16:35
Electronically signed

**Signature Line**
***** Final *****

Dictated by:   Contributor_system, P
Dictated DT/TM: 01/07/2019 5:22 pm
Signed by:  Contributor_system, PACS
Signed (Electronic Signature):  01/07/2019 5:22 pm

**IMAGE**
This document has an image

Leesburg Regional Medical Center
600 E Dixie Ave
Leesburg, FL 34748
352-323-5762

Final

## Emergency Department Chart

| | |
|---|---|
| Patient Name: LYNN, RICHARD | Account Number: 1715201239 |
| Medical Rec. Number: 000538700 | Birthdate: 07/19/1954    Gender: M |
| Arrival Date: 06/01/2017 21:13 | Primary MD: Coleman |
| Visit Date:    06/01/2017 21:16 | Attending MD:SAMEER DRAVIAM MD |

### Vital Signs/Data

| Time | Staff | Temperature | Pulse | Respiration | Blood Pressure | Pulse Oximetry | Pain |
|---|---|---|---|---|---|---|---|
| 06/02/2017 00:40 | MW | | 113 /min | 18 /min | 133/90 mm Hg | 97% | |
| 06/02/2017 00:00 | MW | | 111 /min | 18 /min | 124/93 mm Hg | 97% | |
| 06/01/2017 22:00 | MW | | 110 /min | 16 /min | 132/95 mm Hg | 99% | |
| 06/01/2017 21:15 | MW | 98.4 F Oral | 102 /min | 18 /min | 131/94 mm Hg | 99% | 5/10 |

### Allergies

**Sulfa (Sulfonamide Antibiotics), Primary Reaction - Rash [Confirmed by Melissa Wharton RN on 06/02/2017 00:54:13.] ( 11/11/2014 07:50)**

### Chief Complaint

Chest Pain (MW 06/01/2017 23:12)

### Pre- Hospital Treatment

Prehospital care: Pt started to feel like his heart was fluttering, pt found in a flutter, given fluids and aspirin.   Cardiac monitoring started.   Pulse ox obtained.   Intravenous access 18g right hand obtained.   Prehospital glucose value was: 96.   324mg Aspirin given prior to arrival.   NS 400ml given prior to arrival.   Mode of arrival: Sumter County EMS (MW) 06/01/2017 21:10

TO:Amy Dawson   COMPANY:Correct Care Solutions

Leesburg Regional Medical Center
600 E Dixie Ave
Leesburg, FL 34748
352-323-5762

Final

## Emergency Department Chart

| Patient Name: LYNN, RICHARD | Account Number: 1715201239 |
|---|---|
| Medical Rec Number: 000538700 | Birthdate: 07/19/1954   Gender: M |
| Arrival Date: 06/01/2017 21:13 | Primary MD: Coleman |
| Visit Date: 06/01/2017 21:16 | Attending MD:SAMEER DRAVIAM MD |

## Triage

Yellow-Level3 (MW 06/01/2017 21:15)
No language or communication barrier. (MW 21:15)
Patient has no mental status changes (MW 21:15)
Patient lives in an institution. (MW 21:15)
History is supplied by the patient's ambulance record. (MW 21:15)
chest pain with "fluttering feeling" (MW 21:15)
Patient has no advance directives. (MW 21:15)
Patient has no emotional, spiritual, or cognitive needs noted. (MW 21:15)
The patient feels safe at home. (MW 21:15)
The patient does not feel he/she could hurt themselves or someone else. (MW 21:15)
The patient is not verbalizing or displaying self-injurious or suicidal thought/behavior. (MW 21:15)
The patient does not have thoughts of killing him/herself. (MW 21:15)
Fall risk - no history of falling; immediate or within 3 months. (MW 21:15)
Fall risk - no secondary diagnosis. (MW 21:15)
Fall risk - no ambulatory aid used; or patient on bed rest, uses wheel chair, or nurse assist. (MW 21:15)
Fall risk - has IV or heparin lock. (MW 21:15)
Fall risk - gait/transferring normal; or patient is on bed rest or immobile. (MW 21:15)
Fall risk - patient is oriented to own ability. (MW 21:15)
INFECTIOUS DISEASE/ CDC SCREENING (Ebola): Patient HAS NOT lived in or traveled to a country with widespread Ebola transmission and HAS NOT had contact with an individual with confirmed Ebola Virus Disease within the previous 21 days. (MW 21:15)
INFECTIOUS DISEASE/ CDC SCREENING (Novel influenza, MERS): Patient IS NOT being seen for respiratory symptoms and a temperature of 100.5 degrees F or greater. (MW 21:15)
INFECTIOUS DISEASE/ CDC SCREENING (CRE): Patient has not been hospitalized outside the US within the last 6 months (MW 21:15)
TRAVEL HISTORY SCREENING: Patient has not traveled outside the US within the last 30 days. (MW 21:15)
TRAVEL HISTORY SCREENING: Patient has not been in close contact with anyone who has traveled outside the US within the last 30 days. (MW 21:15)
SEPSIS SCREENING: (MW 21:15)
MRSA: N/A (MW 21:15)
C-diff: N/A (MW 21:15)
VRE: N/A (MW 21:15)
No symptoms of sepsis observed. (MW 21:15)
Fall risk level - low risk. (MW 23:10)
Patient is triaged directly to ER Room (MW 21:15)
No nutritional concerns noted for patient (MW 21:15)

## Height/Weight

Hgt 72 inch at 21:15 (MW 06/01/2017 21:15)
Wgt: 99.79 kg at 21:15 (MW 21:15)
BMI: 29.8 (MW 21:15)
BSA 2.25 sq m (MW 21:15)

## Current Medications

1) 11/10/2014 23:11 AV  atenolol Oral 50 mg Dose: 25 mg Every day [Confirmed by Brenda Hocking RN on 06/02/2017 01:38:14.]
2) 11/10/2014 23:12 AV  atorvastatin Oral 20 mg [Confirmed by Brenda Hocking RN on 06/02/2017 01:38:08.]
3) 11/10/2014 23:12 AV  hydrochlorothiazide Oral 25 mg Dose: Every day [Confirmed by Brenda Hocking RN on 06/02/2017 01:38:22.]
4) 11/10/2014 23:12 AV  lisinopril Oral 20 mg Dose: Every day [Confirmed by Brenda Hocking RN on 06/02/2017 01:38:19.]
5) 11/12/2014 09:19  acetaminophen Oral 325 MG Dose: 650 mg Q4P PRN

### Added This Visit

1) 06/02/2017 01:37  amlodipine Oral Dose: Every day [Confirmed by Brenda Hocking RN on 06/02/2017 01:37:41.]

