IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 89-0072-WS |
| | ) |
| RICHARD JOSEPH LYNN, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

The defendant has filed a motion for compassionate release. (Doc. 82). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 85, 86, 88),[1] and the motion is ripe for resolution.

A court "may reduce the term of imprisonment …, after considering the factors set forth in 3553(a) to the extent that they are applicable, if it finds that … extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission …." 18 U.S.C. § 3582(c)(1)(A). Congress tasked the Sentencing Commission with "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Sentencing Commission's policy statement identifies several circumstances under which extraordinary and compelling reasons for a sentence reduction under Section 3582(c)(1)(A) exist:

> Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
> …
> (B). Age of the Defendant. The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. 1B1.13 application note 1. The defendant bases his eligibility for compassionate release on this provision.

---

[1] The government's motion to file the defendant's medical records under seal, (Doc. 87), is **granted**.

Section 3582(c)(1)(A) permits a defendant to file a motion for compassionate release after requesting the Bureau of Prisons ("BOP"), through the warden of the facility, to do so on his behalf. The defendant made such a request on March 12, 2020, invoking both application note 1(B) and the "other elderly inmates" provision of BOP's Program Statement 5050.50. (Doc. 82 at 33, 43). The warden denied the defendant's request without considering application note 1(B). (Doc. 86 at 42-43). The instant motion followed.

The government argues the motion should be dismissed for lack of jurisdiction because, while the motion mentions COVID-19 as a factor favoring release under application note 1(B), the request to BOP did not reference the pandemic. (Doc. 86 at 17-18). It may be questioned why this circumstance should make any difference, given that the warden completely ignored application note 1(B) when denying the defendant's request and so disregarded all the information he presented regarding his health.[2] In any event, the Court has resolved the defendant's motion without any consideration of COVID-19. The government's request for dismissal of the motion, construed as a motion for such relief, is therefore **denied**.[3]

The defendant is 65 years old and therefore satisfies the first requirement of application note 1(B). He has served over 30 years of his sentence and therefore satisfies the third requirement.

As to the second requirement, the defendant's medical records reveal a plethora of ongoing medical issues, including high cholesterol, reflux, cervical disc degeneration, enlarged prostate (benign), sleep apnea, high blood pressure, carpal tunnel syndrome, and various dental issues. Taken together, these might not indicate a serious deterioration in physical health, but there is much more.

---

[2] The "other elderly inmates" section of the program statement, which the warden did reference, does not address an inmate's health.

[3] The government asks the Court to follow *United States v. Gray*, 2020 WL 2132948 (S.D. Ala. 2020). As the government recognizes, the *Gray* Court resolved the defendant's motion "on the merits insofar as it raised the same facts and arguments included in her request to BOP." (Doc. 86 at 18). The Court does likewise.

First, the defendant was diagnosed in April 2019 with hypertensive retinopathy, a diagnosis confirmed in April 2020. (Doc. 88 at 2, 88, 348).[4] This condition "is typically caused by prolonged high blood pressure which damages the retina's blood vessels, limits the retina's function, and puts pressure on the optic nerve," with symptoms including "reduced vision, eye swelling, and double vision." *DiMarco v. Saul*, 2020 WL 1692283 at *1 n.3 (S.D. Fla. 2020). The presence of this condition is especially troubling because it indicates the defendant's longstanding hypertension is not in fact controlled, resulting in increased risk of stroke, heart attack, and other profound health issues. A June 2018 clinical note affirms that the defendant's hypertension is difficult to control. (Doc. 88 at 275-76).

Second, the defendant has degenerative changes/osteoarthritis of the right knee, which as of November 2019 was reflected in moderate patellofemoral compartment joint space narrowing, resulting in chronic and worsening pain and swelling upon walking, significant audible clicking, pain management by injection, and a prohibition on all sports activity. (Doc. 88 at 17-18, 96, 277).

Third, the defendant has atrial fibrillation. "Individuals with atrial fibrillation are at a high risk of stroke and use blood thinners … to reduce the risk of stroke." *Utts v. Bristol-Myers Squibb Co.*, 251 F. Supp. 3d 644, 652 n.2 (S.D.N.Y. 2017). The defendant is on a blood thinner but, despite medication, he has been hospitalized three times for cardioversion to restore normal heart function, most recently in June 2017. (Doc. 66-1 at 22-23).

Fourth, as of November 2019, the defendant has chronic kidney disease, stage 3 (moderate), up from stage 2 (mild) in June 2018. (Doc. 88 at 51, 70). The stage 3 diagnosis "corresponds with a moderate decrease in renal function." *Hudson v. Astrue*, 2009 WL 2762725 at 1 n.1 (D. Colo. 2009).

Finally, the defendant has coronary artery disease ("CAD"). After months of complaining of episodes of chest pain, the defendant in July 2019 was found to have multiple blockages of 80% and higher, resulting in multiple stents. As of January 2020, the defendant had additional blockages, although none were greater than 50%. (Doc. 88 at 36, 92, 117-23, 272).

The defendant has presented the expert opinion of a cardiologist that the defendant's CAD is more extensive and severe than is typically seen in patients of his age. He will likely

---

[4] No such finding was made at the defendant's previous eye examination in November 2016. (Doc. 66-1 at 24).

require additional stents and/or coronary bypass surgery in the next few years, failing which he is likely to suffer heart attacks, congestive heart failure, and ultimately death. The expert also notes that the defendant's chronic kidney disease is more severe than is typical of sexagenarians and that it increases the risk of cardiovascular events such as heart attacks. The defendant's atrial fibrillation will likely recur, and his sleep apnea will likely worsen. (Doc. 85 at 7). The government does not challenge this evidence.