TO:Amy Dawson   COMPANY:Correct Care Solutions

Leesburg Regional Medical Center                                                      Final
600 E. Dixie Ave
Leesburg, FL 34748
352-323-5762

## Emergency Department Chart

| | |
|---|---|
| Patient Name: LYNN, RICHARD | Account Number: 1715201239 |
| Medical Rec. Number: 000538700 | Birthdate: 07/19/1954   Gender: M |
| Arrival Date: 06/01/2017 21:13 | Primary MD: Coleman, |
| Visit Date: 06/01/2017 21:16 | Attending MD: SAMEER DRAVIAM MD |

### Nursing Assessment

GENERAL
NEGLECT/ABUSE: Survey shows NEGATIVE risk for this patient. (MW) 06/01/2017 21:15

GENERAL PRESENTATION
Appears in no acute distress. Fully verbal. (MW) 06/01/2017 21:20

HEENT
Eyes, ears and nose without visible drainage. Swallowing without difficulty. No reported change in hearing. No reported change in vision. (MW) 06/01/2017 21:20

PULMONARY
Bilateral breath sounds clear. Respirations regular and unlabored. Mucous membranes and nail beds pink. (MW) 06/01/2017 21:20

CIRCULATORY/CARDIAC
Primary rhythm is A flutter. The right and left radial pulse is easily palpable with good quality. Blood pressure is normal. Brisk capillary refill. (MW) 06/01/2017 21:20

ABDOMINAL
Abdomen soft, nondistended, nontender. Bowel sounds audible. No complaint of nausea, vomiting, diarrhea, or constipation. (MW) 06/01/2017 21:20

GU
Able to empty bladder without dysuria. No complaint of frequency or urgency. (MW) 06/01/2017 21:20

NEUROLOGIC
Alert and oriented x4. Speech clear. Responds to commands. Moves all extremities. (MW) 06/01/2017 21:20

SKIN/SOFT TISSUE
Skin is warm, dry and intact with normal color and turgor. (MW) 06/01/2017 21:20

MUSCULOSKELETAL/EXTREMITIES
Normal ambulatory status. (MW) 06/01/2017 21:20

PAIN
The patient has received verbal instruction and/or educational material relating to their pain, its treatment goals, expectations, and care. Patient verbalized understanding.
The patient has had a goal of demonstrable pain reduction prior to discharge set
Pain goal is 0. (MW) 06/02/2017 01:42

TO:Amy Dawson   COMPANY:Correct Care Solutions

Leesburg Regional Medical Center                                                    Final
600 E. Dixie Ave.
Leesburg, FL 34748
352-323-5762

## Emergency Department Chart

| Patient Name: LYNN, RICHARD | Account Number: 1715201239 |
|---|---|
| Medical Rec. Number: 000538700 | Birthdate: 07/19/1954    Gender: M |
| Arrival Date: 06/01/2017 21:13 | Primary MD: Coleman |
| Visit Date: 06/01/2017 21:16 | Attending MD: SAMEER DRAVIAM MD |

### Nursing Continuation Notes - Refer to Orders section for all orders

Transferred from ambulance stretcher to bed # 14. (MW 06/01/2017 21:15)
Instructed to undress for exam. (MW 21:15)
Call light provided to patient (MW 21:15)
Comfortable. (MW 22:00)
In bed. (MW 22:00)
Bed rails up. (MW 22:00)
Vital signs stable. (MW 22:00)
Vital signs unchanged. (MW 22:00)
Comfortable. (MW 23:00)
In bed. (MW 23:00)
Bed rails up. (MW 23:00)
Vital signs stable. (MW 23:00)
Vital signs unchanged. (MW 23:00)
Comfortable. (MW 06/02/2017 00:00)
In bed. (MW 00:00)
Bed rails up. (MW 00:00)
Vital signs stable. (MW 00:00)
Vital signs unchanged. (MW 00:00)
faxed and verified report revd (MW 00:30)

### Clinician History of Present Illness

Initial evaluation by ED Provider started at 21:14 Presenting problem started  hour(s) ago. History comes from patient. Have reviewed and agree with RN note. Able to get a good history. Primary symptoms: Palpitations. Severity of symptoms is moderate Symptoms are constant  Modifing factors: None. Onset: 62 year old male presents to the ED with complaint of palpitations. Patient complains of chest pain as well. Per EMS patient was in atrial flutter on arrival with a rate in the 130's. EMS states patient's rate came down slightly with fluids.
. (EL) 06/01/2017 21:14

### Patient Problems

Chest pain. (SK 11/10/2014 22:35)
I48.92: Unspecified atrial flutter. [Confirmed by Erin Lang Scribe on 06/01/2017 23:55:03 ] (EL 06/01/2017 23:55)

### Review of Systems

Has chest pain.  Has palpitations.  All other systems are reviewed and are negative, except as noted. (EL) 06/01/2017 21:14

### Social History

Other living situation: Coleman. (EL) 06/01/2017 21:14

### Family History

Family history reviewed and not relevant to the current problem. (EL) 06/01/2017 21:14

### Physical Exam

GENERAL:
Vital signs reviewed. Alert. The patient appears to be in no acute distress. (EL) 06/01/2017 21:14

EYE EXAM:
Pupils are reactive to light. (EL) 06/01/2017 21:14

PULMONARY:
Currently in no acute respiratory distress. Normal, non labored respirations. The breath sounds are normal, with good equal air movement. (EL) 06/01/2017 21:14

Leesburg Regional Medical Center
600 E. Dixie Ave
Leesburg, FL 34748
352-323-5762

Final

## Emergency Department Chart

| Patient Name: LYNN, RICHARD | Account Number: 1715201239 |
|---|---|
| Medical Rec Number: 000538700 | Birthdate: 07/19/1954    Gender: M |
| Arrival Date: 06/01/2017 21:13 | Primary MD: Coleman. |
| Visit Date: 06/01/2017 21:16 | Attending MD: SAMEER DRAVIAM MD |

### Physical Exam

CIRCULATORY:
No murmur. No rub. No gallop. Peripheral pulses are strong and equal. Tachycardic. (EL) 06/01/2017 21:14

ABDOMEN:
The abdomen is soft and nontender to palpation. No organomegaly. (EL) 06/01/2017 21:14

NEUROLOGIC:
Alert, oriented to person, place, and time. Cranial nerves II through XII are intact. No motor deficit. No sensory deficit. (EL) 06/01/2017 21:14

MUSCULOSKELETAL
No extremity tenderness. Full range of motion in all extremities. No extremity edema. (EL) 06/01/2017 21:14

SKIN
Skin color is normal. No rash. Warm. Dry to touch. (EL) 06/01/2017 21:14

PSYCHIATRIC:
Mood and affect normal. (EL) 06/01/2017 21:14

### Progress Notes

Discussed case with Dr. Hessami, who accepts the admission. Would like to consult Dr. Garcia. (EL) 06/01/2017 23:50
Rechecked patient. Vital signs stable.