The defendant's medical records leave no question but that his physical health is deteriorating, as they reflect that all the conditions addressed above have worsened over the past two to three years. The government makes no argument to the contrary.[5] Nor does the government deny that this deterioration is serious, or that it is due to the aging process. Instead, the government argues that the defendant must satisfy a fourth criterion, one found nowhere in the Sentencing Commission's policy statement.

BOP promulgated Program Statement 5050.50 to establish "procedures for implementation of" Section 3582(c)(1)(A). With respect to inmates seeking release based on age, BOP requires that the inmate's deteriorating health "substantially diminishes their ability to function in a correctional facility." The government argues that the defendant is therefore required to show the Court not only that he is "experiencing a serious deterioration in physical or mental health because of the aging process" but also that "his condition substantially diminishes his ability to function in a correctional facility." (Doc. 86 at 31, 32).

According to the government, BOP's insertion of a diminished-ability-to-function requirement "interpret[s]" the statutory phrase, "extraordinary and compelling reasons." Because it is a "permissible construction" of the term, the government concludes that it "should be given deference." (Doc. 86 at 31-32). The problem is that Congress did not delegate to BOP the task of defining "extraordinary and compelling reasons." As noted above, Congress identified the Sentencing Commission as the body charged with "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied …." 28 U.S.C. § 994(t). The Sentencing Commission established those criteria in application note 1, subdivisions (A), (B) and (C). Subdivision (D) sub-delegated to BOP the

---

[5] The government asserts only that the defendant's ability to care for himself in a prison environment has not deteriorated in the eleven months since the Court denied the defendant's previous motion for compassionate release, which was based on application note 1(A)(ii). (Doc. 86 at 33).

authority to identify additional extraordinary and compelling circumstances in a particular case, and in that sphere BOP presumably may permissibly interpret the statutory phrase, "extraordinary and compelling reasons."  However, nothing in subdivision (D) or anything else brought to the Court's attention authorizes BOP to re-write subdivisions (A) through (C) to insert additional criteria for establishing an "extraordinary and compelling reason" beyond those the Sentencing Commission elected to impose.  The government offers no explanation or legal authority in support of its contrary position, which the Court therefore declines to accept.

The government does not argue that BOP's diminished-ability-to-function requirement permissibly interprets application note 1(B) and should be given deference on that basis.  Even had it done so, the Court would disagree.  Application note 1(A)(ii) identifies an extraordinary and compelling circumstance for an inmate of any age as:  "experiencing deteriorating physical or mental health because of the aging process … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility …."  This shows at least two things.  First, the Sentencing Commission knew how to express a diminished-ability-to-function requirement, so that the absence of corresponding language from application note 1(B) must be viewed as a purposeful rejection of any such requirement.

Second, were the government's view accepted, it would be more difficult for an elderly inmate to be released due to the aging process than for a younger inmate.  This is because, while both would have to show deterioration in health due to the aging process that substantially diminishes their ability to function in a prison environment, only the elderly inmate would also have to show (1) that the deterioration was serious, and (2) that he had served ten years or 75% of his sentence.  It cannot easily be imagined that the Sentencing Commission intended it to be easier for the young to obtain compassionate release due to aging than for the aged.

It seems clear that Program Statement 5050.50 is not designed to "interpret" the Sentencing Commission's policy statement with respect to application note 1(B).  In addition to its diminished-ability-to-function requirement, the program statement also requires that the inmate "[h]ave served at least 50% of their sentence."  This requirement directly contradicts application note 1(B), because that note expressly sets the threshold as the lesser of ten years or 75% of the sentence, which obviously can be met even if BOP's 50% standard is not.[6]

---

[6] For example, a defendant sentenced to 30 years would satisfy application note 1(B) after serving ten years, but he could not satisfy the program statement until he served 15 years.

It appears that the function of the program statement, at least as it relates to application note 1, subdivisions (A) through (C), is not to interpret either the application note or Section 3582(c)(1)(A), but is instead to establish a different, higher standard that must be met before BOP is willing to file a motion for compassionate release on behalf of an inmate.[7]  BOP may be within its rights to establish such a rigorous internal standard, but its action alters neither the language nor the construction of application note 1(B).

As noted, a reduction in sentence under Section 3582(c)(1)(A) must be "consistent with applicable policy statements issued by the Sentencing Commission."  The Court concludes that the defendant's situation satisfies application note 1(B).  The Sentencing Commission's policy statement includes the further requirement that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).  The Court has evaluated the Section 3142(g) factors in light of the record and concludes the defendant is not a danger to the safety of any other person or to the community.  The government advances no argument to the contrary.

Finally, Section 3582(c)(1)(A) requires the Court to consider the Section 3553(a) factors.  The Court has considered those factors in light of the record, including the nature and circumstances of the offense and the history and characteristics of the defendant, and concludes that the 30-plus years the defendant has served (the last 26 years of it spotless) is sufficient, but not greater than necessary, to satisfy the purposes set forth in Section 3553(a).  The government's arguments to the contrary, (Doc. 86 at 38-39), have been considered and rejected.

For the reasons set forth above, the defendant's motion for compassionate release is **granted**.  The defendant's sentence is reduced to time served, effective **June 29, 2020**.  In all other respects, the judgment entered December 15, 1989, (Doc. 41 at 16-23), remains in full force and effect.

---

[7] The program statement declares that "[a] motion for modification of a sentence will be made to the sentencing court only in particularly extraordinary or compelling circumstances that could not reasonably have been foreseen by the court at the time of sentencing."  Section 3582(c)(1)(A), however, requires only "extraordinary and compelling" circumstances, not "particularly" extraordinary and compelling ones.  And application note 2 explicitly states that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment."

DONE and ORDERED this 15th day of June, 2020.

                                          s/WILLIAM H. STEELE
                                        UNITED STATES DISTRICT JUDGE