Discussed all results, diagnosis, and plan for

admission with patient. Patient understands and

agrees with this plan. (EL) 06/01/2017 23:57 patient will need admission for rapid atrial flutter   no need for cardizem drip at this
point as he is rate controlled in the low 100s. Patient stable for admission and will consult cardiology. (SD) 06/02/2017 02:03

### Primary Diagnosis

Free text DX: I48.92: Unspecified atrial flutter (EL  06/01/2017 23:55)

### Med Orders

**Aspirin EC [ ECOTRIN ] 325 MG ORAL  DAILY ROUTINE**
    *Entered By (SD MD 06/02/2017 00:04)  Ordered By (SD MD 00:04)  MD Sign (SD MD 00.04)*
**ED Enoxaparin inj (mg/kg dosing) [ LOVENOX ] 1 MG/KG SUBQ  ONCE STAT 1 Times**
    *Entered By (SD MD 06/02/2017 00:04)  Ordered By (SD MD 00:04)  MD Sign (SD MD 00:04)*
**REFRIGERATED MEDICATIONS 1 EA MISC  PRN ROUTINE**
    *Ordered By ( 06/02/2017 01:07)*
**TRANSFER OF CARE 1 EA MISC  BID ROUTINE**
    *Ordered By ( 06/02/2017 01:07)*
**Saline Flush [ NaCl ] 10 ML IV  PRN ROUTINE**
    *Ordered By ( 06/02/2017 01:07)*

TO: Amy Dawson     COMPANY: Correct Care Solutions

Leesburg Regional Medical Center                                                          Final
600 E. Dixie Ave
Leesburg, FL 34748
352-323-5762

## Emergency Department Chart

| | |
|---|---|
| Patient Name: LYNN, RICHARD | Account Number: 1715201239 |
| Medical Rec Number: 000538700 | Birthdate: 07/19/1954     Gender: M |
| Arrival Date: 06/01/2017 21:13 | Primary MD: Coleman |
| Visit Date: 06/01/2017 21:16 | Attending MD: SAMEER DRAVIAM MD |

### Non- Med Orders

*Sec 00:15) Notes: Cancel Reason: DCed as a result of switch order (SBN 00:15)*
**TROPONIN I  Q 6HR ROUT AM**
    *Entered By (SD MD 06/02/2017 00:04) Ordered By (SD MD 00:04) MD Sign (SD MD 00:04)*
**PHYSICIAN CONSULT  CONTIN ROUTINE UNTIL DISCONTINUED cardio unspecified a- flutter**
    *Entered By (SBN Unit Sec 06/02/2017 00:15) Ordered By (SD MD 00:15) MD Sign (SD MD 00:15)*

### Results

EKG: rate: 113.. (EL  06/01/2017 21:19)
EKG interpretation done by me. (EL  21:19)
Atrial flutter with predominant 2:1 AV block (EL  21:19)
Normal QRS complex. (EL  21:19)
The QT interval is normal. (EL  21:19)
XR MOBILE CHEST AP 1 VIEW  ONCE STAT 1 Times - I have reviewed the radiologist's report for this film. (EL  22:07)
The examination findings are NO EVIDENCE OF ACUTE CARDIOPULMONARY PROCESS. MILD CARDIOMEGALY WITH NO
EVIDENCE OF PULMONARY VENOUS CONGESTION OR CONGESTIVE HEART FAILURE. LUNGS ARE
CLEAR.. (EL  22:07)

### Disposition

I, Erin Lang, scribing for and in the presence

of Dr. Sameer Draviam, MD. Signed by: Erin

Lang, scribe. 06/01/17, 2357 (EL) 06/01/2017 22:08 Disposition decision is observation.  Observation - Medical.  Condition at
discharge - stable. (EL) 06/01/2017 23:55 I, SAMEER DRAVIAM MD, reviewed the chart of LYNN, RICHARD, including all scribe
notes and it is ready for final disposition. This note accurately reflects all work, treatment, procedures and medical decision
making performed by me. Electronically signed by SAMEER DRAVIAM MD. (SD) 06/02/2017 02:04 Disposition status is Admit
Room # 3122. Tech assisted with transport.  Monitor used during transport. Patient has patent IV during transport.  Belongings
with patient. Patient physically left department and was removed from Tracking Board by Melissa Wharton RN. (MW) 06/02/2017
00:56 Electronically signed by Melissa Wharton RN. (MW) 06/02/2017 01:42

### Discharge Summary

Chief Complaint  Chest Pain.. Primary Diagnosis  Free text DX  I48.92: Unspecified atrial flutter  Disposition Notes: Discharge
Prescriptions  NO DATA AVAILABLE.. ( 06/02/2017 02:04)

### Staff Legend

| | |
|---|---|
| AV | Amanda Vargas RN |
| EL | Erin Lang Scribe |
| LCR | Lee Redmon ER PCT |
| MW | Melissa Wharton RN |
| SBN | Sunni Nerius Unit Sec |
| SD | SAMEER DRAVIAM MD |
| SK | Samantha Kasmirski ED Scribe |

TO: Amy Dawson    COMPANY: Correct Care Solutions

| LYNN, RICHARD | | |
|---|---|---|
| Leesburg Regional Medical Center - 3SW | | |
| Rm-Bed: 3122 - A | Admit Dt: 06/02/2017 00:04 | Disch Dt: |
| Age: 62 yr | Gender: M | |
| DOB: 07/19/1954 | Acct: 1715201239 | MRN: 000538700 |

Clinician: GARCIA, HECTOR MD

Note Type: Consult

Note Date: 06/02/2017 21:33

### Consult Note:

**Reason for consult:** Reason for consult: Atrial fibrillation

**History of Present Illness:** History of Present Illness: Male patient with history of paroxysmally atrial fibrillation. History of hypertension and hyperlipidemia. Patient has been doing relatively well last episode of rate fibrillation being approximately 2 years ago. He was doing relatively well until the day prior to admission when he began to develop episodes of palpitations. These were fast and irregular and associated with some lightheadedness. No chest pains no shortness of breath. He has continued the patient's and come to the emergency room where he is admitted. He has been more than 48 hr since the onset of her symptoms

**Past Medical History:** Past Medical History: as stated above

**Social History:**

  **Tobacco Use:** denies tobacco use

  **Alcohol Use:** denies alcohol use

  **Street Drug Use:** Patient denies street drug use.

**Family History:** Family History: nc

  **Allergies**

    Sulfa (Sulfonamide Antibiotics): Rash

**Inpatient Medications**

| Description | Dose | Route | Freq/Rate | Last Given |
|---|---|---|---|---|
| ALUM-MAG-SIMETHICONE UD (MAALOX PLUS) | 30 ML SUSP | ORAL | Q4P | |
| AMLODIPINE BESYLATE (NORVASC) | 5 MG=1 TAB | ORAL | DAILY | 06/02/2017 10:36 |
| ASPIRIN EC (ECOTRIN) | 325 MG=1 TBEC | ORAL | DAILY | 06/02/2017 10:36 |
| ATENOLOL (TENORMIN) | 25 MG=1 TAB | ORAL | DAILY | 06/02/2017 10:36 |
| ATORVASTATIN (LIPITOR) | 20 MG=1 TAB | ORAL | DAILY | 06/02/2017 10:36 |
| DOCUSATE SODIUM (COLACE) | 100 MG=1 CAP | ORAL | HSP | 06/02/2017 20:47 |
| ED Enoxaparin inj (mg/kg dosing) [ LOVENOX ] 1 MG/KG SUBQ | 1 MG/KG (1 Time) | SUBQ | ONCE | |
| ESZOPICLONE (LUNESTA) | 1 MG=1 TAB | ORAL | HSP | 06/02/2017 21:22 |
| HEPARIN IN D5W 500 ML(PMX) | 25,000 UNIT | IV | 36 ml/hr | 06/02/2017 17:02 |
| HEPARIN SODIUM INJ (HEPARIN(PORCINE)) | 2,000 UNIT=0.4 ML SOLN | IV | PRN | |
| HEPARIN SODIUM INJ (HEPARIN(PORCINE)) | 4,000 UNIT=0.8 ML SOLN | IV | PRN | |
| HYDROCHLOROTHIAZIDE | 25 MG=1 TAB | ORAL | DAILY | 06/02/2017 10:36 |
| LISINOPRIL (ZESTRIL) | 20 MG=1 TAB | ORAL | DAILY | 06/02/2017 10:36 |
| ONDANSETRON INJ (ZOFRAN(PF)) | 4 MG=2 ML SOLN | IV | Q6P | |
| REFRIGERATED MEDICATIONS (ACUDOSE FRIDGE) | 1 EA | MISC | PRN | |
| SODIUM CHLORIDE FLUSH (SALINE FLUSH) | 10 ML SYRG | IV | PRN | |
| TRANSFER OF CARE (REPORT) | 1 EA | MISC | BID7 | 06/02/2017 18:21 |
| WARFARIN PATIENT (COUMADIN PATIENT) | 1 EA | MISC | UD | |

**Home Medications**

TO: Amy Dawson   COMPANY: Correct Care Solutions

| LYNN, RICHARD |
| Leesburg Regional Medical Center - 3SW |
| Rm-Bed: 3122 - A    Admit Dt: 06/02/2017 00:04    Disch Dt: |
| Age: 62 yr    Gender: M |
| DOB: 07/19/1954    Acct: 1715201239    MRN: 000536700 |

| Description | SIG | Indication | Special Instruc-tions | Last Taken |
|---|---|---|---|---|
| amlodipine oral | Oral Every day | | | |
| atenolol oral | 25 mg Oral Every day | | | |
| atorvastatin oral | Oral | | | |
| hydrochlorothiazide oral | Oral Every day | | | |
| lisinopril oral | Oral Every day | | | |
| TYLENOL | 650 mg Oral Q4P PRN | | | |

## Subjective/Interval History:

### Review Of Systems:

**Constitutional:** no fever; no chills; no weight loss; no night sweats; denies fatigue

**Eyes (R,L):** no eye discharge; no eye irritation; no blurry vision; no vision loss; no eye pain

**Ears, Nose, Mouth and Throat:** no tinnitius; no bloody nose; no vertigo, no sore throat; (R,L) no reported hearing loss

**Respiratory:** no cough; no hemoptysis, no shortness of breath

**Cardiovascular:** no chest pain; no orthopnea; palpitations

**Endocrine:** no heat intolerance; no cold intolerance

**Neurological:** no headache; no tremors, no numbness

**Skin:** no rash; no pruritus

**Gastrointestinal:** no nausea; no vomiting; denies reflux: no hematemesis, denies dysphagia; denies abdominal pain; no diarrhea; no constipation; denies melena

**Psychiatric:** no depression; no insomnia; denies anxiety; denies stress

**Genitourinary:** denies dysuria; no hematuria; no hesitancy; denies urgency; no incontinence; denies any decrease in urinary output

**Musculoskeletal:** denies gout; denies osteoporosis, denies arthralgia; denies stiffness

**Hematologic-Lymphatic:** no bruising; no bleeding diathesis

### Vital Signs:

#### Vital Signs

##### Vital Signs

| | Most Recent | Date/time | Range (does not include the most recent data) |
|---|---|---|---|
| BP #1 | 128/91 | 06/02/2017 21:16 | 102-156 / 68-116 |
| MAP | 103 | 06/02/2017 21:16 | 79-129 |
| O2 saturation | 97 % | 06/02/2017 21:16 | 92-98 |
| PULSE #1 | 93 | 06/02/2017 21:16 | 60-116 |
| PULSE #2 | 113 | 06/02/2017 00:40 | |
| RESPIRATIONS | 19 | 06/02/2017 21:16 | 18-18 |
| TEMP #1 | 98.9F | 06/02/2017 21:16 | 97.8-98.1 |

## Objective:

### Physical Exam:

Well-nourished well-developed Alert oriented and cooperative<BR>HEENT: No jugular vein distention. No hepatojugular reflux no carotid bruits<BR>Lungs: Clear to auscultation percussion no wheezes,ronchi or rales<BR>Cardiovascular: Regular rhythm no gallops snaps rubs or murmurs<BR>Abdominal: Adequate peristalsis no masses no visceromegaly no rebound nontender<BR>Extremities: No edema. Adequate peripheral pulses no cyanosis<BR>No neurological deficits

**Diagnostic Studies:** Labs reviewed; Diagnostic imaging reviewed personally: EKG reviewed personally; telemetry reviewed personally

**Assessment:** Assessment: Male patient admitted with atrial fibrillation. It has been approximately more than 48 hr since onset for which reason I will start the patient on anticoagulation I have offered the patient the alternatives of cardioversion after transesophageal echocardiogram versus rate control for 1 month of anticoagulation and then cardioversion. The benefits and

TO:Amy Dawson    COMPANY:Correct Care Solutions

| LYNN, RICHARD | | |
|---|---|---|
| Leesburg Regional Medical Center - 3SW | | |
| Rm-Bed: 3122 - A | Admit Dt: 06/02/2017 00:04 | Disch Dt: |
| Age: 62 yr | Gender: M | |
| DOB: 07/19/1954 | Acct: 1715201239 | MRN: 000538700 |

risks have been discussed at length the questions have been answered. Patient wishes to proceed with transesophageal and cardioversion

Signed by: HECTOR GARCIA, MD 06/03/2017 00:38

- 3 of 3 -

**LabCorp**
Laboratory Corporation of America

**Patient Report**

Specimen ID: 033-755-0470-0
Control ID: ATA09070310

Acct #: 09070310     Phone: (352) 689-7000     Rte: 00

**LYNN, RICHARD**

FCC Coleman USP II (Pen 2)
846 NE 54th Terrace
Sumterville FL 33521

| Patient Details | Specimen Details | Physician Details |
|---|---|---|
| DOB: 07/19/1954 | Date collected: 02/02/2017 1100 Local | Ordering: |
| Age(y/m/d): 062/06/14 | Date entered: 02/02/2017 | Referring: |
| Gender: M    SSN: | Date reported: 02/03/2017 0911 ET | ID: |
| Patient ID: 09748-004 | | NPI: |

Ordered Items
Hepatic Function Panel (7); PSA Total+% Free

| TESTS | RESULT | FLAG | UNITS | REFERENCE INTERVAL | LAB |
|---|---|---|---|---|---|
| **Hepatic Function Panel (7)** | | | | | |
| Protein, Total, Serum | 7.3 | | g/dL | 6.0 - 8.5 | 01 |
| Albumin, Serum | 4.5 | | g/dL | 3.6 - 4.8 | 01 |
| Bilirubin, Total | 0.5 | | mg/dL | 0.0 - 1.2 | 01 |
| Bilirubin, Direct | 0.14 | | mg/dL | 0.00 - 0.40 | 01 |
| | | | **Please note reference interval change** | | |
| Alkaline Phosphatase, S | 77 | | IU/L | 39 - 117 | 01 |
| AST (SGOT) | 49 | High | IU/L | 0 - 40 | 01 |
| ALT (SGPT) | 51 | High | IU/L | 0 - 44 | 01 |

**PSA Total+% Free**

| | | | | | |
|---|---|---|---|---|---|
| Prostate Specific Ag, Serum | 0.8 | | ng/mL | 0.0 - 4.0 | 01 |

Roche ECLIA methodology.
According to the American Urological Association, Serum PSA should
decrease and remain at undetectable levels after radical
prostatectomy. The AUA defines biochemical recurrence as an initial
PSA value 0.2 ng/mL or greater followed by a subsequent confirmatory
PSA value 0.2 ng/mL or greater.
Values obtained with different assay methods or kits cannot be used
interchangeably. Results cannot be interpreted as absolute evidence
of the presence or absence of malignant disease.

| | | | | | |
|---|---|---|---|---|---|
| PSA, Free | 0.2 | | ng/mL | N/A | 01 |

Roche ECLIA methodology.

% Free PSA                     30.0                        %
The table below lists the probability of prostate cancer for
men with non-suspicious DRE results and total PSA between
4 and 10 ng/mL, by patient age (Catalona et al, JAMA 1998,
279:1542).

| % Free PSA | 50-64 yr | 65-75 yr |
|---|---|---|
| 0.00-10.00% | 56% | 55% |
| 10.01-15.00% | 24% | 35% |
| 15.01-20.00% | 17% | 23% |
| 20.01-25.00% | 10% | 20% |
| >25.00% | 5% | 9% |

Please note:   Catalona et al did not make specific
recommendations regarding the use of
percent free PSA for any other population
of men.



This document contains private and confidential health information protected by state and federal law.
If you have received this document in error, please call 800-877-5227

© 1995-2017 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version: 1.00

| | | |
|---|---|---|
| Inmate Name: LYNN, RICHARD JOSEPH | | Reg #: 09748-004 |
| Date of Birth: 07/19/1954 | Sex: M Race: WHITE | Facility: CLP |
| Encounter Date: 06/20/2019 09:30 | Provider: Venuto, Gary MD | Unit: H02 |

Chronic Care - Chronic Care Clinic encounter performed at Health Services.

**SUBJECTIVE:**

    **COMPLAINT 1**     **Provider:** Venuto, Gary MD

      **Chief Complaint:** HYPERTENSION

      **Subjective:** Complete lockdown due to power outage, camera and radio problems, will need to be rescheduled.

      **Pain:** Not Applicable

**Seen for clinic(s):** Cardiac, Endocrine/Lipid, Hypertension, Orthopedic/Rheumatology

**OBJECTIVE:**

**ASSESSMENT:**

    Hypertension, Benign Essential, 401.1 - Current

**PLAN:**

**Renew Medication Orders:**

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| 914783-COX | Acetaminophen 325 MG Tab | 06/20/2019 09:30 | Take two tablets (650 MG) by mouth three times daily as needed for pain "Chronic Care Verified" x 180 day(s) |
| | **Indication:** Carpal tunnel syndrome | | |
| 914782-COX | amLODIPine 5 MG TAB | 06/20/2019 09:30 | Take one tablet (5 MG) by mouth each day to control blood pressure x 365 day(s) |
| | **Indication:** Hypertension, Benign Essential | | |
| 924695-COX | Apixaban 5 MG Tablet | 06/20/2019 09:30 | Note: this replaces Coumadin Take one tablet (5 MG) by mouth two times a day x 180 day(s) |
| | **Indication:** Atrial fibrillation | | |
| 914784-COX | Atenolol 25 MG TAB | 06/20/2019 09:30 | Take one-half (1/2) tablet (12.5 MG) by mouth each day to control blood pressure x 365 day(s) |
| | **Indication:** Hypertension, Benign Essential | | |
| 914785-COX | Atorvastatin 20 MG TAB | 06/20/2019 09:30 | Take one tablet (20 MG) by mouth daily for control of cholesterol x 365 day(s) |
| | **Indication:** Hyperlipidemia, mixed | | |
| 914786-COX | hydroCHLOROthiazide 25 MG Tab | 06/20/2019 09:30 | Take one tablet (25 MG) by mouth every morning to control blood pressure x 365 day(s) |
| | **Indication:** Hypertension, Benign Essential | | |

| Inmate Name: | LYNN, RICHARD JOSEPH | | | Reg #: | 09748-004 |
|---|---|---|---|---|---|
| Date of Birth: | 07/19/1954 | Sex: M Race: WHITE | | Facility: | CLP |
| Encounter Date: | 06/20/2019 09:30 | Provider: Venuto, Gary MD | | Unit: | H02 |

## Renew Medication Orders:

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| 914787-COX | Lisinopril 40 MG Tab | 06/20/2019 09:30 | Take one tablet (40 MG) by mouth each day  to control blood pressure x 365 day(s) |
| | **Indication:** Hypertension, Benign Essential | | |
| 914788-COX | Magnesium Oxide 400 MG Tab | 06/20/2019 09:30 | Take one tablet (400 MG) by mouth each evening for leg cramps x 180 day(s) |
| | **Indication:** Pain in unspecified limb | | |

## New Laboratory Requests:

| Details | Frequency | Due Date | Priority |
|---|---|---|---|
| Lab Tests - Short List-General-CBC w/diff | One Time | 04/10/2020 00:00 | Routine |
| Lab Tests - Short List-General-Lipid Profile | | | |
| Lab Tests - Short List-General-Microalbumin & Creatinine, Urine Random | | | |
| Lab Tests - Short List-General-Comprehensive Metabolic Profile (CMP) | | | |

## Schedule:

| Activity | Date Scheduled | Scheduled Provider |
|---|---|---|
| Chronic Care Visit | 06/20/2019 00:00 | Physician |

## Disposition:

Follow-up at Sick Call as Needed
Follow-up at Chronic Care Clinic as Needed

## Patient Education Topics:

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 06/20/2019 | Not Done | | Venuto, Gary | No Participation |

**Copay Required:** No          **Cosign Required:**  No

**Telephone/Verbal Order:**  No

Completed by Venuto, Gary MD on 06/20/2019 10:01

| | | | | |
|---|---|---|---|---|
| Inmate Name: | LYNN, RICHARD JOSEPH | | Reg #: | 09748-004 |
| Date of Birth: | 07/19/1954 | Sex: M Race: WHITE | Facility: | CLP |
| Encounter Date: | 06/06/2018 09:00 | Provider: Lopez, H. MD/SER MAST | Unit: | G01 |

Chronic Care - Chronic Care Clinic encounter performed at Health Services.

## SUBJECTIVE:

### COMPLAINT 1    Provider: Lopez, H. MD/SER MAST

**Chief Complaint:** CARDIAC

**Subjective:** Patient seen for Cardiac, Endo Lipid, HTN and Ortho CCC.
Patient refers doing ok, but now occasionally has SOB and chest pain and the MLP recently put him to see the cardiologist. He also refers he changed his mind and wants to have his colonoscopy done.
Patient denies Chest pain, SOB, Nausea, constant thirst , vomiting, constipation, diarrhea, blurred vision, headaches, dizziness, denies blood or change in color of his stool, urinary frequency, denies depression, hallucinations, suicidal and homicidal ideations, denies motor or sensory deficit and all other Symptoms.
No OTC.

**Pain:** No

Seen for clinic(s): Cardiac, Endocrine/Lipid, Hypertension, Orthopedic/Rheumatology

## ROS:

**General**

**Constitutional Symptoms**

No: Anorexia, Fever, Night Sweats, Weight Gain

**Cardiovascular**

**General**

Yes: Within Normal Limits

**Pulmonary**

**Respiratory System**

Yes: Within Normal Limits

## OBJECTIVE:

**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 06/06/2018 | 09:02 COX | 98.9 | 37.2 | Oral | Lopez, H. MD/SER MAST PHYSICIAN |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 06/06/2018 | 09:02 COX | 56 | Radial | Regular | Lopez, H. MD/SER MAST |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 06/06/2018 | 09:02 COX | 16 | Lopez, H. MD/SER MAST PHYSICIAN |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 06/06/2018 | 09:02 COX | 156/100 | Left Arm | Sitting | Adult-regular | Lopez, H. MD/SER MAST |

**SaO2:**

| Date | Time | Value(%) | Air | Provider |
|---|---|---|---|---|

| Date | Time | Value(%) | Air | Provider |
|------|------|----------|-----|----------|
| 06/06/2018 | 09:02 COX | 97 | Room Air | Lopez, H. MD/SER MAST PHYSICIAN |

**Weight:**

| Date | Time | Lbs | Kg | Waist Circum. | Provider |
|------|------|-----|-----|---------------|----------|
| 06/06/2018 | 09:02 COX | 235.0 | 106.6 | | Lopez, H. MD/SER MAST PHYSICIAN |

**Exam:**

**General**

  **Appearance**

    Yes: Appears Well, Alert and Oriented x 3

    No: Oriented to person, place and time

**Head**

  **General**

    Yes: Symmetry of Motor Function, Atraumatic/Normocephalic

**Eyes**

  **General**

    Yes: PERRLA

  **Fundus Exam**

    Yes: Grossly Normal Retina

**Pulmonary**

  **Observation/Inspection**

    Yes: Within Normal Limits

  **Auscultation**

    Yes: Clear to Auscultation

**Cardiovascular**

  **Observation**

    Yes: Within Normal Limits, Normal Rate, Regular Rhythm

  **Auscultation**

    Yes: Regular Rate and Rhythm (RRR), Normal S1 and S2

**Abdomen**

  **Inspection**

    Yes: Within Normal Limits

  **Auscultation**

    Yes: Normo-Active Bowel Sounds

  **Percussion**

    Yes: Normal Liver Span, Normal Spleen Span

  **Palpation**

    Yes: Within Normal Limits, Soft

**Comments**

  EXT: symmetric, no edema, good pulse.

**ASSESSMENT:**

Chronic kidney disease, Stage II (mild), 585.2 - Resolved

Hyperlipidemia, mixed, 272.2 - Current

Hypertension, Benign Essential, 401.1 - Current

Other acute otitis externa, 380.22 - Resolved

Chronic kidney disease, stage 3 (moderate), N183 - Current

Conjunctivitis, H109 - Resolved

## PLAN:

### Renew Medication Orders:

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| 862927-COX | Warfarin 3 MG Tab UD | 06/06/2018 09:00 | Take one tablet (3 MG) by mouth every night at bedtime Mon thru Fri only (take with 2.5mg tablet for a total dose of 5.5mg) ***self carry*** x 180 day(s) |
| | **Indication:** Atrial fibrillation | | |
| 862935-COX | Warfarin 5 MG Tab UD | 06/06/2018 09:00 | Take one tablet (5 MG) by mouth at bedtime on Sat and Sun *ONLY x 180 day(s) |
| | **Indication:** Atrial fibrillation | | |

### New Laboratory Requests:

| Details | Frequency | Due Date | Priority |
|---|---|---|---|
| Lab Tests - Short List-General-CBC w/diff | One Time | 11/06/2018 00:00 | Routine |
| Lab Tests - Short List-General-Lipid Profile | | | |
| Lab Tests - Short List-General-TSH | | | |
| Lab Tests - Short List-General-Hemoglobin A1C | | | |
| zSpecialty-Nephrology Evaluation-Antinuclear antibody | | | |
| zSpecialty-Nephrology Evaluation-Magnesium | | | |
| Lab Tests - Short List-General-PSA, Total | | | |
| Lab Tests - Short List-General-T4, Free | | | |
| zSpecialty-Nephrology Evaluation-Protein, Urine 24 Hr | | | |
| zSpecialty-Nephrology Evaluation-Creatinine, Urine 24 Hr | | | |
| Lab Tests - Short List-General-Comprehensive Metabolic Profile (CMP) | | | |
| zSpecialty-Nephrology Evaluation-Parathyroid Hormone Intact (PTH) | | | |

**Labs requested to be reviewed by:** Venuto, Gary MD

### New Consultation Requests:

| Consultation/Procedure | Target Date | Scheduled Target Date | Priority | Translator | Language |
|---|---|---|---|---|---|
| General Surgery | 10/06/2018 | 10/06/2018 | Routine | No | |

**Subtype:**

In House

**Reason for Request:**

63 year old male inmate with history of HTN, needs screening colonoscopy, FOB was negative on 2017. It was previously approved and then he refused but now he has changed his mind.

| Radiology | 09/06/2018 | 09/06/2018 | Routine | No | |
|---|---|---|---|---|---|

**Subtype:**

ULTRASOUND

**Reason for Request:**

Renal ultrasound:
Case of a 63 year old male with history A.fib difficult to controlled BP with CKD stage 3 GFR 50 at this time.
For further evaluation.

**New Non-Medication Orders:**

| Order | Frequency | Duration | Details | Ordered By |
|---|---|---|---|---|
| Urine Dipstick | One Time | | | Lopez, H. MD/SER MAST PHYSICIAN |
| | **Order Date:** | 06/06/2018 | | |
| Blood Pressure | Weekly | 30 days | If Bp > 160/90 notify Provider to adjust medication the same day. After the 30 day BP checks please notify Provider for follow up. | Lopez, H. MD/SER MAST PHYSICIAN |
| | **Order Date:** | 06/06/2018 | | |

**Schedule:**

| Activity | Date Scheduled | Scheduled Provider |
|---|---|---|
| Chronic Care Visit | 12/06/2018 00:00 | Physician |

**Disposition:**

Follow-up at Sick Call as Needed
Follow-up at Chronic Care Clinic as Needed

**Other:**

Hyperlipidemia: Explained the need for him to diet and exercise. He voiced his understanding.
HTN: has not started new lisinopril order. He was explained that all his BP medication will be on pill line. BP checks will be added.
CKD 3 will ask for ultrasound as it is deteriorating.
Rest of medications are up tom date.

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 06/06/2018 | Counseling | Compliance - Treatment | Lopez, H. | Verbalizes Understanding |
| 06/06/2018 | Counseling | Diet | Lopez, H. | Verbalizes Understanding |
| 06/06/2018 | Counseling | Exercise | Lopez, H. | Verbalizes Understanding |
| 06/06/2018 | Counseling | Hand & Respiratory Hygiene | Lopez, H. | Verbalizes Understanding |
| 06/06/2018 | Counseling | Plan of Care | Lopez, H. | Verbalizes Understanding |
| 06/06/2018 | Counseling | Access to Care | Lopez, H. | Verbalizes Understanding |

**Copay Required:** No          **Cosign Required:** No

**Telephone/Verbal Order:** No

Completed by Lopez, H. MD/SER MAST PHYSICIAN on 06/06/2018 11:30

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | LYNN, RICHARD JOSEPH | | | Reg #: | 09748-004 |
| Date of Birth: | 07/19/1954 | Sex: | M   Race: WHITE | Facility: | CLP |
| Encounter Date: | 06/06/2017 08:38 | Provider: | Venuto, Gary MD | Unit: | G01 |

Chronic Care - Chronic Care Clinic encounter performed at Health Services.

## SUBJECTIVE:

### COMPLAINT 1    Provider: Venuto, Gary MD

**Chief Complaint:** CARDIAC

**Subjective:** 62 year old male inmate here for CCC: CARDIAC, ENDO, HTN, ORTHO, history of HTN, BPH, hypercholesterolemia, and heel spurs, states compliance with medications, ROS: otherwise unremarkable. ALLERGIES: SULFUR, FOB was negative on 11/2016, BUN 27 CRT 1.28, AST 49. will order HCV antibody as well as screening colonoscopy, XRAY B/L knees. Inmate returns from LRMC where he was admitted for chest pain and found to be in atrial fibrillation, he underwent cardioversion and has been stable on Coumadin, last INR 2.2 on 5mg po daily. Will order medications as per discharge summary and request in house cardiology consult for next available. Will change care level to 3. Will continue anticoagulation indefinitely at this point until we here from cardiology, he has had several episodes of A-Fib.

**Pain:** No

---

**Seen for clinic(s):** Cardiac, Endocrine/Lipid, Hypertension, Orthopedic/Rheumatology

## ROS:

### General

#### Constitutional Symptoms

No: Anorexia, Chills, Easily Tired, Fatigue, Fever, Fever-high with chills, Fever-reoccuring

### Cardiovascular

#### General

Yes: Angina

### Pulmonary

#### Respiratory System

Yes: Within Normal Limits

### Psychiatric

#### General

Yes: Within Normal Limits

No: Hallucinations-Auditory, Hallucinations-Command, Hallucinations-Visual, Hallucinations-Tactile, Hallucinations-Olfactory, Suicide/Self-Harm Thoughts, Homicide/Other Harm Thoughts

## OBJECTIVE:

### Temperature:

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 06/06/2017 | 09:04 COX | 98.6 | 37.0 | | Venuto, Gary MD |

### Pulse:

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 06/06/2017 | 09:04 COX | 50 | Via Machine | Regular | Venuto, Gary MD |

### Respirations:

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 06/06/2017 | 09:04 COX | 16 | Venuto, Gary MD |

### Blood Pressure:

| Inmate Name: | LYNN, RICHARD JOSEPH | | | | | | Reg #: | 09748-004 |
| Date of Birth: | 07/19/1954 | | | Sex: | M | Race: WHITE | Facility: | CLP |
| Encounter Date: | 06/06/2017 08:38 | | | Provider: | Venuto, Gary MD | | Unit: | G01 |

| **Date** | **Time** | **Value** | **Location** | **Position** | **Cuff Size** | **Provider** |
|---|---|---|---|---|---|---|
| 06/06/2017 | 09:04 COX | 133/85 | Left Arm | Sitting | | Venuto, Gary MD |

**SaO2:**

| **Date** | **Time** | **Value(%)** | **Air** | | **Provider** |
|---|---|---|---|---|---|
| 06/06/2017 | 09:04 COX | 100 | | | Venuto, Gary MD |

**Height:**

| **Date** | **Time** | **Inches** | **Cm** | **Provider** |
|---|---|---|---|---|
| 06/06/2017 | 09:04 COX | 72.0 | 182.9 | Venuto, Gary MD |

**Weight:**

| **Date** | **Time** | **Lbs** | **Kg** | **Waist Circum.** | **Provider** |
|---|---|---|---|---|---|
| 06/06/2017 | 09:04 COX | 225.0 | 102.1 | | Venuto, Gary MD |

**Exam:**
  **General**
    **Affect**
      Yes: Cooperative
    **Appearance**
      Yes: Appears Well, Alert and Oriented x 3
      No: Jaundiced, Lethargic, Dyspneic, Appears in Pain
    **Nutrition**
      Yes: Excellent food intake
  **Skin**
    **General**
      Yes: Within Normal Limits, Dry, Skin Intact
  **Head**
    **General**
      Yes: Symmetry of Motor Function, Atraumatic/Normocephalic
  **Eyes**
    **General**
      Yes: PERRLA, Extraocular Movements Intact
    **Fundus Exam**
      Yes: Grossly Normal Retina
  **Neck**
    **General**
      Yes: Within Normal Limits, Supple, Symmetric, Trachea Midline
      No: Growth/Mass(es)
    **Vascular**
      No: Carotid Bruits
  **Pulmonary**
    **Auscultation**
      Yes: Clear to Auscultation
  **Cardiovascular**
    **Observation**
      Yes: Within Normal Limits, Normal Rate, Regular Rhythm
    **Auscultation**
      Yes: Regular Rate and Rhythm (RRR), Normal S1 and S2
      No: M/R/G
  **Peripheral Vascular**

**Exam:**

    **Legs**
        Yes: Capillary Refill Normal
        No: Homan's Sign, Calf Tenderness

    **Abdomen**
      **Auscultation**
        Yes: Normo-Active Bowel Sounds

      **Percussion**
        Yes: Tympany

      **Palpation**
        Yes: Within Normal Limits, Soft
        No: Guarding, Rigidity, Tenderness on Palpation, Rebound Tenderness, Mass(es)

    **Neurologic**
      **Cranial Nerves (CN)**
        Yes: Within Normal Limits, CN 2-12 Intact Grossly, CN2-3 PERRLA

    **Mental Health**
      **Posture**
        Yes: Within Normal Limits

      **Affect**
        Yes: Within Normal Limits

      **Mood**
        Yes: Within Normal Limits

      **Thought Content**
        Yes: Within Normal Limits, Appropriate, Goal Directed
        No: Delusional, Suicidal or Homicidal Ideation

**ASSESSMENT:**

Actinic keratosis, 702 0 - Current

Anisometropia, 367.31 - Current

Anomalies of foot, NEC, 755.67 - Current

Atrial fibrillation, 427.31 - Resolved

BPH, Benign Hypertophy of Prostate, 600.00 - Current

Carpal tunnel syndrome, 354.0 - Current

Chronic kidney disease, Stage II (mild), 585.2 - Current

Cracked tooth - nontraumatic, 521.81 - Current

Hyperlipidemia, mixed, 272.2 - Current

Observation for other spec suspected conditions, V71.89 - Current

Other acute otitis externa, 380.22 - Current

Sleep related bruxism, 327.53 - Current

Chest pain, unspecified, R079 - Current

Pain in unspecified foot, M79673 - Current

**PLAN:**

**Renew Medication Orders:**

| Rx# | Medication | Order Date | Prescriber Order |
| --- | --- | --- | --- |

| Inmate Name: | LYNN, RICHARD JOSEPH | | | | Reg #: | 09748-004 |
| Date of Birth: | 07/19/1954 | Sex: | M | Race: WHITE | Facility: | CLP |
| Encounter Date: | 06/06/2017 08:38 | Provider: | Venuto, Gary MD | | Unit: | G01 |

## Renew Medication Orders:

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| 776815-COX | Hydrochlorothiazide 25 MG Tab | 06/06/2017 08:38 | Take one tablet by mouth each morning x 365 day(s) |
| | **Indication:** Hypertension, Benign Essential | | |
| 776816-COX | Lisinopril 20 MG Tab | 06/06/2017 08:38 | Take one tablet by mouth each day x 365 day(s) |
| | **Indication:** Hypertension, Benign Essential | | |
| 776811-COX | amLODIPine 5 MG TAB | 06/06/2017 08:38 | Take one tablet (5 MG) by mouth each day to control blood pressure x 365 day(s) |
| | **Indication:** Hypertension, Benign Essential | | |
| 793256-COX | Atenolol 25 MG TAB | 06/06/2017 08:38 | Take one-half tablet (12.5 MG) by mouth every day x 365 day(s) |
| | **Indication:** Hypertension, Benign Essential | | |
| 776813-COX | Atorvastatin 20 MG TAB | 06/06/2017 08:38 | Take one tablet by mouth each day x 365 day(s) |
| | **Indication:** Hyperlipidemia, mixed | | |
| 793262-COX | Warfarin 5 MG Tab UD | 06/06/2017 08:38 | Take one tablet (5 MG) by mouth at bedtime ***pill line*** x 180 day(s) Pill Line Only |
| | **Indication:** Unspecified disorder of circulatory system | | |

## Disposition:

Follow-up at Sick Call as Needed
Follow-up at Chronic Care Clinic as Needed
Return Immediately if Condition Worsens
Return To Sick Call if Not Improved
Follow-up in 1 Year

## Patient Education Topics:

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 06/06/2017 | Counseling | Access to Care | Venuto, Gary | Verbalizes Understanding |
| 06/06/2017 | Counseling | Compliance - Treatment | Venuto, Gary | Verbalizes Understanding |
| 06/06/2017 | Counseling | Plan of Care | Venuto, Gary | Verbalizes Understanding |

# Bureau of Prisons
# Health Services
# Consultation Request

| | | |
|---|---|---|
| **Inmate Name:** LYNN, RICHARD JOSEPH | **Reg #:** 09748-004 | **Complex:** COX |
| **Date of Birth:** 07/19/1954 | **Sex:** M | |

**Consultation/Procedure Requested:** Cardiology

**Subtype:** Off Site

**Priority:** Routine

**Target Date:** 06/12/2017

**Reason for Request:**
Inmate is a 62 year old male s/p afib cardioversion 6/3/17. History of hyperlipidemia and hypertension. Inmate is on multiple blood pressure medication to include norvase 5 mg, atenolol and Lisinopril. Also started on Coumadin 5 mg qd.

**Provisional Diagnosis:**
AFIB
S/P CARDIOVERSION, ON COAGULATION THERAPY

**Medications (As of 08/18/2017)**
amLODIPine 5 MG TAB Exp: 06/08/2018 SIG: Take one tablet (5 MG) by mouth each day to control blood pressure
Atenolol 25 MG TAB Exp: 12/24/2017 SIG: Take one-half tablet (12.5 MG) by mouth every day to control blood pressure
Atorvastatin 20 MG TAB Exp: 12/24/2017 SIG: Take one tablet (20 MG) by mouth daily for control of cholesterol
Hydrochlorothiazide 25 MG Tab Exp: 12/24/2017 SIG: Take one tablet (25 MG) by mouth every morning
Lisinopril 20 MG Tab Exp: 12/24/2017 SIG: Take one tablet (20 MG) by mouth daily
Warfarin 2.5 MG Tab UD Exp: 10/23/2017 SIG: Take one tablet (2.5 MG) by mouth at bedtime (take with 3mg tablet for a total dose of 5.5mg) ***pill line*** ***Do Not Crush*** ***pill line***
Warfarin 3 MG Tab UD Exp: 10/23/2017 SIG: Take one tablet (3 MG) by mouth at bedtime (take with 2.5mg tablet for a total dose of 5.5mg) ***pill line*** ***Do Not Crush*** ***pill line***

**Allergies (As of 08/18/2017)**
Sulfa Antibiotics

**Health Problems (As of 08/18/2017)**
Health examination of defined subpopulations, Hypertension, Benign Essential, Hyperlipidemia, mixed, Disease of hard tissues of teeth, other, Observation for other spec suspected conditions, Other, Dental caries, unspecified, Anisometropia, Hypermetropia, Presbyopia, Pulpitis, Pulpitis, Pulpitis, Actinic keratosis, Chronic apical periodontitis, Other specified general medical examination, Chronic kidney disease, Stage II (mild), Neck pain, cervicalgia, Degeneration of cervical intervertebral disc, Other acute otitis externa, BPH, Benign Hypertophy of Prostate, Carpal tunnel syndrome, Cracked tooth - nontraumatic, Sleep related bruxism, Unsatisfactory restoration of existing tooth, Anomalies of foot, NEC, Pain in unspecified foot, Other specified arthritis, unspecified site, Chest pain, unspecified, Unspecified disorder of circulatory system, Conjunctivitis

**Inmate Requires Translator:** No        **Language:**
**Additional Records Required:**

**Comments:**

**Requested By:** Law, V. ARNP

**Ordered Date:** 06/05/2017 15:19

**Scheduled Target Date:** 07/31/2017 00:00

**Level of Care:** Medically Necessary - Non-Emergent

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.

RICHARD JOSEPH LYNN,

Defendant.

§
§
§   CASE NO. 89-0072-WS
§
§
§
§
§

Date of Original Judgment: 12/15/1989

## [PROPOSED] ORDER REGARDING MOTION FOR MODIFICATION OF TERM OF IMPRISONMENT PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) (REQUEST FOR COMPASSIONATE RELEASE)

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons ☐ the court, under **18 U.S.C. § 3582(c)(1)(A)(i)** in conjunction with the **First Step Act (PL 115-391)**, to reduce his sentence based on compassionate release in conformance with the **Bureau of Prisons Program Statement 5050.50**.

**IT IS ORDERED** that the motion is:

☐ DENIED.

☐ GRANTED and the defendant's previously imposed sentence (*as reflected in the last judgment issued*) of <u>life imprisonment</u> is reduced to <u>time served</u>.

Except as otherwise provided, all provisions of the judgment dated 12/15/1989 shall remain in effect.

**IT IS ORDERED.**

Order Date: _____

_____
HON. WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

**FROM:**
RICHARD J. LYNN
09745-004
FEDERAL CORRECTION AL COMPLEX
P.O. BOX 1034
COLEMAN, FL. 33521

**TO:** HON WILLIAM HOWARD STEELE
SENIOR US DISTRICT JUDGE
SOUTHERN DIST. OF ALABAMA
155 St. JOSEPH STREET
Mobile, AL. 36602





U.S. POSTAGE PAID
PM 2-DAY
COLEMAN, FL
33521
MAY 01, 20
AMOUNT
$0.00
R2304Y122683-09

1006
36602

UNITED STATES
POSTAL SERVICE®

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14L © U.S. Postal Service; February 2014; All rights reserved.